M. Anderson Berry (SBN 262879)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile:  (916) 924-1829
aberry@justice4you.com

BETSY C. MANIFOLD (SBN 182450)
RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JONATHAN BOWDLE, individually
and on behalf of all others similarly
situated,

        Plaintiff,

    v.

KING'S SEAFOOD COMPANY, LLC,

        Defendant.

Case No.: _____

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

Plaintiff Jonathan Bowdle ("Plaintiff"), in his individual capacity and on behalf of all others similarly situated, brings this Class Action Complaint against King's Seafood Company, LLC ("Defendant") and alleges, upon personal knowledge as to his own actions and his counsels' investigations, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Personally Identifiable Information ("PII") of its customers and employees, without limitation, names, driver's license information, payment card information, medical cards, telephone numbers, and partially redacted Social Security numbers.

2. Plaintiff also alleges Defendant failed to provide timely, accurate, and adequate notice to Plaintiff and similarly situated current and former employees and customers ("Class Members") that their PII had been lost and precisely what type of information was unencrypted and is now in the possession of unknown third parties.

3. Defendant is a restaurant chain company that operates 22 restaurants throughout California, Arizona, and Nevada. Defendant's employees entrust them with an extensive amount of their PII. Defendant retains this information—even after the employment relationship ends.

4. On or around August 23, 2021, Defendant learned that PII "may have been compromised during a cyber-attack which began on June 4, 2021."[1] The hacker gained access to directories where PII was stored. "The unauthorized individual was capable of accessing and acquiring the [PII] in the directories."[2]

5. Nearly a month later, Defendant issued a "Notice of Data Breach,"

---

[1] https://oag.ca.gov/system/files/KING%27S%20SEAFOOD%20Notification%20Letter.pdf (last visited Oct. 19, 2021).

[2] *Id.*

dated September 14, 2021, to those whose PII may have been impacted.

6.     By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted PII that the attacker viewed and took included individuals' names, driver's license information, payment card information, medical cards, telephone numbers, and partially redacted Social Security numbers.[3]

7.     Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. The exposed PII of Plaintiff and Class Members can be sold on the dark web. Plaintiff and Class Members now face a present and lifetime risk of identity theft, which is heightened here by the loss of Social Security and driver's license information.

8.     This PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiff and Class Members. In addition to Defendant's failure to prevent the Data Breach, after discovering the breach, Defendant waited a month to report it to the states' Attorneys General and affected individuals. Defendant has not informed Plaintiff or Class Members what the specific vulnerabilities and root causes of the breach are.

9.     As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and

---

[3]     *Id*. It is clear that the information exposed in the Data Breach was unencrypted. California law requires companies to notify California residents "whose **unencrypted** personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system[.]" Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Defendant notified the California Attorney General of the Data Breach on Sept. 15, 2021, evidencing that the exposed data was unencrypted.

financial harm. The risk will remain for their respective lifetimes.

10. Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

11. Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

12. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

13.     Plaintiff Jonathan Bowdle is a resident and citizen of Nevada. Plaintiff Bowdle is acting on his own behalf and on behalf of others similarly situated. Defendant obtained and continues to maintain Plaintiff Bowdle's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff Bowdle would not have entrusted his PII to Defendant, his former employer, had he known that it would fail to maintain adequate data security. Plaintiff Bowdle's PII was compromised and disclosed as a result of the Data Breach.

14.     Defendant King's Seafood Company, LLC., is a Delaware corporation with its headquarters in Costa Mesa, California.

15.     All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III. JURISDICTION AND VENUE

16.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity.

17.     This court has personal jurisdiction over Defendant named in this action because Defendant is headquartered in this District and conducts substantial business in this District.

18.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

/ / /

/ / /

## IV. FACTUAL ALLEGATIONS

### Background

19.   Defendant is a growing restaurant chain, with 22 restaurants throughout California, Arizona, and Nevada. Defendant has employed thousands of people to operate and supply these restaurants.[4]

20.   Plaintiff and Class Members employed by Defendant were required to provide Defendant with sensitive and confidential information, including their names, dates of birth, Social Security numbers, driver's license numbers, and other PII, which is static, does not change, and can be used to commit countless different types of financial crimes.

21.   Plaintiff and Class Members, as current and former employees and as customers of Defendant, relied on the sophistication of Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII.

