RACHELE R. BYRD (190634)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
byrd@whafh.com

M. ANDERSON BERRY (262879)
**CLAYEO C. ARNOLD,**
  **A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com

*Attorneys for Plaintiff*

## THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JONATHAN BOWDLE, individually
and on behalf of all others similarly
situated,

                    Plaintiff,

        v.

KING'S SEAFOOD COMPANY, LLC,

                    Defendant.

Case No. 8:21-cv-01784-CJC-JDE

**PLAINTIFF'S NOTICE OF
MOTION AND UNOPPOSED
MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM
OF POINTS AND AUTHORITIES**

DATE:        September 26, 2022
TIME:         1:30 p.m.
ROOM:      9 B
JUDGE:     Hon. Cormac J. Carney

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE THAT** on September 26, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Cormac J. Carney, United States District Court for the Central District of California, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Courtroom 9 B, Santa Ana, CA, 92701-4516, Plaintiff Jonathan Bowdle ("Plaintiff" or "Settlement Class Representative"), on behalf of himself and all others similarly situated ("Class Members" or "Settlement Class")[1], will and hereby does move for an order preliminarily approving the class action settlement entered into between Plaintiff and King's Seafood Company, LLC ("King's Seafood," or "Defendant" and, together with Plaintiff, the "Parties"). Plaintiff hereby moves this Court for an order: (1) granting preliminary approval of the class settlement reached by the Parties ("Settlement"); and (2) provisional certification of the Settlement Class (together, the "Motion").

This Motion is based on this Notice and supported by the Memorandum of Points and Authorities, the Joint Declaration and exhibits thereto, the Class Action Complaint ("CAC"), and all other pleadings and papers on file in this action. Plaintiff respectfully requests that the Court grant the relief requested in the [Proposed] Order submitted herewith.

This motion is unopposed and is made following the conference of counsel pursuant to L.R. 7-3 which took place during settlement negotiations on numerous dates beginning on or about December 21, 2021 and concluding on August 4, 2022.

---

[1]    Capitalized terms not defined in this Motion shall have the definitions ascribed to them in the Settlement Agreement attached as Exhibit 1 to the Joint Declaration of Rachele R. Byrd and M. Anderson Berry in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Joint Declaration" or "Joint Decl.").

1   DATE: August 26, 2022

2                                                    Respectfully Submitted,

3                                                    */s/ Rachele R. Byrd*
                                                     RACHELE R. BYRD (190634)
4                                                    **WOLF HALDENSTEIN ADLER**
                                                     **FREEMAN & HERZ LLP**
5                                                    750 B Street, Suite 1820
6                                                    San Diego, CA  92101
                                                     Telephone: 619/239-4599
7                                                    Facsimile: 619/234-4599
8                                                    byrd@whafh.com

9
                                                     M. ANDERSON BERRY (262879)
10                                                   **CLAYEO C. ARNOLD,**
11                                                   **A PROFESSIONAL LAW CORP.**
                                                     865 Howe Avenue
12                                                   Sacramento, CA 95825
13                                                   Tel: (916) 239-4778
                                                     Facs: (916)0924-1829
14                                                   aberry@justice4you.com
15

16                                                   *Attorneys for Plaintiff*
17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION …………………………………………………...  1

II.    STATEMENT OF FACTS…………………………………………...  1

III.   PROCEDURAL HISTORY ………………………………………  2

IV.    THE SETTLEMENT TERMS…………………………………………  2

       A.    Proposed Settlement Class …………………………………  2

       B.    Settlement Benefits – Monetary Relief …………………………  3

             1.    Compensation for Ordinary Losses …………………………  3

             2.    Compensation for Extraordinary Losses ……………………  3

       C.    Non-Monetary Settlement Benefits – Identity Protection
             and Credit Monitoring Services …………………………………....  4

       D.    Business Practices Enhancements, Including Monetary
             Investment and Data Security …………………………………  4

       E.    Class Notice and Settlement Administration ……………………...  5

       F.    Attorneys' Fees and Expenses …………………………………  6

       G.    Service Award to Settlement Class Representative ………………  6

       H.    Release …………………………………………………………  7

V.     LEGAL STANDARDS …………………………………………………  7

VI.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS
       APPROPRIATE ………………………………………………………  9

       A.    The Negotiated Settlement is Fundamentally Fair, Reasonable,
             and Adequate …………………………………………………  9

             1.    The Strength of Plaintiff's Case …………………………  11
             2.    The Risk, Expense, Complexity, and Likely Duration of
                   Further Litigation ……………………………………………..  11

             3.    The Risk of Maintaining Class Action Status Through Trial …  12

             4.    Amount Offered in Settlement …………………………....…  13

5.  The Extent of Discovery Completed and the Stage of Proceedings ……………………………………………………… 14

6.  The Experience and Views of Counsel ……………………….. 15

7.  Governmental Participants ……………………………………. 15

8.  The Reaction of the Class Members to the Proposed Settlement ……………………………………………………… 15

9.  Lack of Collusion among the Parties ………………………… 15

10. The Settlement Treats Settlement Class Members Equitably …. 16

B.  The Court Should Approve the Proposed Notice Program ………... 17
C.  Appointment of the Settlement Administrator ……………………. 18
D.  Appointment of Settlement Class Counsel ……………………….. 18

