**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN BOWDLE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KING'S SEAFOOD COMPANY, LLC,<br><br>Defendant. | Case No.: SACV 21-01784-CJC (JDEx)<br><br><br>ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 33] |

## I.    INTRODUCTION

In this putative class action, Plaintiff Jonathan Bowdle alleges that Defendant King's Seafood Company, LLC, failed to properly secure and safeguard Personally Identifiable Information ("PII") of its customers and employees, and failed to provide timely notice to Plaintiff and similarly situated current and former employees and

customers (the "Class Members") that their PII had been compromised.  (Dkt. 1 [Complaint].)  Plaintiff alleges claims for (1) negligence, (2) breach of implied contract, (3) invasion of privacy, (4) breach of confidence, (5) unjust enrichment, (6) violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Sections 598.0915 and 598.0923, and (7) violation of the Nevada Data Breach Law, Nev. Rev. Stat. Section 603A.010.  (Compl. ¶¶ 85–179.)  The parties have agreed on a settlement.  Now before the Court is Plaintiff's motion for preliminary approval of the proposed class action settlement and for provisional certification of the settlement class.  (Dkt. 33 [hereinafter "Mot."].)  For the following reasons, Plaintiff's motion is **GRANTED**.[1]

## II.    BACKGROUND

### A.    Factual Allegations

Defendant is a restaurant chain company that operates twenty-two restaurants throughout California, Arizona, and Nevada.  (Compl. ¶ 3.)  Defendant collects PII from its employees, which it retains after the employment relationship ends.  (*Id.*)  The PII includes names, driver's license information, payment card information, medical cards, telephone numbers, and partially redacted Social Security numbers.  (*Id.* ¶ 1.)  Defendant also collects PII from its customers.  (*Id.*)

Plaintiff is a former employee of Defendant who learned that his PII was compromised by a data breach that occurred in June 2021.  (*Id.* ¶ 20–23.)  Plaintiff alleges that Defendant "did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining . . . such as

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for September 26, 2022 at 1:30 p.m. is hereby vacated and off calendar.

encrypting the information or deleting it when it is no longer needed." (*Id.* ¶ 28.)
Plaintiff alleges that he "now face[s] a present and lifetime risk of identity theft,
heightened here by the loss of Social Security and driver's license numbers." (Mot. at 1.)

### B.    Proposed Settlement Terms

Defendant filed a motion to dismiss Plaintiff's Complaint on February 28, 2022.
(*See* Dkt. 16.)  The parties then spent multiple months "engag[ing] in numerous, arms-
length, sometimes contentious, settlement negotiations." (Mot. at 2.)  The proposed
settlement was finalized on August 23, 2022 (the "Settlement Agreement").  (*Id.*)

Under the Settlement Agreement, the class includes "all individuals residing in the
United States to whom Defendant or its authorized representative sent a notice
concerning the 2021 Data Security Incident announced by Defendant" and excludes
"King's Seafood and King's Seafood's parents, subsidiaries, affiliates and any entity in
which King's Seafood has a controlling interest" and "all judges assigned to hear any
aspect of this Litigation as well as their immediate family members." (Dkt. 33-1 [Joint
Declaration of Rachele R. Byrd and M. Anderson Berry, hereinafter "Joint Decl."] Ex. 1
[hereinafter "Settlement Agreement"] § I(1.6).)

The Settlement Agreement has two primary benefits for the Class Members.  First,
Class Members will be eligible for two years of free identity-theft protection and
monitoring services. (*Id.* § II(2.1).)  This benefit is available regardless of whether the
Class Member is eligible for monetary recovery. (*Id.* § II(2.1.1).)  The services provided
by the protection and monitoring include (1) credit monitoring at one of the three major
credit reporting agencies, (2) dark web monitoring, (3) identity restoration and recovery
services, and (4) $1,000,000 identity theft insurance with no deductible. (*Id.* § II(2.1).)
Second, the Settlement Agreement provides for monetary relief to be distributed to Class

Members that submit a valid and timely Claim Form.  Compensation for "ordinary losses" includes up to $450 per Class Member for expenses, fees, and/or lost time incurred as a direct result of the data breach.  (*Id.* § II(2.2.1).)  Class Members must submit supporting documentation of any out-of-pocket expenses or fees.  (*Id.*)  They may also claim up to three hours of time spent dealing with the data breach, compensated at the rate of $20 per hour.  (*Id.*)  Compensation for "extraordinary losses" includes up to $3,000 per Class Member for monetary loss arising directly from documented identity theft that is fairly traceable to the data breach.  (*Id.* § II(2.2.2).)  Defendant's total monetary payment obligation is not to exceed $350,000.  (*Id.* § II(2.2.4).)