22.   Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

### The Data Breach

23.   Beginning on or about September 14, 2021, Defendant sent Plaintiff and other current and former employees and customers a *Notice of Data Breach*. Defendant informed the recipients of the notice that:

**What Happened?**

We are writing to inform you of an incident that involved your personal information. King's Seafood Company learned on August 23, 2021, that your information may have been compromised during a cyber-

---

[4]   *See* https://www.kingsseafood.com/about (last visited Oct. 19, 2021).

attack which began on June 4, 2021, in which an unauthorized individual accessed certain directories within our computer system. By having access to the directories, the unauthorized individual was capable of accessing and acquiring the personal information in the directories.

**What Information Was Involved?**

The information the unauthorized individual could have potentially accessed includes names, driver's license information, payment card information, medical cards, telephone numbers, and partially redacted Social Security numbers.

24.    On or about September 15, 2021, Defendant sent data breach notifications to various state Attorneys General, including New Hampshire's Attorney General, signed by Shawn E. Tuma, of Spencer Fane LLP as counsel for Defendant.[5]

25.    Defendant admitted in the letters to the Attorneys General that unauthorized individuals accessed directories that contained PII and was capable of "accessing and acquiring" the PII, including individuals' names, partial Social Security numbers, payment card information, and driver's license numbers or government-issued identification numbers.

26.    In response to the Data Breach, Defendant claims that it "notified law enforcement and engaged an outside professional cybersecurity firm to help [King's Seafood] understand the scope of this incident." The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again have not been shared with regulators or

---

[5]    *See*   https://www.doj.nh.gov/consumer/security-breaches/documents/kings-seafood-20210920.pdf (last visited Oct. 19, 2021).

Plaintiff and Class Members, who retain a vested interest in ensuring that their PII remains protected.[6]

27.   The unencrypted PII of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII of Plaintiff and Class Members.

28.   Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of PII for many current and former employees, such as encrypting the information or deleting it when it is no longer needed.

29.   As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[7]

30.   To prevent and detect cyber-attacks and/or ransomware attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and

---

[6]   *See id.*

[7]   *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at:* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Oct. 19, 2021).

Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a

virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[8]

31.    To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is

---

[8]    *See id*. at 3-4.

legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[9]

32.    To prevent and detect cyber-attacks or ransomware attacks Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-        Apply latest security updates

-        Use threat and vulnerability management

-        Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-        Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

-        Ensure collaboration among [security operations], [security

---

[9]    *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at:* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Oct. 19, 2021).

admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[10]

33.    Given that Defendant was storing the PII of its current and former employees and customers, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks.

34.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of an undisclosed amount of current and former employees, including Plaintiff and Class Members.

---

[10]    *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Oct. 19, 2021).

*Defendant Acquires, Collects, and Stores the PII of Plaintiff and Class Members.*

35.    Defendant has historically acquired, collected, and stored the PII of Plaintiff and Class Members.

36.    As a condition of maintaining employment with Defendant, Defendant requires that its employees entrust them with highly confidential PII.  Defendant also collects information about customers who use its services, make reservations, book events, and purchase gift cards. According to Defendant's privacy policy, the information they collect may include:

(a) names, aliases, postal addresses, unique personal identifiers, online identifiers, Internet Protocol (IP) address, email address, account name, driver's license numbers, passport numbers or other similar identifiers; (b) education, employment, employment history, financial information, medical information, or health insurance information; (c) characteristics of protected classifications under California or federal law; (d) internet or other electronic network activity information; (e) professional or employment-related information; (f) audio, electronic, visual or similar information; (g) location information; and (h) education information that is not publicly available.[11]

37.    By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

38.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential

---

[11]    *See*                                https://assets.website-files.com/5cad8343e64f6bd444cf9b08/5e9631647d9ed33527432934_Privacy%20 Policy%203.1.2020.pdf (last visited Oct. 19, 2021).

and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

39.   In the ordinary course of doing business with Defendant, customers are required to provide Defendant with PII, such as, but not limited to, payment information.  Defendant collects this payment information when it sells products.  The payment information likely includes financial account numbers, expiration dates, and CVC security codes to process payment cards.

### Securing PII and Preventing Breaches

40.   Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiff and Class Members.  Alternatively, Defendant could have destroyed the data, especially data from former employees.