VII.  PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE ………. 19

A.  The Class Satisfies Rule 23(a) …………………………….......... 19

1.  The Class is Sufficiently Numerous …………………………... 19

2.  The Class Satisfies the Commonality Requirement ………….. 20

3.  Plaintiff's Claims are Typical of the Class ……………….….. 21

4.  Plaintiff Will Adequately Protect the Interests of the Class ……………………………………………………… 21

B.  The Settlement Satisfies Rule 23(b)(3) ……………………........ 22

1.  Common Questions of Law and Fact Predominate ……….... 22

2.  A Class Action is the Superior Mechanism for Adjudication ……………………………………………....... 23

VIII. CONCLUSION ……………………………………………….... 24

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

<u>Cases</u>

*Acosta v. Trans Union LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007)………..………………………............. 8

*Aguallo v. Kemper Corporation*,
  No. 1:21-cv-01883 (N.D. Ill. Oct. 14, 2021) ...................................…………........14

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................19, 22, 23

*Bykov v. DC Trans. Services, Inc.*,
  2019 U.S. Dist. LEXIS 54652 (E.D. Cal. Mar. 29, 2019) ...................................9

*Calderon v. Wolf Firm*,
  2018 U.S. Dist. LEXIS 42054 (C.D. Cal. Mar. 13, 2018) ...…………………….14

*Capaci v. Sports Rsch. Corp.*,
  2022 U.S. Dist. LEXIS 72856 (C.D. Cal. Apr. 14, 2022)……………..…….. 22

*Chester v. TJX Cos.*,
  2017 U.S. Dist. LEXIS 201121 (C.D. Cal. Dec. 5, 2017) .............................11

*Chua v. City of L.A.*,
  2017 U.S. Dist. LEXIS 224221 (C.D. Cal. May 25, 2017) ……………..…….. 22

*Churchill Village, LLC v. Gen. Elec. Co.*,
  361 F.3d 566 (9th Cir. 2004) ...…………………………………………… 9

*Class Plaintiffs v. City of Seattle*,
  955 F. 2d 1268 (9th Cir. 1992) ...……………………………………………..8

*Corder v. Houston's Rests., Inc.*,
  2007 U.S. Dist. LEXIS 105049 (C.D. Cal. Jan. 5, 2007) …………………….8

*Dennis v. Kellogg Co.*,
  2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013) ...............................11

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ...........................................................................17

*Ellis v. Costco Wholesale Corp*.,
   657 F.3d 970 (9th Cir. 2011) ....................................................19, 21

*Forcellati v. Hyland's, Inc.*,
   2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) .........................21

*Ford v. [24]7.AI, Inc.*,
   No. 5:18-cv-02770 (N.D. Cal. July 2, 2021) ...............................….................13

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989)……………………………………………......10

*Gautreaux v. Pierce,*
   690 F.2d 616 (7th Cir. 1982)……………………………………….......10

*Gribble v. Cool Transps., Inc.*,
   2008 U.S. Dist. LEXIS 115560 (C.D. Cal. Dec. 15, 2008) …………..……......10

*Grimm v. Am. Eagle Airlines, Inc.*
   2014 U.S. Dist. LEXIS 199608 (C.D. Cal. Sep. 24, 2014) …………..……......12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)......................................................10, 21, 22

*Hillman v. Lexicon Consulting, Inc*.,
   2017 U.S. Dist. LEXIS 230265 (C.D. Cal. April 27, 2017) ...........................14

*Holly v. Alta Newport Hospital,*
   2020 U.S. Dist. LEXIS 64104 (April 10, 2020)........................................20

*Hudson v. Libre Technology Inc.*,
   2020 U.S. Dist. LEXIS 84576 (S.D. Cal. May 13, 2020) ................................16

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) .......................................................24

*In re Banc of Cal. Sec. Litig.*,
   2019 U.S. Dist. LEXIS 209386 (C.D. Cal. Dec. 4, 2019) ……………………..9

*In re Bluetooth Headset Prods. Liab. Litig*.,
   654 F.3d 935 (9th Cir. 2011) ............................................................................. 10

*In re Brinker Data Incident Litig.*
   2021 U.S. Dist. LEXIS 71965 (M.D. Fla. Apr. 14, 2021) ……………………..12

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ……………………………………….............13

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ………..……………10

*In re Google LLC St. View Elec. Communs. Litig.*,
   2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020) ……………………...20

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ...................................................................... 17, 21

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ................................................................... 24

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig*.,
   2022 U.S. Dist. LEXIS 80575 (D. Md. May 3, 2022) …………………………12

*In re MRV Communs., Inc. Derivative Litig.*,
   2013 U.S. Dist. LEXIS 86295 (C.D. Cal. June 6, 2013) ………..…………….13

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   2019 U.S. Dist. LEXIS 127093 (D. Or. July 29, 2019) ………………………20

*In re Tableware Antitrust Litig.*,
   84 F. Supp. 2d 1078 (N.D. Cal. 2007)......................................................8, 9, 16

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig*.,
   266 F. Supp. 3d 1 (D.D.C. 2017) ................................................................. 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
  No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019) ........................................ 16

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.),*
  654 F.3d 935 (9th Cir. 2011) ……………………………...…………………..10

*Just Film, Inc. v. Buono,*
  847 F.3d 1108 (9th Cir. 2017) ........................................................................ 21

*Keegan v. Am. Honda Motor Co,*
  284 F.R.D. 504 (C.D. Cal. 2012) ………………………….……………..23