Under the Settlement Agreement, Defendant also agrees to take steps to enhance the security of its data network, including (1) periodic third-party security auditor and/or internal IT security personnel monitoring, scanning, and testing of data system security, with prompt correction of detected problems, (2) periodic internal IT security personnel training on data system security, (3) system segmentation, including firewalls and access controls, (4) use of encrypted email, including encryption of email attachments, (5) routinely conducting employee training/education on best practices to avoid threats to data system, (6) having a breach response plan and training IT security personnel its operation, (7) practicing to ensure reasonable software lifecycle management, and (8) deploying active encryption software covering relevant data locations where PII maintained.  (*Id.* § II(2.3).)  Defendant estimates the cost of these enhancements will exceed $500,000.  (*Id.*)

The parties also negotiated Class Counsel's attorneys' fees and litigation expenses. They agreed that Plaintiff shall seek an award of $192,500.  (*Id.* § IX(9.2).)  If the Court approves a lesser award of attorneys' fees and expenses, Defendant will be responsible for paying only the approved amount.  (*Id.*)  Defendant has also agreed to pay a service award of $1,750 to the class representative.  (*Id.* § IX(9.1).)

The Settlement Agreement also offers a provisional plan for Class Notice.  (*Id.* § V(5.3).)  Upon approval of the Court, the appointed Claims Administrator will distribute notice to the Class Members via (1) U.S. Mail or email, and (2) an established Settlement Website.  (*Id.*)  The Claims Administrator will also establish a toll-free number to provide further information about the settlement.  (*Id.*)

Class Members can obtain a copy of the Claim Form via the Settlement Website or by calling the toll-free number.  (Settlement Agreement, Ex. B [Claim Form].)  Claim Forms may be submitted via mail or electronically on the Settlement Website.  (*Id.*)  Each claim will require the Class Member to provide their name, home address, email address, Settlement Claim ID number, and a description of the charges or time sought to be reimbursed, with supporting documentation.  (*Id.*)

Class Members who do not wish to participate in the settlement may opt-out by sending a written request to the Claims Administrator.  (Settlement Agreement § VI(6.1).)  The notice will also provide information on how to object to final approval of the class action settlement.  (*Id.* § VII(7.1).)

In exchange for the consideration in the Settlement Agreement, Plaintiff and each Class Member shall be deemed to have fully, finally, and forever released, relinquished, and discharged all "Released Claims," including unknown claims.  (*Id.* § VIII(8.1).)  The "Released Claims" are those that were asserted or could have been asserted by any Class Member against Defendant and its related entities reasonably related to the operative facts alleged in or otherwise described by the Complaint.  (*Id.* § I(1.23).)

## III.   DISCUSSION

### A.   Class Certification Requirements

When a plaintiff seeks provisional class certification for the purpose of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).  Under Rule 23(a), the plaintiff must show that the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests.  Under Rule 23(b), the plaintiff must show that the action falls within one of the three authorized categories.  Here, Plaintiffs seek certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.   Rule 23(a) Requirements

#### a)   Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds

40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.,* 289 F.R.D. 466, 473–74 (C.D. Cal. 2012).

Plaintiff estimates that the class size would be approximately 2,875 people. (Mot. at 20.) Plaintiffs arrived at that figure by reviewing information Defendant provided during settlement negotiations regarding the number of people effected by the data breach (Joint Decl. ¶ 23.) Such a large class size would make joinder impracticable, and proceeding as a class would promote the efficiency and economy of this action. This is sufficient to satisfy Rule 23(a)'s numerosity requirement.

### b)    Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the plaintiff's claim must depend on a "common contention" that is capable of class-wide resolution. *Id.* This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiff asserts that commonality is satisfied because all the claims being settled arise out of the same data breach. Plaintiff alleges that his claims turn on whether Defendant's security environment was adequate to protect Class Members' PII, evidence of which does not vary from person to person and thus can be fairly resolved for the entire class at once. The Court agrees. Because the data breach and the adequacy of Defendant's security environment are common causes of Plaintiff's and the Class

Members' alleged injuries, Plaintiff's allegations give rise to common questions of law and fact.  Therefore, commonality is satisfied.