41.   Defendant's policies on its website include promises and legal obligations to maintain and protect PII, demonstrating an understanding of the importance of securing PII.  For example, Defendant's Privacy Statement provides in part that it "take[s] commercially reasonable steps to protect" PII from unauthorized disclosure.[12]

42.   Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

43.   Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

44.   Defendant does not claim that it abides by the Payment Card Industry Data Security Standard ("PCI DSS"), which is a set of standards designed to ensure

---

[12]   *See*                                            https://assets.website-files.com/5cad8343e64f6bd444cf9b08/5e9631647d9ed33527432934_Privacy%20Policy%203.1.2020.pdf (last visited Oct. 19, 2021).

that all companies that accept, process, store, or transmit credit card information maintain a secure environment.  PCI DSS compliance is a requirement for all businesses that store, process, or transmit payment card data.

45.     The PCI DSS defines measures for ensuring data protection and consistent security processes and procedures around online financial transactions. Businesses that fail to maintain PCI DSS compliance are subject to steep fines and penalties.

46.     As formulated by the PCI Security Standards Council, the mandates of PCI DSS compliance include, in part: Developing and maintaining a security policy that covers all aspects of the business, installing firewalls to protect data, and encrypting payment data that is transmitted over public networks using anti-virus software and updating it regularly.

### Value of Personally Identifiable Information

47.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[14]

48.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Personal Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to

---

[13]     17 C.F.R. § 248.201 (2013).
[14]     *Id.*

$200.[15] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[16] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[17]

49.    Social Security numbers, for example, are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[18]

---

[15]    *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Oct. 19, 2021).

[16]    *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Oct. 19, 2021).

[17]    *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 19, 2021).

[18]    Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Oct. 19, 2021).

50.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

51.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[19]

52.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, driver's license number, name, and date of birth.

53.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[20]

---

[19]     Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Oct. 19, 2021).

[20]     Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Oct. 19, 2021).

54. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

55. The fraudulent activity resulting from the Data Breach may not come to light for years.

56. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[21]

57. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

58. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

---

[21] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited Oct. 19, 2021).

59.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's servers, amounting to potentially thousands of individuals' detailed, PII and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

60.     In the breach notification letter, Defendant made an offer of 12 or 24 months of identity monitoring services. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, medical and financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

61.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

62.     The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

**Plaintiff Jonathan Bowdle's Experience**

63.     Plaintiff Bowdle was required to provide his PII to Defendant in connection with his employment, which started in or about 2010 and ended in or about 2015.

64.     On or about September 14, 2021, Plaintiff Bowdle received notice from Defendant that his PII had been improperly accessed and/or obtained by unauthorized third parties. This notice indicated that Plaintiff Bowdle's PII, including name, partial Social Security number, driver's license number, payment card information, medical cards, and telephone number, was compromised as a result of the Data Breach.

65.   Plaintiff Bowdle made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to:  researching the Data Breach; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; researching and signing up for credit monitoring and identity theft protection services offered by Defendant; and contacting creditors and credit bureaus. Plaintiff Bowdle has spent at least five hours dealing with the Data Breach, valuable time Plaintiff Bowdle otherwise would have spent on other activities, including but not limited to work and/or recreation.

66.   As a result of the Data Breach, Plaintiff Bowdle has suffered emotional distress due to the release of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for purposes of identity theft and fraud. Plaintiff Bowdle is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

67.   Plaintiff Bowdle suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to:  (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from Plaintiff Bowdle; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

68.   As a result of the Data Breach, Plaintiff Bowdle anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Bowdle is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V. CLASS ALLEGATIONS

69.   Plaintiff brings this nationwide class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, for the following class:

**All individuals residing in the United States whose PII was compromised in the data breach first announced by Defendant on or about September 14, 2021 (the "Nationwide Class").**

70.   The Nevada Subclass is defined as follows:

**All individuals residing in Nevada whose PII was compromised in the data breach first announced by Defendant on or about September 14, 2021 (the "Nevada Subclass").**

The Nationwide Class and Nevada Subclass are collectively referred to herein as the "Class."

71.   Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

72.   Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

73.   <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. The Class is apparently identifiable within Defendant's records.

74.   <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

    a.   Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

    b.   Whether Defendant had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

    c.   Whether Defendant had a duty not to use the PII of Plaintiff and Class

Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

l. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

75. Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because he had his PII compromised as a result of the Data Breach due to Defendant's misfeasance.

76. Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds

generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

77.    <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

78.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

79.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs

alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

80.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

81.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

82.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

83.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

84.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendant owed a legal duty to Plaintiff and Class Members

to exercise due care in collecting, storing, using, and safeguarding their PII;

b.  Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e.  Whether Defendant breached the implied contract;

f.  Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and,

i.  Whether Class Members are entitled to actual damages, statutory damages, nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## COUNT I
## NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

85.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

86.    As a condition of their employment with Defendant or by purchasing goods from Defendant, Defendant's current and former employees and customers were obligated to provide Defendant with PII, among other sensitive PII, their names, Social Security numbers, driver's license numbers and payment card information.

87.    Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

88.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

89.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

90.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

91.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' PII that Defendant was no longer required to retain pursuant to regulations.

92.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Class.

93.    Defendant's duty to use reasonable security measures arose as a result

of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of employment with the company or making purchases from Defendant.

94.   Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

95.   A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

96.   Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting or redacting PII stored on Defendant's systems.

97.   Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions to not comply with industry standards for the safekeeping of the PII of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

98.   Plaintiff and the Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

99.   Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

100.   Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class

1    to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use
2    of their PII by third parties.

3    101.   Defendant had a duty to employ proper procedures to prevent the
4    unauthorized dissemination of the PII of Plaintiff and the Class.

5    102.   Defendant has admitted that the PII of Plaintiff and the Class was
6    wrongfully lost and disclosed to unauthorized third persons as a result of the Data
7    Breach.

8    103.   Defendant, through its actions and/or omissions, unlawfully breached
9    its duties to Plaintiff and the Class by failing to implement industry protocols and
10   exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the
11   Class during the time the PII was within Defendant's possession or control.

12   104.   Defendant improperly and inadequately safeguarded the PII of Plaintiff
13   and the Class in deviation of standard industry rules, regulations, and practices at the
14   time of the Data Breach.

15   105.   Defendant failed to heed industry warnings and alerts to provide
16   adequate safeguards to protect the PII of Plaintiff and the Class in the face of
17   increased risk of theft.

18   106.   Defendant, through its actions and/or omissions, unlawfully breached
19   its duty to Plaintiff and the Class by failing to have appropriate procedures in place
20   to detect and prevent dissemination of its current and former employees' PII.

21   107.   Defendant, through its actions and/or omissions, unlawfully breached
22   its duty to adequately and timely disclose to Plaintiff and the Class the existence and
23   scope of the Data Breach.

24   108.   But for Defendant's wrongful and negligent breach of duties owed to
25   Plaintiff and the Class, the PII of Plaintiff and the Class would not have been
26   compromised.

27   109.   There is a close causal connection between Defendant's failure to
28   implement security measures to protect the PII of Plaintiff and the Class and the

present harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

110. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

111. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

112. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

113. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

114. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

115. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII;

(iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Class; and (viii) costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

116. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

117. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

118. Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorney fees, costs, and expenses.

/ / /

/ / /

## COUNT II
### BREACH OF IMPLIED CONTRACT
#### (On Behalf of Plaintiff and the Nationwide Class)

119. Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

120. Defendant required Plaintiff and the Class to provide their PII, including names, addresses, Social Security numbers, driver's license numbers or government issued identification numbers, and other PII, as a condition of their employment or purchases.

121. As a condition of their employment with or purchases from Defendant, Plaintiff and the Class provided their PII. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

122. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

123. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their PII, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

124. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer): ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and

credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

**COUNT III**
**INVASION OF PRIVACY**
**(On Behalf of Plaintiff and the Nationwide Class)**

125.   Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

126.   Plaintiff and the Class had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

127.   Defendant owed a duty to its current and former customers and employees, including Plaintiff and the Class, to keep their PII confidential.

128.   Defendant failed to protect and released to unknown and unauthorized third parties the PII of Plaintiff and the Class.

129.   Defendant allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiff and the Class, by way of Defendant's failure to protect the PII.

130.   The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and the Class is highly offensive to a reasonable person.

131.   The intrusion was into a place or thing which was private and is entitled to be private.  Plaintiff and the Class disclosed their PII to Defendant as part of the current and former employees' employment with Defendant and/or during a consumer transaction with Defendant, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

132.   The Data Breach at the hands of Defendant constitutes an intentional

- 32 -

interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

133.   Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

134.   Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Class.