*Linney v. Cellular Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998)............................................................9, 11, 14

*Longest v. Green Tree Servicing LLC,*
  308 F.R.D. 310 (C.D. Cal. 2015) ..................................................................... 21

*Murillo v. Pacific Gas & Elec. Co.,*
  266 F.R.D. 468 (E.D. Cal. 2010)..................................................................... 10

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... 15

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) …………………………………………..…..8

*Orantes-Hernandez v. Smith,*
  541 F. Supp. 351 (C.D. Cal. 1982).................................................................20

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) ........................................................................................17

*Pauley v. CF Entertainment,*
  2020 U.S. Dist. LEXIS 187614 (C.D. Cal. July 23, 2020) ………….…….…6

*Rannis v. Recchia,*
  380 F. App'x 646 (9th Cir. 2010) ..................................................................20

*Reynoso v. All Power Mfg. Co.,*
    2018 U.S. Dist. LEXIS 227475 (C.D. Cal. Apr. 30, 2018) ...……...……....22

*Sadowska v. Volkswagen Grp. of Am., Inc.,*
    2013 U.S. Dist. LEXIS 188582 (C.D. Cal. Sep. 25, 2013) ………....…………9

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
    157 F. Supp. 2d 561 (E.D. Pa. 2001)..…………………...……………….8

*Smith v. Triad of Ala., LLC,*
    2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) ...............................12

*Turcios v. Carma Labs., Inc.,*
    296 F.R.D. 638 (C.D. Cal. 2014) …………………….……………..……..20

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................................20

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ………………………………..………...21

## **Rules**

Fed. R. Civ. P. 23(a) ........................................................................................19

Fed. R. Civ. P. 23(a)(1) ...................................................................................20

Fed. R. Civ. P. 23(a)(3) ...................................................................................21

Fed. R. Civ. P. 23(a)(4) ...................................................................................21

Fed. R. Civ. P. 23(b)(1), (2) or (3).............................................................22, 24

Fed. R. Civ. P. 23(c)(2) ...................................................................................17

Fed. R. Civ. P. 23(e) ..........................................................................................7

Fed. R. Civ. P. 23(e)(1) .................................................................................9, 17

Fed. R. Civ. P. 23(e)(2) .................................................................................8, 16

Fed. R. Civ. P. 23(g)(1) ...................................................................................18

**<u>Other</u>**

Manual for Complex Litigation (Fourth) (2004)......................................................8

*Newberg on Class Actions, et seq.* (5th ed. 2017)………………………………………....... 8

## I.     INTRODUCTION

Plaintiff, on behalf of himself and others similarly situated, hereby submits this unopposed Motion seeking an order: (1) granting preliminary approval of the class action settlement reached by the Parties (the "Settlement"); and (2) provisionally certifying the Settlement Class.  The proposed Settlement satisfies the criteria for preliminary settlement approval under Federal law.  Moreover, Plaintiff strongly believes the Settlement is fair, reasonable, and adequate.  Therefore, respectfully, the Court should grant this Motion and notice should be distributed to Settlement Class Members.

## II.    STATEMENT OF FACTS

This matter concerns a putative class action arising out of a data breach (the "Data Security Incident").  Plaintiff alleges that on or around August 23, 2021, Defendant learned that personally identifiable information ("PII") "may have been compromised during a cyber-attack which began on June 4, 2021."[2]  Joint Declaration of Rachele R. Byrd and M. Anderson Berry in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl."), ¶ 6. Plaintiff further alleges that the hacker gained access to directories where PII was stored.  *Id.*  "The unauthorized individual was capable of accessing and acquiring the [PII] in the directories."[3]  *Id.*  Defendant issued a "Notice of Data Breach," dated September 14, 2021, to those whose PII may have been affected.  *Id.*, ¶ 7.  Plaintiff further alleges that his and the Class Members' unprotected PII can be sold on the dark web, leaving Plaintiff and Class Members to now face a present and lifetime risk of identity theft, heightened here by the loss of Social Security and driver's license numbers.  *Id.*, ¶ 8.  Consequently, on October 27, 2021, Plaintiff filed a CAC (the "Litigation") on behalf of himself and Class Members, asserting claims against

---

[2]     https://www.doj.nh.gov/consumer/security-breaches/documents/kings-seafood-20210920.pdf (last visited Aug. 1, 2022).

[3]     *Id.*

Defendant relating to the Data Security Incident and Defendant's failure to (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing sensitive PII using adequate security procedures. *Id.*, ¶ 9.

## III.   PROCEDURAL HISTORY

Proposed Settlement Class Counsel for Plaintiff and the Settlement Class commenced this Litigation on October 27, 2021. *See Jonathan Bowdle v. King's Seafood Company, LLC*, No. 8:21-cv-01784-CJC-JDE (C.D. Cal.). Defendant filed a motion to dismiss the CAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") on February 28, 2022. Over the course of several months, the Parties engaged in numerous, arms-length, sometimes contentious, settlement negotiations. The Parties' unwavering pursuit of settlement negotiations led them to eventually reach a settlement in principle on all terms, including attorneys' fees, costs and expenses, and the service award. The Parties then memorialized the terms of the Settlement in a Settlement Agreement dated August 23, 2022. *See* Joint Decl., Ex. 1.