### c)    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Plaintiff alleges that, like every other class member, his PII was compromised during the data breach.  Plaintiff's claims are thus "reasonably coextensive" with those of the class.  *See id.* at 1020.

### d)    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiffs, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class.  *Staton*, 327 F.3d at 957.  The focus in the context of a class action settlement is on ensuring that there is no collusion between the defendant, class counsel, and the class representatives pursuing their own interests at the expense of the interests of the class.  *Id.* at 958 n.12.

There is no evidence of a conflict of interest between Plaintiff and the class.  Plaintiff's claims are identical to those of the other Class Members, and he has every incentive to vigorously pursue those claims.  Nor is there any evidence that Plaintiff's counsel will not adequately represent or protect the interests of the class.  Plaintiff is

represented by two law firms, Wolf Haldenstein Adler Freeman & Herz LLP and Clayeo C. Arnold, a Professional Law Corporation.  Plaintiff's attorneys are active practitioners who are highly experienced in class action and data breach cases.  (Joint Decl. ¶ 25, Exs. 3–4 [Firm Resumes].)

### 2.      Rule 23(b) Requirements

In addition to the requirements of Rule 23(a), Plaintiff must satisfy the requirements of Rule 23(b).  Here, Plaintiff seeks certification under Rule 23(b)(3).  Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### a)      Predominance

Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry.  *Hanlon*, 150 F.3d at 1019.  The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Plaintiff submits that common issues predominate because the primary issue in this case is whether Defendant's security environment was adequate to protect the Class Members' PII, which "can be resolved using the same evidence for all Class Members." (Mot. at 23.)  Courts in similar data breach cases have found common questions like this

sufficient to satisfy the predominance requirement.  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (finding predominance satisfied because plaintiffs' case turned on whether defendant "used reasonable data security" and whether defendant "provided timely notice in connection with the [d]ata [b]reaches"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) (finding predominance satisfied because "the focus would remain on the extent and sufficiency of the specific security measures [defendant] employed").

The Court agrees that the adequacy of Defendant's data security constitutes a question common to all the class members and can be resolved for all members in a single adjudication.  Accordingly, the Court finds the putative class is "sufficiently cohesive" and that common questions of law and fact predominate.

### b) Superiority

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

In this case, proceeding as a class is superior to other methods of resolving Plaintiff's claims.  A class action may be superior "[w]here classwide litigation of

common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class action may also be superior when "no realistic alternative" to a class action exists. *Id*. at 1234–35. Given the common issues presented by all Class Members, adjudicating these claims on an individual basis for thousands of potential plaintiffs would be not only inefficient, but also unrealistic. Although the Court foresees no management problems from litigating this dispute as a class action, the Supreme Court has held that a district court "need not inquire whether the case, if tried, would present intractable management problems" in a "settlement-only class certification." *Amchem*, 521 U.S. at 620.

Accordingly, Plaintiff has satisfied the requirements of Rule 23(a) and Rule 23(b)(3). The Court **GRANTS** provisional certification of the class for settlement purposes.

### B.      Class Settlement Agreement Requirements

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e). A district court may approve class action settlements only when they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts must consider whether "(A) the class representatives and class counsel have adequately represented the class[,] (B) the proposal was negotiated at arm's length[,] (C) the relief provided for the class is adequate[,] and (D) the proposal treats class members equitably relative to each other." *Id*. 23(e)(2)(A–D). In determining whether the class's relief is "adequate," courts must analyze "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id*. 23(e)(2)(C).

"[W]hether a proposed settlement comports with Rule 23(e)(2) is [also] guided by the '*Churchill* factors,'"—which encompass some of the factors enumerated in Rule 23(e)—"viz., '(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.'" *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (*quoting In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011)); *see also Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).

When, as here, "a settlement agreement is negotiated *prior* to formal class certification," the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946. Courts must be wary of "subtle signs" of collusion such as "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). The Court "cannot, however, fully assess such factors until the final approval hearing." *Dixon v. Cushman & Wakefield W., Inc*, 2021 WL 3861465, at *10 (N.D. Cal. Aug. 30, 2021).

At the preliminary approval stage, a full "fairness hearing" is not required. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-

collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id*.