135.   As a proximate result of the above acts and omissions of Defendant, the PII of Plaintiff and the Class was disclosed to third parties without authorization, causing Plaintiff and the Class to suffer damages.

136.   Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

<u>**COUNT IV**</u>
**BREACH OF CONFIDENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

137.   Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

138.   At all times during Plaintiff's and the Class's interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and the Class's PII that Plaintiff and the Class provided to Defendant.

139.   As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and the Class's

PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

140.   Plaintiff and the Class provided their PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

141.   Plaintiff and the Class also provided Plaintiff's and the Class's PII to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect that PII from unauthorized disclosure.

142.   Defendant voluntarily received in confidence Plaintiff's and the Class's PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

143.   Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and the Class's PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and the Class's confidence, and without their express permission.

144.   As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and the Class have suffered damages.

145.   But for Defendant's disclosure of Plaintiff's and the Class's PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and the Class's PII as well as the resulting damages.

146.   The injury and harm Plaintiff and the Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and the Class's PII. Defendant knew or should have known its methods of accepting and securing Plaintiff's and the Class's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and the Class's PII.

147.   As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of current and former  customers and employees; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

148.   As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

149.   Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

150.   Defendant benefited from receiving Plaintiff's and Class Members' PII by its ability to retain and use that information for its own benefit. Defendant understood this benefit.

151.   Defendant also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

152.   Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of their employment and by purchasing goods from Defendant, and in connection thereto, by providing their PII to Defendant with the understanding that Defendant would pay for the administrative costs of reasonable data privacy and security practices and procedures. Specifically, they were required to provide Defendant with their PII.  In exchange, Plaintiff and Class members should have received adequate protection and data security for such PII held by Defendant.

153.   Defendant knew Plaintiff and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

154.   Defendant failed to provide reasonable security, safeguards, and protections to the PII of Plaintiff and Class Members.

155.   Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

156.   Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

157.   Defendant's enrichment at the expense of Plaintiff and Class Members is and was unjust.

158.   As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

## COUNT VI
**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**NEV. REV. STAT. §§ 598.0915 & 598.0923**
**(On Behalf of Plaintiff and the Nevada Subclass)**

159.   Plaintiff and the Nevada Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

160.   Defendant advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

161.   Defendant engaged in deceptive trade practices in the course of business in violation of Nev. Rev. Stat. sections 598.0915 and 598.0923, including:

    a. Knowingly making a false representation as to the characteristics, uses, and benefits of goods or services for sale in violation of Nev. Rev. Stat. section 598.0915(5);

    b. Representing that goods or services for sale are of a particular standard, quality, or grade when Defendant should have known that they were not of that standard in violation of Nev. Rev. Stat. section 598.0915(7);

    c. Advertising goods or services with the intent not to sell them as advertised, which violates Nev. Rev. Stat. section 598.0915(9);

    d. Failing to disclose a material fact in connection with the sale of goods or services in violation of Nev. Rev. Stat. section 598.0923(A)(2); and

e.  Violating state and federal statutes or regulations relating to the sale of goods or services in violation of Nev. Rev. Stat. section 598.0923(A)(3).

162.  Defendant's deceptive trade actions include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect PII belonging to Plaintiff and the Nevada Subclass, which was a direct and proximate cause of the breach;

b.  Failing to identify foreseeable security and privacy risks, remediate security and privacy risks, and adequately improve security and privacy measures following the Data Breach, which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of PII belonging to Plaintiff and the Nevada Subclass, such as the duties imposed by section 5 of the FTC Act, and Nevada's data security statute, Nev. Rev. Stat. sections 603A.210 and 603A.200, which was the direct and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of PII belonging to Plaintiff and the Nevada Subclass, such as through implementing reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of PII belonging to Plaintiff and the Nevada Subclass, such as the duties imposed by section 5 of the FTC Act and Nevada's data security statute, Nev. Rev. Stat. sections 603A.210 and 603A.200;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure PII belonging to Plaintiff and the Nevada Subclass; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of PII belonging to Plaintiff and the Nevada Subclass, such as the duties imposed by section 5 of the FTC Act, and Nevada's data security statute, Nev. Rev. Stat. sections 603A.210 and 603A.200.

163.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect PII.

164.   Defendant would not have been able to continue to operate had it disclosed to Plaintiff and the Nevada Subclass that its data systems were not secure and as a result were open to attack; rather, Defendant would have been forced to adopt reasonable security measures and comply with the law. Instead, Defendant received, maintained, and compiled the PII belonging to Plaintiff and the Nevada Subclass as part of its representations to Plaintiff and the Nevada Subclass. Plaintiff and the Nevada Subclass entrusted this information to Defendant either for employment or in exchange for services. Plaintiff and the Nevada Subclass would not have provided their PII to Defendant had they known the security practices were insufficient to maintain the safety and confidentiality of the PII. Accordingly, Plaintiff and the Nevada Subclass acted reasonably in relying on Defendant's misrepresentations and omissions, which could not have been discovered by Plaintiff or the Nevada Subclass.

165.   Defendant acted intentionally, knowingly, and maliciously to violate Nevada's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Nevada Subclass members' rights.

166.   As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff and the Nevada Subclass have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity

how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of current and former employees; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Nevada Subclass.

167.   Plaintiff and the Nevada Subclass seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, and attorneys' fees and costs.

## COUNT VII
### VIOLATION OF THE NEVADA DATA BREACH LAW,
### Nev. Rev. Stat. § 603A.010, *et seq.*
### (On Behalf of Plaintiff and the Nevada Subclass)

168.   Plaintiff and the Nevada Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 84.

169.   Nev. Rev. Stat., section 603A.010, *et seq.*, which is the Nevada Data Breach Law, requires "data breach collector[s] that maintain records which contain personal information of a resident of [Nevada] [to] implement and maintain reasonable security measures to protect those records from unauthorized access,

acquisition, destruction, use, modification, or disclosure." Nev. Rev. Stat. § 603A.210(1).

170.   Further, a data collector must "disclose any breach of the security of the system data following discovery or notification of the breach to any resident of [Nevada] whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure must be made in the most expedient time possible and without unreasonable delay . . . ." Nev. Rev. Stat. § 603A.220(1).

171.   Defendant suffered a breach of security of the system data as defined in the Nevada Data Breach Law, section 603A.020.

172.   Defendant was a data collector as defined in the Nevada Data Breach Law, section 603A.030.

173.   The data breach involved personal information as defined in the Nevada Data Breach Law, section 603A.040.

174.   Plaintiff and the Nevada Subclass are within the class of persons the Nevada Data Breach Law was intended to protect.

175.   The harm that occurred is the type of harm that the Nevada Data Breach Law intended to guard against.

176.   Defendant owed a duty to Plaintiff and the Nevada Subclass pursuant to the Nevada Data Breach Law.

177.   Defendant breached its duty under the Nevada Data Breach Law by, among others, failing to maintain and implement reasonable security and privacy measures to protect PII belonging to Plaintiff and the Nevada Subclass, failing to minimize the PII that any data breach could compromise, and by failing to provide notice to affected employees and customers in a timely manner so that they could minimize the impact of the incident.

178.   Defendant's breach of its duties have directly and proximately injured Plaintiff and the Nevada Subclass by foreseeably causing them to spend time and

resources investigating the extent to which their PII was compromised, taking reasonable steps to minimize the extent to which the breach impacted their credit, reputation, and finances, and by taking reasonable steps now, and in the future, to redress any damage from the breach such as fraud and identity theft.

179.   Plaintiff and the Nevada Subclass seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, and attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grant the following:

A.   For an Order certifying the Class, as defined herein, and appointing Plaintiff and his Counsel to represent each such Class;

B.   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.   For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.   prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.   requiring Defendant to delete, destroy, and purge the personal

identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.   prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.   requiring Defendant to conduct regular database scanning and securing checks;

xi.   requiring Defendant to establish an information security training

program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-

party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.   For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.   For prejudgment interest on all amounts awarded; and

G.   Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands that this matter be tried before a jury.

Dated: October 27, 2021            Respectfully Submitted,

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**

By:      */s/ Rachele R. Byrd*
           RACHELE R. BYRD

BETSY C. MANIFOLD
RACHELE R. BYRD
MARISA C. LIVESAY
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com

M. Anderson Berry
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**

865 Howe Avenue
Sacramento, CA 95825
Telephone:  (916) 239-4778
Facsimile:   (916) 924-1829
aberry@justice4you.com

*Attorneys for Plaintiff and
the Proposed Class*

27800v2