## IV.   THE SETTLEMENT TERMS

The Settlement Agreement provides, in part, the following:

### A.   Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "all individuals residing in the United States to whom Defendant or its authorized representative sent a notice concerning the 2021 Data Security Incident announced by Defendant." Settlement Agreement ("SA"), § 1.6. The Settlement Class specifically excludes: (i) King's Seafood and King's Seafood's parents, subsidiaries, affiliates, officers, and directors, and any entity in which King's Seafood has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and (iii) all judges

assigned to hear any aspect of this Litigation as well as their immediate family members. *Id.*

**B.    Settlement Benefits – Monetary Relief**

The Settlement provides for two separate forms of monetary relief to Settlement Class Members who submit a valid and timely Claim Form: (1) reimbursement of ordinary expenses and lost time up to $450 per Settlement Class Member; and (2) reimbursement of extraordinary expenses up to $3,000 per Class Member.  SA, §§ 2.2.1-2.2.2.

**1.    Compensation for Ordinary Losses**

The first category of payments reimburses each Settlement Class Member up to $450 in compensation upon submission of a valid and timely Claim Form and supporting documentation for ordinary out-of-pocket losses incurred as a direct result of the Data Security Incident. *Id.*, § 2.2.1.  Ordinary losses can arise from the following categories of expenses, fees and lost time: (1) out of pocket expenses incurred as a direct result of the Data Security Incident; (2) unreimbursed fees for credit reports, credit monitoring, or other identity theft insurance products purchased between June 4, 2021 and the Claims Deadline, supported by documentation and reasonably connected to the Data Security Incident; and (3) reimbursement for lost time reasonably spent responding to the Data Security Incident. *Id.*  Settlement Class Members may claim up to three (3) hours of time compensated at the rate of $20 per hour so long as the lost time is fairly traceable to the Data Security Incident, reasonably described by type of lost time incurred, and supported by an attestation under penalty of perjury that the time spent was reasonably incurred dealing with the Data Security Incident. *Id.*

**2.    Compensation for Extraordinary Losses**

The second category provides for reimbursement of extraordinary expenses, up to $3,000 per Settlement Class Member who submits a valid and timely claim form. *Id.*, § 2.2.2.  Providing certain specific conditions are met, each Settlement

Class Member must prove monetary loss directly arising from identity theft perpetrated on or against the Settlement Class Member. *Id.*

### C. Non-Monetary Settlement Benefits – Identity Protection and Credit Monitoring Services

In addition to the potential cash benefits outlined above, King's Seafood has agreed to make available to Settlement Class Members identity-theft protection, called "Financial Shield" by Aura, for a period of two (2) years, with the commencement of protection and monitoring to begin upon the Court's final approval of the Settlement, and to remain available for commencement for 90 days thereafter. *Id.*, § 2.1. The protection and monitoring will include:

i. Credit monitoring at one of the three major credit reporting agencies: Equifax, Experian or TransUnion;

ii. Dark web monitoring;

iii. Identity restoration and recovery services; and

iv. $1,000,000 identity theft insurance with no deductible. *Id.*

Settlement Class Members can submit Claim Forms for these identity protection and credit monitoring services whether or not they are eligible for a monetary recovery under this Settlement. *Id.* Those Settlement Class Members who submit valid and timely claim forms for monitoring and protection services and who already have obtained monitoring and protection services offered through Defendant as a result of the Data Security Incident will receive an additional two (2) years of monitoring and protection services from the expiration date of the monitoring and protection services already received. *Id.*, § 2.1.2.

### D. Business Practices Enhancements, Including Monetary Investment and Data Security

For a period of 36 months beginning in July 2021, Defendant has and will continue to undertake certain reasonable steps to enhance the security deployed to secure access to its data network, including:

i.     Periodic third-party security auditor and/or internal IT security personnel monitoring, scanning, and testing of data system security, with prompt correction of detected problems;

ii.    Periodic internal IT security personnel training on data system security, including any modifications or updates thereto;

iii.   Data system segmentation, including firewalls and access controls such that hackers cannot use a breach in one system area to access other system areas;

iv.   Use of encrypted email, including encryption of email attachments, and enlist protocols as reasonable to avoid PII storage in email accounts;

v.    Routinely conduct employee training/education on best practices to ID and avoid threats to data system;

vi.   Have a breach response plan and train IT security personnel on operation of same;

vii.  Practices to ensure reasonable software lifecycle management;

viii. Deploy active encryption software covering relevant data locations where PII maintained. *Id.*, § 2.3.

### E.  Class Notice and Settlement Administration

As part of the Settlement, King's Seafood shall pay for providing Notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of Claims Administration. *Id.*, § 4.2. The Claims Administrator, Atticus Administration LLC ("Atticus"), will mail to the Settlement Class Members the Short Notice (attached to the Settlement Agreement as Exhibit D). Declaration of Christopher Longley on Adequacy of Notice Plan ("Longley Decl.") attached to the Joint Declaration as Exhibit 2, §§ 6-8. The Short Notice will direct recipients to the Settlement Website and inform Settlement Class Members of, among other things, the Claims Deadline, the Opt-Out and Objection deadlines, and the date of the Final Fairness Hearing. SA, § 1.30, Ex. D. Prior to mailing this notice, Atticus will verify

the last known address using the National Change of Address database maintained by the United States Postal Service. Longley Decl., § 8. A Long Notice (attached to the Settlement Agreement as Exhibit B) will also be posted on the Settlement Website, along with the Claim Form (attached as Exhibit A to the Settlement Agreement) and other important documents such as the Settlement Agreement itself and the motions for final approval and for attorneys' fees, costs and expenses, and the service award. SA, § 5.3.2. Furthermore, a toll-free help line will provide Settlement Class Members with additional information about the settlement. *Id.*, § 5.3.4.