### 1.    Strength of the Case and Risks of Ongoing Litigation

Proceeding in this litigation in the absence of settlement poses risks to Plaintiff, such as failing to certify a class, having summary judgment granted against him, or losing at trial. Such considerations weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc*., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even if Plaintiff is able to certify a class, there is also a risk that the Court could later decertify the class action. *See In re Netflix Privacy Litig*., 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement."). Further, Defendant argues in its motion to dismiss that Plaintiff has not pled a cognizable injury or resulting damages, and there is a risk the Court would agree. The Settlement Agreement offers the class an opportunity to obtain relief at an early stage in the litigation, minimizing the risks posed by proceeding further in the action.

Plaintiff also acknowledges that he would face significant risks maintaining a class through to trial largely due to potential difficulties with trying causation and injury. These risks are compounded by the fact that data breach class actions are a relatively new type of litigation, and damages methodologies in data breach cases are largely untested. *See In re Anthem, Inc.*, 327 F.R.D. at 317 ("Data-breach litigation is in its infancy with threshold issues still playing out in the courts."). According to Plaintiff, "[D]ata breach cases are among the riskiest and most uncertain of all class action litigation," and "[t]he

damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury." (Mot. at 12.) Further, it is difficult to estimate and weigh the value of Plaintiff's claims given the relative dearth of precedent and exemplar cases that have proceeded to trial.

The Settlement Agreement eliminates these risks by ensuring Class Members receive a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford v. Logitech, Inc*., 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

## 2.    Arms-Length Negotiations

The Settlement Agreement is the result of arms-length negotiations between the parties, weighing in favor of approval. Settlement negotiations took place over the course of several months. (Mot. at 2.) The parties did not discuss attorneys' fees, costs, or service awards until after they agreed on the material terms and structure of the settlement. (*Id.* at 15.)

## 3.    The Extent of Discovery and Status of Proceedings

When analyzing motions for preliminary approval, courts evaluate whether Class Counsel has sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000). Here, Class Counsel has conducted significant pre-litigation research, including reviewing all information that was publicly available regarding Defendant and the data breach. (Mot. at 14.) This pre-litigation research, combined with Class Counsel's extensive experience litigating data privacy class actions, helps ensure that Plaintiff has a firm grasp on the complexity of proving liability and damages in this action. The parties also had the benefit of Defendant's motion to dismiss to inform their settlement discussions.

Additionally, through their settlement efforts and negotiations the parties shared certain discovery, including information about the Class Members and the amount Defendant has and will spend on remedial measures.  This extensive research and discovery, combined with some motion practice, weighs in favor of approval.

### 4.   The Experience and Views of Counsel

As previously mentioned, Plaintiff is represented by counsel from the law firms of Wolf Haldenstein Adler Freeman & Herz LLP and Clayeo C. Arnold, a Professional Law Corporation.  Plaintiff's attorneys are active practitioners who are highly experienced in complex class action and data breach cases.  (Joint Decl. ¶ 25, Exs. 3–4 [Firm Resumes].)  Based on their collective experience, investigation, and negotiations, counsel "have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this Litigation, and the benefits to be provided to the Settlement Class . . . that a settlement with Defendant on the terms set forth in [the] Agreement is fair, reasonable, adequate and in the best interests of the putative class."  (Settlement Agreement at 3.)  Thus, giving the appropriate weight to counsel's recommendation, this factor also weighs in favor of preliminary approval.

### 5.   Amount of the Proposed Settlement

The maximum cash award Defendant has agreed to pay under the Settlement Agreement is $350,000.  Plaintiff does not provide an estimated claims rate, nor does he disclose the value of the identity protection and credit monitoring services.  Defendant asserts that the steps it will take to enhance its data security will cost $500,000.

As discussed in Section III(B)(1), it is difficult to quantify the maximum value of the plaintiff's claims in a data breach case.  Instead, some courts consider the value per class member of the proposed settlement.  *See, e.g., Hashemi v. Bosley, Inc.*, 2022 WL

2155117, at *7 (C.D. Cal. Feb. 22, 2022).  Taking only the maximum cash award value of $350,000, and given that there are 2,875 members in the class, the estimated value per class member is approximately $121.  That greatly exceeds the settlement value per class member often seen in larger data breach cases. *See, e.g., In re Anthem, Inc.,* 327 F.R.D. at 318  (describing settlement value of $0.68 per class member as "meaningful consideration" in a data breach case); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (finding an estimated settlement value of $0.52 per class member fair and reasonable given the substantial risks of data breach litigation); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (PAM), 2017 WL 2178306, at *2 (D. Minn. May 17, 2017) (noting that an estimated settlement value of approximately $0.21 per class member was fair and reasonable).