### F.    Attorneys' Fees and Expenses

After an agreement was reached as to the essential terms of a settlement (i.e., Settlement Class benefits), Defendant agreed to pay the Proposed Settlement Class Counsel attorneys' fees and litigation costs not to exceed $192,500, separate and apart from any other sums agreed to under the Settlement and subject to Court approval. *Id.*, § 9.2.[4]

### G.    Service Award to Settlement Class Representative

After an agreement had been reached as to the essential terms of a settlement (i.e., Settlement Class benefits), Defendant agreed to pay a service award of $1,750 to the Settlement Class Representative, separate and apart from any other sums agreed to under the Settlement and subject to Court approval. *Id.*, § 9.1. The amount is presumptively reasonable and commonly awarded in settled class action cases. *See, e.g.*, *Pauley v. CF Entertainment*, 2020 U.S. Dist. LEXIS 187614, at *9-10 (C.D. Cal. July 23, 2020) (This Court granted "class representative enhancement fees in the amount of $5,000 each to [p]laintiffs," finding that amount to be "presumptively reasonable").

---

[4]    Plaintiff will file, at the appropriate time, a motion for an award by the Court of attorneys' fees and costs and will demonstrate that Proposed Settlement Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature.

**H.     Release**

Upon entry of the Final Approval Order, Plaintiff and the Settlement Class will be deemed to "have, fully, finally, and forever released, relinquished, and discharged all Released Claims." SA, § 8.1. "Released Claims" are defined, *inter alia*, as:

> any and all past, present, and future claims, causes of action, lawsuits, set-offs, costs, expenses, attorneys' fees, losses, rights, demands, charges, complaints, actions, suits, petitions, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, matured or unmatured, in law or equity, and any other form of legal or equitable relief that has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons reasonably related to the operative facts alleged in or otherwise described by the Complaint. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Class Members who have timely excluded themselves from this settlement.

*Id.*, § 1.23. Released Claims include Unknown Claims (*see id*., § 1.31), but do not include the claims of individuals who have timely excluded themselves from the Settlement Class. *Id.*, § 1.23.

**V.     LEGAL STANDARDS**

A class action may not be dismissed, compromised or settled without court approval. Fed. R. Civ. P. 23(e). The Court may approve a settlement upon "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). This procedure

-7-

safeguards class members' procedural due process rights and enables a court to fulfill its role as the "guardian" of the class.  *See* 4 Herbert B. Newberg, *Newberg on Class Actions*, §§ 13.10, *et seq.* (5th ed. 2017) ("Newberg").  Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements outlined in the Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) (the "Manual"), § 21.63, *et seq.*, including (1) preliminary approval, (2) dissemination of notice to the class, and (3) a final fairness hearing.  Manual, §§ 21.632, 21.633, 21.634.

Preliminary settlement approval and dissemination of court-approved notice to the class are proper where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).

The preliminary evaluation of class action settlements focuses only on whether the proposed settlement is within the range of possible approval because the Court will make its final determination on adequacy at the final approval hearing.  *See Acosta v. Trans Union LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).  Thus, courts should grant preliminary approval of a settlement agreement unless obvious deficiencies exist such that the settlement would ultimately not weather a final approval hearing.  *See Corder v. Houston's Rests., Inc.*, 2007 U.S. Dist. LEXIS 105049, at *14 (C.D. Cal. Jan. 5, 2007).

The approval of a proposed settlement is committed to the court's wise discretion.  *See Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992) (in the context of a class action settlement, an appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon a strong showing of abuse of discretion).

Strong judicial policy favors pretrial settlement of class actions. *See Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ("[S]trong judicial policy [] favors settlements, particularly where complex class action litigation is concerned.") (quoting *Officers for Justice*, 688 F.2d at 626). Accordingly, while approval of the settlement is committed to the sound discretion of the court, "the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits." *Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 U.S. Dist. LEXIS 188582, at *8 (C.D. Cal. Sep. 25, 2013) (quoting *Officers for Justice*, 688 F.2d at 625).

Based on these standards, Plaintiff respectfully submits that, for the reasons fully articulated below, the Settlement falls squarely within the range of possible approval, and the Court should preliminarily approve the proposed Settlement.

## VI. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A. The Negotiated Settlement is Fundamentally Fair, Reasonable, and Adequate

Under Rule 23(e)(1), the issue at preliminary approval turns on whether the Court can (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal. *In re Banc of Cal. Sec. Litig.*, 2019 U.S. Dist. LEXIS 209386, at *3 (C.D. Cal. Dec. 4, 2019). In evaluating a proposed settlement at the preliminary approval stage, some district courts focus on whether the settlement is within the range of possible approval or within the range of reasonableness. *Bykov v. DC Transp. Servs.*, 2019 U.S. Dist. LEXIS 54652, at *5 (E.D. Cal. Mar. 28, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of

collusion between the negotiating parties." *Gribble v. Cool Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560, at *26 (C.D. Cal. Dec. 15, 2008) (citing *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *5-6 (C.D. Cal. June 10, 1992)).  With respect to the substantive component, the court need only determine whether the proposed settlement is within the range of "'possible approval.'"  *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In the Ninth Circuit, analysis of the fairness, reasonableness, and adequacy of a class settlement encompasses nine factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties.  *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Rule 23(e) requires consideration of several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably.  Fed. R. Civ. P. 23(e).

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable.  *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class action suits").  Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

/ / /

### 1.     The Strength of Plaintiff's Case

Plaintiff believes he has a strong case for liability.  In particular, Plaintiff believes ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiff's and the Class's PII.  Joint Decl., ¶ 16.  Moreover, Plaintiff believes that once he establishes that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the statutory and common law theories of liability Plaintiff pled in his CAC.  However, Plaintiff's success is not a guarantee.  It is reasonable to recognize that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication.  *Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118, at *3 (S.D. Cal. Nov. 14, 2013).  "Here, as with most class actions, there was risk to both sides in continuing towards trial.   The settlement avoids uncertainty for all parties involved."  *Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS 201121, at *17 (C.D. Cal. Dec. 5, 2017).  Given the challenges and inherent risks Plaintiff faces with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the Settlement favor preliminary approval of the Settlement.  Joint Decl., ¶ 19.

### 2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiff believes his case is strong, substantial risk is inherent in all cases, including this one.  This case involves a proposed class of approximately 2,875 individuals (SA, § 1.6) and a complicated and technical factual background in a relatively novel area: data breach litigation.  Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class action due to the standing challenges plaintiffs face in data breach class actions.  *See, e.g., In re*

*U.S. Office of Pers. Mgmt. Data Sec. Breach Liti*g., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a favorable one is at hand. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. And, as in any data breach case, establishing causation on a class-wide basis also remains uncertain.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the Class. Therefore, this factor favors approval.

### 3. The Risk of Maintaining Class Action Status Through Trial

If the Parties were to proceed to litigate their claims through trial, Plaintiff would encounter risks in obtaining and maintaining certification of the Class. The Class has not yet been certified, and Defendant will certainly oppose certification. Thus, Plaintiff "necessarily risk[s] losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 U.S. Dist. LEXIS 199608, at *26 (C.D. Cal. Sep. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 2022 U.S. Dist. LEXIS 80575 (D. Md. May 3, 2022) and *In re Brinker Data Incident Litig.*, 2021 U.S. Dist. LEXIS 71965 (M.D. Fla., Apr. 14, 2021). Thus, the scarcity of direct precedent amplifies the risks of continuing the Litigation.

/ / /

### 4. Amount Offered in Settlement

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, 2013 U.S. Dist. LEXIS 86295, at *12 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The Settlement here reflects an excellent result in light of the challenges that come with data breach litigation. Specifically, the Settlement provides monetary relief to Class Members who submit eligible Claim Forms. *See* SA, § 2.2. Further, Plaintiff and Class Members will receive, among other non-monetary relief, identity theft protection. *Id.*, § 2.1. Finally, the Settlement also requires significant business practice reforms in the form of Defendant's implementation of robust data security measures, which will help to protect the Settlement Class' PII going forward. Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiff would not succeed at trial, the present Settlement represents an excellent compromise of Plaintiff's and the Settlement Class Members' claims. Joint Decl., ¶ 20.

Additionally, the Settlement is in line with other settlements in cases involving data breaches of similar scope. *Id.*, ¶ 21. For example, the consideration paid by [24]7.AI, Inc. to settle a data breach class action was up to $2,000 in reimbursement for out-of-pocket expenses resulting from the data breach including up to $100 in compensation for lost time at $20 per hour per class member for a class of approximately 378,768. *See Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770, ECF No. 124-1 (N.D. Cal. July 2, 2021) (Settlement Agreement); *id.*, ECF No. 139 (N.D. Cal. Jan. 28, 2022) (order approving settlement). The Kemper data breach provided every class member 18 months of identity theft protection, up to $10,000 in out-of-pocket expense reimbursement, as well as up to six hours of lost time spent as a result of the data breach at $18 per hour, plus an additional benefit of $50 each for each California settlement class member for a class of approximately 6,151,872 (conservatively valued at $2.78 per class member). *See Aguallo v. Kemper*

*Corporation*, No. 1:21-cv-01883, ECF No. 35-3 (N.D. Ill. Oct. 14, 2021) (Settlement Agreement); *id.*, ECF No. 53 (N.D. Ill. Mar. 18 2022) (order approving settlement).  Because the settlement here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair.  *See Calderon v. Wolf Firm*, 2018 U.S. Dist. LEXIS 42054, at *21 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

In sum, this factor favors approval.

### 5. The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239.  Here, Plaintiff gathered all of the information that was available regarding King's Seafood and the Data Security Incident—including publicly-available documents concerning announcements of the Security Incident and notice of the Security Incident to its customers.  Joint Decl., ¶ 22.  The parties also exchanged information during settlement negotiations regarding the number of Settlement Class Members and the amount Defendant has and will spend on remedial measures.  *Id.*, ¶ 23.

Although the parties have not engaged in formal discovery, Proposed Settlement Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiff's and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area.  *Id.*, ¶ 24.  "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, 2017 U.S. Dist. LEXIS 230265, at *10 (C.D. Cal. Oct. 12, 2017).  Accordingly, Plaintiff made a decision fully informed about the strengths and weaknesses of this case.

### 6.    The Experience and Views of Counsel

Proposed Settlement Class Counsel initiated this lawsuit after Defendant announced the Data Security Incident, which impacted approximately 2,875 individuals.  SA, § 1.6.  Proposed Settlement Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one.  *See* Joint Decl., ¶ 25 and Exs. 3 and 4 thereto.  Having worked on behalf of the Class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, Proposed Settlement Class Counsel fully endorse the Settlement.  *Id.*, ¶ 26.  A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  Therefore, this factor supports approval.

### 7.    Governmental Participants.

There is no governmental participant in this matter.  This factor is neutral.

### 8.    The Reaction of the Class Members to the Proposed Settlement

Because Notice has not yet been given, this factor is not yet implicated; however, Plaintiff supports the Settlement.  Joint Decl., ¶ 15.

### 9.    Lack of Collusion among the Parties

The Parties negotiated a substantial, multifaceted Settlement, as described above.  The parties did not negotiate attorneys' fees and the service award until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations.  Furthermore, Proposed Settlement Class Counsel and Defendant's counsel are well versed in handling data breach class actions such as this one and fully understand

the values recovered in similar cases.  Therefore, the Court can rest assured that the negotiations were not collusive.

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, under Rule 23(e)(2)(D), the court must confirm that the settlement treats all class members as equitably as possible under the circumstances.  Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).  In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class."  *Hudson v. Libre Tech. Inc.*, 2020 U.S. Dist. LEXIS 84576, at *26 (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Here, all Settlement Class Members benefit from the same relief, so no preferential treatment exists.  Each Settlement Class Member can claim up to $450 in reimbursements for ordinary expenses and time spent and up to $3,000 in reimbursements for extraordinary expenses, and all Settlement Class Members are eligible to receive identity theft protection.

While Plaintiff will also seek approval of a service award from this Court, as will be explained in detail at Plaintiff's motion for attorneys' fees, the award of $1,750 aligns with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiff's adequacy or the validity of the Settlement.  *See, e.g. In re Yahoo Mail Litig.*, 2016 U.S. Dist. LEXIS 115056, at *36 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").  As such, this factor also weighs in favor of approval.

/ / /

-16-

**B.    The Court Should Approve the Proposed Notice Program**

Before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  This means "individual notice to all members who can be identified through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  To satisfy due process, notice to class members must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably.  *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 567 (9th Cir. 2019).  Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.  *Id.*

Here, the Parties have agreed to a robust Notice program.  Joint Decl. ¶¶ 13-14.  The costs of administering the Settlement will be paid by Defendant and will not negatively interfere with the amount available to Settlement Class Members who make valid claims.  SA, § 4.1.  The Notice and Claim Forms negotiated by the Parties are clear and comprehensive and inform Settlement Class Members of their rights and options under the Settlement, including how to make a claim, object to the Settlement, or opt-out of the Settlement.  *Id.*, Exs. A, B and D.  In addition to the direct Notice, a dedicated Settlement Website, to be maintained and updated throughout the Claims Period, will contain the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement.  *Id.*, § 5.3.2, Exs. A, B and D.  Finally, a toll-free help line will be active and provide

Settlement Class Members with additional information about the settlement. *Id.*, § 5.3.4.

Plaintiff has therefore negotiated a Notice program that reasonably apprises Class Members of the pendency of the action and affords them an opportunity to present their objections. Because the Notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it.

**C.    Appointment of the Settlement Administrator**

In connection with implementation of the Notice program and administration of the settlement benefits, the Parties request that the Court appoint Atticus to serve as the Claims Administrator. Atticus has a proven track record of supporting hundreds of class action administrations, with ample legal administration experience. Longley Decl., ¶ 2. Notice and administration is expected to cost up to $20,000 and will be paid by Defendant separate and apart from the relief to the Class. *Id.*, Ex. B.

**D.    Appointment of Settlement Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Joint Decl. ¶ 25 and Exs. 3 and 4 (firm resumes). Accordingly, the Court should appoint M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation and Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP as Settlement Class Counsel.

## VII.  PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE

In cases presented for preliminary approval of a settlement, the court must first make a determination that the proposed class satisfies the criteria under Rule 23.  Manual for Complex Litigation (Fourth), § 21.632.  Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than it would be in a case not yet settled.  In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.  More traditional means of handling claims, such as individual litigation, would unduly hinder judicial efficiency in terms of costs and resources.  Thus, a settlement—and specifically the Settlement proposed here—best facilitates the relief in the context of a class under the requirements of Rule 23(a) and (b).

### A.      The Class Satisfies Rule 23(a)

The requirements of Rule 23(a) are well settled:  numerosity, commonality, typicality, and adequacy—each of which is met here.  Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011).

#### 1.      The Class is Sufficiently Numerous

While there is no fixed point grounding the numerosity requirement, courts find numerosity where there are so many class members as to make joinder

impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014) (citing *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) (*overturned on different grounds*).  Generally, Courts will find numerosity is satisfied where a class includes at least 40 members.  *Holly v. Alta Newport Hosp., Inc.*, 2020 U.S. Dist. LEXIS 64104, at *18 (C.D. Cal. Apr. 10, 2020) (citing *Rannis v. Recchia,* 380 Fed. App'x 646, 650-51 (9th Cir. 2010)).  Numbering approximately 2,875 individuals (SA, § 1.25), the Class here easily satisfies Rule 23's numerosity requirement.   Joinder of the 2,865 individuals is clearly impracticable—thus the numerosity prong is satisfied.

## 2.    The Class Satisfies the Commonality Requirement

The Class also satisfies the commonality requirement, under which Class Members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Here, as in most data breach cases, courts in the Ninth Circuit have found that these common issues all center around Defendant's misconduct, and in particular, around its inadequate data security practices, satisfying the commonality requirement.  *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, at *31 (D. Or. July 29, 2019).  For the same reason, predominance is readily met "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'"  *In re Google LLC St. View Elec. Communs. Litig.*, 2020 U.S. Dist. LEXIS 47928, at *21 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)).  Thus, common questions include, among many, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' PII was compromised during the Data Security Incident;

whether Defendant owed a duty to Plaintiff and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiff and Class Members of the material facts of the Data Security Incident.

Thus, the proposed Class meets the commonality requirement of Rule 23(a).

### 3.      Plaintiff's Claims are Typical of the Class

Plaintiff's claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect Plaintiff's and Class Members' PII and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *31 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs' claims were reasonably co-extensive with those of absent class members).   Plaintiff here alleges that his PII was compromised, and that as a result, Defendant's same poor data security practices caused him the same injury that the Class suffered.  *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### 4.      Plaintiff Will Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (*citing  Hanlon,* 150 F.3d at 1020); *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, Plaintiff has no conflicts of interest with other class members, is not subject to unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the Class.  Plaintiff is a member of the Class who experienced the same injuries and seeks, like other Class Members, compensation. As such, Plaintiff's and the Proposed Settlement Class Counsel's interests align with those of the Class.   Further, counsel for Plaintiff have decades of combined

experience as class action advocates and are well suited to litigate on behalf of the Class.  *See* Joint Decl. ¶ 27 and Exs. 3 and 4.

Thus, Plaintiff will adequately protect the interests of the Class.

**B.     The Settlement Satisfies Rule 23(b)(3)**

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3).  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here, the Plaintiff alleges that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy.  *Hanlon,* 150 F.3d at 1022.

**1.     Common Questions of Law and Fact Predominate**

Common questions of law and fact predominate over individualized questions.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Capaci v. Sports Rsch. Corp.*, 2022 U.S. Dist. LEXIS 72856, at *26 (C.D. Cal. Apr. 14, 2022) (citing *Amchem Prods.*, 521 U.S. at 623).  Courts analyze whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member.  *Reynoso v. All Power Mfg. Co.*, 2018 U.S. Dist. LEXIS 227475, at *7 (C.D. Cal. Apr. 30, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).  If, to make a prima facie showing on a particular issue, plaintiffs will need to present evidence that varies from one class member to the next, then the issue raises an individual question.  *Chua v. City of L.A.*, 2017 U.S. Dist. LEXIS 224221, at *28 (C.D. Cal. May 25, 2017).  Conversely, if the same evidence can suffice for each member of the class on an issue, then it becomes a common question.  *Id.* (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1045) (internal quotations and citation omitted).  Courts in the Ninth Circuit find

predominance where there is a sufficient constellation of common issues that binds class members together.  *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

Plaintiff's claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect PII.  That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile.  *See, e.g., Tyson Foods, Inc.* 136 S. Ct. at 1045 ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

### 2.    A Class Action is the Superior Mechanism for Adjudication

Rule 23(b)(3) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy" and is intended to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.  Four factors are pertinent to this inquiry: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.  *See* Fed. R. Civ. P. 23(b)(3).  Here, class treatment of Plaintiff's and the Class' claims is superior to individual actions because a class action will be more efficient and conserve costs, time, and effort.  The relatively minor amount of damages traceable to each Class member on an individual basis would not justify the pursuit of separate lawsuits across the country. Additionally, a class action is the superior method of adjudicating consumer claims arising from the Data Security Incident—just as in other data breach cases where

class-wide settlements have been approved. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Further, the Class consists of thousands of individuals who, should they be required to bring individual cases, would submit identical factual evidence regarding Defendant's liability and seek redress for the same types of injuries, yet risk having different outcomes, even though their claims arise out of the same conduct and the same Data Security Incident. All these considerations demonstrate the superiority of a class action here.

A class action is therefore superior to other methods for the fair and efficient adjudication of Plaintiff's and the Class's claims.

**VIII. CONCLUSION**

For all the aforementioned reasons, Plaintiff respectfully requests this Court grant his Motion.

DATED:  August 26, 2022                          Respectfully Submitted,


                                                */s/ Rachele R. Byrd*
                                                RACHELE R. BYRD (190634)
                                                **WOLF HALDENSTEIN ADLER**
                                                  **FREEMAN & HERZ LLP**
                                                750 B Street, Suite 1820
                                                San Diego, CA  92101
                                                Telephone: 619/239-4599
                                                Facsimile: 619/234-4599
                                                byrd@whafh.com

                                                M. ANDERSON BERRY (262879)
                                                **CLAYEO C. ARNOLD,**
                                                  **A PROFESSIONAL LAW CORP.**
                                                865 Howe Avenue
                                                Sacramento, CA 95825
                                                Tel: (916) 239-4778
                                                aberry@justice4you.com

28410                                           *Attorneys for Plaintiff*

-24-