Moreover, the Settlement Agreement offers relief beyond monetary compensation. As part of the Settlement Agreement, Defendant is required to make changes to its data security systems and policies that are the subject of the instant suit.  For example, over the next three years Defendant must submit to periodic third-party security audits, implement firewalls and access controls, and deploy active encryption software covering relevant data locations where PII is maintained.  (Settlement Agreement § II(2.3).)  This nonmonetary relief benefits all Class Members, including those who do not submit a claim form.  This factor therefore weighs in favor of approval.

### 6.    Attorneys' Fees

Plaintiff states that Class Counsel will seek an award of attorneys' fees and expenses not to exceed $197,500, with the final amount to be determined and awarded by the Court.

When the relief obtained for the class includes both monetary and non-monetary relief, courts typically employ the lodestar method, and consider the percentage value of the proposed settlement as a crosscheck. *See, e.g., Giroux v. Essex Prop. Tr., Inc*., 2019 WL 1207301, at *5 (N.D. Cal. Mar. 14, 2019) (awarding $140,000 in attorneys' fees using lodestar method because data breach settlement provided a "hybrid" of monetary and non-monetary relief—including credit monitoring—the value of which was not "self-evident"). At this stage, Plaintiff has not given the Court the necessary information to conduct a lodestar calculation. In order to ensure a fair and reasonable result, the Court will require Class Counsel to submit their billing records, as well as information regarding the value of the total monetary and non-monetary benefits received by the class.

The Court will evaluate closely the ultimate award Class Counsel requests to ensure that it is commensurate with the Ninth Circuit's standards for calculating attorneys' fees. At this stage of the litigation, the amount requested does not upset the fairness or adequacy of the proposed class settlement.

## 7.    Proposed Notice Program

For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) also requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." When a court is presented with class notice pursuant to a settlement, the class certification notice and the notice of settlement may be combined in the same notice.

The Court finds that the proposed manner of notice is adequate.  Plaintiff proposes a notice protocol centering on direct mail.  Following preliminary approval, the proposed Claims Administrator, Atticus Administration LLC ("Atticus"), will verify Class Members' last known addresses using the National Change of Address database maintained by the United States Postal Service.  (Mot. at 5–6.)  Atticus will then mail a notice to each Class Member, and also perform skip traces on any notices returned as undeliverable.  (Joint Decl. Ex. 2 [Declaration of Christopher Longley on Adequacy of Notice Plan] ¶ 8.)

The form of notice also meets the requirements of Rule 23(c)(2)(B).  Notice to class members must "clearly and concisely state, in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  Here, the proposed notice provides clear information about the definition of the class, the nature of the action, a summary of the terms of the proposed settlement, the process for objecting to the settlement, and the consequences of inaction.  (*See* Settlement Agreement Ex. B [Proposed Long Form Notice]; Ex. D [Proposed Short Form Notice].)  The notice will also provide specific details regarding the date, time, and place of the final approval hearing and inform class members that they may enter an appearance.  (*See id*.)

## C.    Claims Administrator

Plaintiff asks the Court to appoint Atticus as the Claims Administrator.  The parties have jointly agreed to use Atticus, and they represent that Atticus "has a proven track

record of supporting hundreds of class action administrations, with ample legal administration experience." (Mot. at 18.) Accordingly, the Court appoints Atticus as Claims Administrator.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for preliminarily approval of the Settlement Agreement and **ORDERS** the following:

A.   The Court appoints Jonathan Bowdle as the Settlement Class Representative.

B.   The Court appoints Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP and M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp as Settlement Class Counsel.

C.   The Court appoints Atticus Administration LLC as Claims Administrator.

D.   The Court preliminarily approves the Settlement Agreement and the terms and conditions of settlement set forth therein, subject to further consideration at a Final Approval Hearing.

E.   The Court approves the form of the notice and directs the parties and the Claims Administrator to carry out their obligations under this order and the Settlement Agreement.

F.   The Court sets the Final Approval Hearing for **Monday, February 13, 2023, at 1:30 p.m**.

DATED:      September 22, 2022

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE