M. ANDERSON BERRY (262879)
GREGORY HAROUTUNIAN (330263)
**CLAYEO C. ARNOLD,**
 **A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile:  (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
ALEX J. TRAMONTANO (276666)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

*Attorneys for Plaintiff and Settlement Class Counsel*

# THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BOWDLE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KING'S SEAFOOD COMPANY, LLC,<br><br>Defendant. | Case No. 8:21-cv-01784-CJC-JDE<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hrg. Date:  Feb. 13, 2023<br>Time:        1:30 p.m.<br>Ct. Rm:     9B<br>Judge:       Hon. Cormac J. Carney __ |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION…………………………………………………....   1

II.     STATEMENT OF FACTS………………………………………….   2

III.    PROCEDURAL HISTORY…………………………………………   3

IV.     THE SETTLEMENT TERMS……………………………………....   3

    A.      The Settlement Class…………………………………….....   3

    B.      Settlement Benefits – Monetary Relief………………………   4

        1.      Compensation for Ordinary Losses……………………...   4

        2.      Compensation for Extraordinary Losses………………...   5

    C.      Non-Monetary Settlement Benefits – Identity Protection
        and Credit Monitoring Services…………………………….   5

    D.      Business Practices Enhancements, Including Monetary
        Investment and Data Security………………………………   7

    E.      Class Notice and Settlement Administration…………………   8

    F.      Attorneys' Fees and Expenses and Service Award to Plaintiff..   9

    G.      Release………………………………………………………   9

V.      CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS…..   10

VI.     LEGAL ARGUMENT……………………………………………….   12

    A.      The Court Should Certify the Class for Settlement Purposes…   12

        1.      The Rule 23(a) Requirements Are Met for
            Purposes of Settlement…………………………………   12

        2.      The Requirements of Rule 23(b)(3) Are Met for
            Purposes of Settlement…………………………………   14

    B.      The Court Should Finally Approve the Settlement…………....   16

        1.      The Strength of Plaintiff's Case………………………...   17

        2.      The Risk, Expense, Complexity, and Likely
            Duration of Further Litigation………………………….   17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        3.      The Risk of Maintaining Class Action Status Through Trial……………………………………………….. 18

        4.      Amount Offered in Settlement…………………………. 19

        5.      The Extent of Discovery Completed and the Stage of Proceedings………………………………………….. 21

        6.      The Experience and Views of Counsel………………… 21

        7.      Governmental Participants……………………………... 22

        8.      The Reaction of the Class Members to the Proposed Settlement……………………………………………….. 22

        9.      Lack of Collusion among the Parties…………………... 22

        10.     The Settlement Treats Settlement Class Members Equitably………………………………………………... 23

VIII.    CONCLUSION…………………………………………….. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                         <u>Page</u>

*Aguallo v. Kemper Corporation*, No. 1:21-cv-01883
   (N.D. Ill. Oct. 14, 2021)…………………………………………..…      23

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)……..………………… 12, 14, 15

*Calderon v. Wolf Firm*, 2018 U.S. Dist. LEXIS 4205
   (C.D. Cal. Mar. 13, 2018)……………………………………………….      20

*Capaci v. Sports Rsch. Corp.*, 2022 U.S. Dist. LEXIS 72856
   (C.D. Cal. Apr. 14, 2022)……………………………………………….      14

*Chua v. City of L.A.*, 2017 U.S. Dist. LEXIS 224221
   (C.D. Cal. May 25, 2017)………………………………………………..      14

*Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS 201121
   (C.D. Cal. Dec. 5, 2017)………………………………………………..      17

*Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118
   (S.D. Cal. Nov. 14, 2013)………………………………………………..      17

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)…………….   12, 13

*Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600
   (C.D. Cal. Apr. 9, 2014)……………………………………………….      13

*Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770-BLF, 2022 U.S. Dist.
   LEXIS 16072 (N.D. Cal. Jan. 28, 2022)…………………………..…  20, 23

*Franklin v. Kaypro Corp.*, 884 F.2d 122 (9th Cir. 1989)……………………      16

*Grimm v. Am. Eagle Airlines, Inc.*, 2014 U.S. Dist. LEXIS 199608
   (C.D. Cal. Sep. 24, 2014)……………………………………………..      18

*Hanlon v. Chrysler Corp*, 150 F.3d, 1011 (9th Cir. 1998)……….…………  13, 14

*Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx),
 2022 U.S. Dist. LEXIS 210946 (C.D. Cal. Nov. 21, 2022)................ 11, 20, 23

*Hillman v. Lexicon Consulting, Inc.*, 2017 U.S. Dist. LEXIS 230265
 (C.D. Cal. Oct. 12, 2017)...................................................................... 21

*Hudson v. Libre Tech. Inc.*, 2020 U.S. Dist. LEXIS 84576
 (S.D. Cal. May 12, 2020)...................................................................... 23

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299
 (N.D. Cal. 2018)..................................................................... 11, 16

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935
 (9th Cir. 2011)....................................................................... 16

*In re Brinker Data Incident Litig.*, 2021 U.S. Dist. LEXIS 71965
 (M.D. Fla., Apr. 14, 2021)................................................... 19

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195
 (5th Cir. 1981)....................................................................... 19

*In re Google LLC St. View Elec. Communs. Litig.*,
 2020 U.S. Dist. LEXIS 47928 (N.D. Cal. Mar. 18, 2020)................... 12

*In re Hyundai & Kia Fuel Economy Litig.*,
 926 F.3d 539 (9th Cir. 2019)........................................... 13

*In re LinkedIn User Privacy Litig.*,
 309 F.R.D. 573 (N.D. Cal. 2015)......................................... 11, 16

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
 2022 U.S. Dist. LEXIS 80575 (D. Md. May 3, 2022)........................ 18

*In re MRV Communs., Inc. Derivative Litig.*,
 2013 U.S. Dist. LEXIS 86295 (C.D. Cal. June 6, 2013)....................... 19

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
 2019 U.S. Dist. LEXIS 127093 (D. Or. July 29, 2019)........................ 12

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007)……………………………………...    23

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    266 F.Supp.3d 1 (D.D.C. 2017)……………………………………………    18

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017)………………………    13

*Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504 (C.D. Cal. 2012)…………..    15

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19 (2000)…………………….    19

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)……….…... 17, 21

*Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310 (C.D. Cal. 2015)………    13

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)……………………………………………    22

*Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB),
    2016 WL 4427439 (S.D. Cal. Feb. 29, 2016)………………..………………    18

*Reynoso v. All Power Mfg. Co.*,
    2018 U.S. Dist. LEXIS 227475 (C.D. Cal. Apr. 30, 2018)…………………    14

*Schellhorn et al. v. Timios, Inc.*,
    No. 2:21-cv-08661-VAP-JCx (C.D. Cal.)………………………………11, 20, 23

*Smith v. Triad of Ala.*, LLC, 2017 U.S. Dist. LEXIS 38574
    (M.D. Ala. Mar. 17, 2017)……………………………………………………    18

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016)………..……………. 14, 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)…………..………………    12

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)……..…    20

*Warshawsky v. CBDMD, Inc.*, No. 20-cv-00562 (W.D. N. C. Aug. 9, 2022)..    23

1

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)………..   14

2

**<u>Statutes</u>**

3

Fed. R. Civ. P. Rule 23(a), *et seq*………………………………………… passim
Fed. R. Civ. P. Rule 23(e)………………………………………………… 16, 23
Fed. R. Civ. P. Rule 23(e)(2)(D)…………………………………………...   23

4

5

6

**<u>Other</u>**

7

4 Newberg on Class Actions, § 11:48 (4th ed. 2002)………………….....   22
Manual for Complex Litig. § 21.632 (4th ed. 2004)………………………   12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      **INTRODUCTION**

Plaintiff Jonathan Bowdle ("Plaintiff"), through his undersigned counsel, respectfully moves this Court for entry of an order granting final approval to the settlement memorialized in the Amended Settlement Agreement dated December 21, 2022,[1] that, subject to the Court's approval, will resolve this class action lawsuit. The Court preliminarily approved the settlement on September 22, 2022 (ECF No. 34), and then entered an Amended Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement [Dkt. 33] on October 20, 2022. ECF No. 35 (the "Order"). The Court in its Order preliminarily concluded "that the Settlement is 'fair, reasonable, and accurate,'" and noted that at the final approval stage it would require a fuller showing on the issues it identified in the Order. *Id*. at 23. Notice was issued to the preliminarily certified Settlement Class as directed by the Court in the Order. *Id*. at 25, ¶ E.[2]

This settlement—which makes available to every Settlement Class Member considerable monetary relief, two-years of identity theft and credit monitoring services, and programmatic relief—represents an excellent resolution of this high-risk, complex litigation. The parties also worked diligently and cooperatively to deliver the best Notice practicable to the Settlement Class. Indeed, the Claims Administrator sent a reminder email on December 29, 2022 to the 1,633 Settlement

---

[1] The Motion for Preliminary Approval and the initial Settlement Agreement incorrectly identified the credit monitoring and identity theft protection services offered to the Settlement Class as Pango's "Financial Shield." However, the actual name of the product contemplated by all Parties is Pango's "Identity Defense Complete." On December 21, 2022, the parties executed an Amended Settlement Agreement in which the only change was to identify correctly in ¶ 2.1. the Pango product as "Identity Defense Complete." The Amended Settlement Agreement ("Settlement Agreement" or "ASA") is attached as **Exhibit 1** to the Declaration of Rachele R. Byrd ("Byrd Decl.") filed herewith.

[2] Capitalized terms have the same definitions as in the Amended Settlement Agreement.

Class Members who had not yet submitted Claim Forms and for whom email addresses were included in the Class list, which was not required by the Settlement Agreement. *Compare* Declaration of Bryn Bridley on Notice and Settlement Administration ("Bridley Decl."), ¶ 11 *with* ASA, ¶ 5.1, *et seq*.

The reaction of the Settlement Class has been overwhelmingly positive. The objection and opt-out deadlines were December 21, 2022. As of the filing of this motion, in response to 2,958 notices, **no** objections have been filed and the Claims Administrator has **not** received **any** requests for exclusion.

The settlement undoubtedly is fair, reasonable and adequate, as the Court preliminarily found in its Order. This Court should now finally certify the Settlement Class for settlement purposes only, and finally approve the settlement as fair, reasonable and adequate.

## II.   **STATEMENT OF FACTS**

This matter concerns a putative class action arising out of a data breach (the "Data Security Incident"). Plaintiff alleges that on or around August 23, 2021, Defendant learned that personally identifiable information ("PII") "may have been compromised during a cyber-attack which began on June 4, 2021."[3] Plaintiff further alleges that the hacker gained access to directories where PII was stored. "The unauthorized individual was capable of accessing and acquiring the [PII] in the directories."[4] Defendant issued a "Notice of Data Breach," dated September 14, 2021, to those whose PII may have been affected. Plaintiff further alleges that his and the Class Members' unprotected PII can be sold on the dark web, leaving Plaintiff and Class Members to now face a present and lifetime risk of identity theft, heightened here by the loss of Social Security and driver's license numbers. Consequently, on October 27, 2021, Plaintiff filed a Class Action Complaint (the

---

[3]     https://www.doj.nh.gov/consumer/security-breaches/documents/kings-seafood-20210920.pdf (last visited Jan. 11, 2023).

[4]     *Id.*

"Complaint") on behalf of himself and Class Members, asserting claims against Defendant relating to the Data Security Incident and Defendant's contended failure to (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing sensitive PII using adequate security procedures. Complaint, ¶ 9.

## III.   PROCEDURAL HISTORY

Settlement Class Counsel for Plaintiff and the Settlement Class commenced this action on October 27, 2021 (the "Litigation"). Defendant filed a motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") on February 28, 2022. ECF No. 16. Over the course of several months, the Parties engaged in numerous, arm's-length, sometimes contentious, settlement negotiations. Byrd Decl., ¶ 9. The Parties' unwavering pursuit of settlement negotiations led them to eventually reach a settlement in principle on all terms, including attorneys' fees, costs and expenses, and the service award. *Id.*, ¶ 10. The Parties then memorialized the terms of the Settlement in a Settlement Agreement dated August 23, 2022. *Id*., ¶ 11. On December 21, 2022, the parties executed an Amended Settlement Agreement.  *See id*., ¶ 12; n.1, *supra*.

## IV.   THE SETTLEMENT TERMS

The settlement provides for the following:

### A.   The Settlement Class

The settlement will provide relief for the following Settlement Class: "all individuals residing in the United States to whom Defendant, or its authorized representative, sent a notice concerning the 2021 Data Security Incident announced by Defendant." ASA, ¶ 1.6. The Settlement Class specifically excludes: (i) King's Seafood and King's Seafood's parents, subsidiaries, affiliates, officers, and directors, and any entity in which King's Seafood has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using

the correct protocol for opting out; and (iii) all judges assigned to hear any aspect of this Litigation as well as their immediate family members. *Id*. The Court granted provisional certification of the Settlement Class for settlement purposes only in its Order.  ECF No. 35 at 11.

### B.     Settlement Benefits – Monetary Relief

The Settlement provides for two separate forms of monetary relief to Settlement Class Members who submit a valid and timely Claim Form: (1) reimbursement of ordinary expenses and lost time up to $450 per Settlement Class Member; and (2) reimbursement of extraordinary expenses up to $3,000 per Class Member.  ASA, ¶¶ 2.2.1-2.2.2.

### 1.     Compensation for Ordinary Losses

The first category of payments reimburses each Settlement Class Member up to $450 in compensation upon submission of a valid and timely Claim Form and supporting documentation for ordinary out-of-pocket losses incurred as a direct result of the Data Security Incident. *Id.*, ¶ 2.2.1.  Ordinary losses can arise from the following categories of expenses, fees and lost time: (1) out of pocket expenses incurred as a direct result of the Data Security Incident; (2) unreimbursed fees for credit reports, credit monitoring, or other identity theft insurance products purchased between June 4, 2021 and the Claims Deadline, supported by documentation and reasonably connected to the Data Security Incident; and (3) reimbursement for lost time reasonably spent responding to the Data Security Incident. *Id.* Settlement Class Members may claim up to three (3) hours of time compensated at the rate of $20 per hour so long as the lost time is fairly traceable to the Data Security Incident, reasonably described by type of lost time incurred, and supported by an attestation under penalty of perjury that the time spent was reasonably incurred dealing with the Data Security Incident. *Id*.

/ / /

/ / /

### 2.     Compensation for Extraordinary Losses

The second category provides for reimbursement of extraordinary expenses, up to $3,000 per Settlement Class Member who submits a valid and timely claim form. *Id*., ¶ 2.2.2. Providing certain specific conditions are met, each Settlement Class Member must prove monetary loss directly arising from identity theft perpetrated on or against the Settlement Class Member. *Id*.

### C.     Non-Monetary Settlement Benefits – Identity Protection and Credit Monitoring Services

In addition to the potential cash benefits outlined above, King's Seafood has agreed to make available to Settlement Class Members credit monitoring and identity-theft protection, called "Identity Defense Complete" by Pango, for a period of two (2) years, with the commencement of protection and monitoring to begin upon the Court's final approval of the settlement, and to remain available for commencement for 90 days thereafter. *Id.*, ¶ 2.1. The protection and monitoring will include:

i.      Credit monitoring at one of the three major credit reporting agencies: Equifax, Experian or TransUnion;

ii.     Dark web monitoring;

iii.    Identity restoration and recovery services; and

iv.    $1,000,000 identity theft insurance with no deductible.  *Id.*

Settlement Class Members can submit Claim Forms for these identity protection and credit monitoring services whether or not they are eligible for a monetary recovery under this settlement. *Id.* Those Settlement Class Members who submit valid and timely Claim Forms for monitoring and protection services and who already have obtained monitoring and protection services offered through Defendant as a result of the Data Security Incident will receive an additional two (2) years of monitoring and protection services from the expiration date of the monitoring and protection services already received. *Id.*, ¶ 2.1.2.

Filed concurrently herewith is the Declaration of Gerald Thompson ("Thompson Declaration"). Mr. Thompson is the Executive Vice President at Pango Group and details in his declaration the monitoring and protection services included in Identity Defense Complete that will be provided to participating Settlement Class Members:

- Credit Monitoring provided by one of the three (3) credit bureaus. This service provides immediate notifications (via alerts, both text and email) to any Class Member whose credit profile has changed due to a recent inquiry or event.

- Security Freeze Capability to let consumers take control of their credit data not only at the three (3) major credit bureaus but also at seven (7) other bureaus that can act as an early warning for a fraud event.

- Dark Web Monitoring on 17 different data points that will allow the service to give early warning if PII is in play in the criminal arena.

- Monthly Credit Score is provided as well as an annual update so consumers can see the current score and their trend over a 12-month period.

- Authentication Alerts are sent when a SSN is used as part of an Identity Verification Event.

- High Risk Transaction Monitoring that looks for user PII included in transactions like Payday Loans and new credit account openings to verify that these are legitimate events.

- USPS Address change Alerts, a basic service that alerts if a person's address is being used for malicious purposes.

- Lost Wallet Protection is provided to every participant. If a participating Settlement Class Member's wallet is lost or stolen, Pango's support team will help cancel cards, order replacement cards, and arrange for cash to be sent via Western Union if necessary.

- Identity and Financial Fraud restoration services from the longest tenured and most experienced customer support team in the industry.

- $1 million in Insurance provided by AIG to replace any funds lost via fraud or identity theft and the reimbursement of any personal expenses including professional fees, lost wages, postage and messenger services, and much more.

Mr. Thompson also testifies in his declaration that these services are sold to consumers for a range of $5 to $7 per month per subscriber and that, using the lower amount, the value of providing Identity Defense Complete to the approximately 2,958 Settlement Class Members who were sent notice is **$354,960.00**. *Id*. at ¶ 9.

### D. Business Practices Enhancements, Including Monetary Investment and Data Security

For a period of 36 months beginning in July 2021, Defendant has and will continue to undertake certain reasonable steps to enhance the security deployed for its data network, including:

   i. Periodic third-party security auditor and/or internal IT security personnel monitoring, scanning, and testing of data system security, with prompt correction of detected problems;

   ii. Periodic internal IT security personnel training on data system security, including any modifications or updates thereto;

   iii. Data system segmentation, including firewalls and access controls such that hackers cannot use a breach in one system area to access other system areas;

   iv. Use of encrypted email, including encryption of email attachments, and enlist protocols as reasonable to avoid PII storage in email accounts;

   v. Routinely conduct employee training/education on best practices to ID and avoid threats to data system;

   vi. A breach response plan, including training of IT security personnel on operation of same;

   vii. Practices to ensure reasonable software lifecycle management;

viii.      Deploy active encryption software covering relevant data locations where PII maintained. ASA, ¶ 2.3.

Filed concurrently herewith is the Declaration of Richard Fiore (the "Fiore Decl."), the Chief Financial Officer of King's Seafood. Mr. Fiore testifies in his declaration that King's Seafood implemented these security enhancements both in response to the Data Security Incident and to serve as a preemptive measure to help address allegations in any subsequent litigation pertaining thereto, such as this Litigation. *Id.*, ¶¶ 4-5. Mr. Fiore estimates King's Seafood's initial spend on the security enhancements, invested over roughly a 12-month period, is valued at approximately $300,000. *Id.*, ¶ 6. Mr. Fiore also indicates that, as part of the settlement, King's Seafood committed to continuing and supporting the security enhancements for another 24 months, which he estimates are valued in the range of $300,000 to $350,000, for a total value for 36 months of $600,000 to $650,000. *Id.*, ¶¶ 7-8.

### E.      Class Notice and Settlement Administration

As part of the Settlement, King's Seafood shall pay for providing Notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of Claims Administration. ASA, ¶ 4.2. The Claims Administrator, Atticus Administration LLC ("Atticus"), estimates that the costs of notice and administration will be approximately $22,350.00. Bridley Decl., ¶ 13.

Atticus mailed to 2,956 Settlement Class Members the Short Notice via postcard and sent notice of the settlement by email to two (2) Settlement Class Members for whom mailing addresses were not available. Bridley Decl., ¶ 6. The Short Notice directed Settlement Class Members to the Settlement Website and informed them of, among other things, the Claims Deadline, the Opt-Out and Objection deadlines, and the date of the Final Fairness Hearing. *Id.*, Ex B. Of the 2,956 Short Notices sent by mail, 2,704 of them, or 91.47%, were ultimately successfully sent. *Id.*, ¶ 7.

A Long Notice, in both English and Spanish, was also posted on the Settlement Website, along with the Claim Form and other important documents. *Id.*, ¶ 8 & Ex. C. Furthermore, a toll-free help line was activated on October 21, 2022, and has remained operational since that time. *Id.*, ¶ 9.

On December 29, 2022 Atticus sent a reminder of the settlement and the Claims Deadline by email to 1,633 Class Members who had not yet submitted Claim Forms and for whom email addresses were included in the class list. The email provided recipients with information about the settlement, access to the Settlement Website, and their settlement claim ID, required for filing an online claim. *Id.*, ¶ 11. The reminder was not required by the Notice Plan but implemented to further supplement Class Member participation in and access to the settlement benefits.

**F.     Attorneys' Fees and Expenses and Service Award to Plaintiff**

After an agreement was reached as to the essential terms of a settlement (*i.e.*, Settlement Class benefits), Defendant agreed to pay the Settlement Class Counsel attorneys' fees and litigation costs not to exceed $192,500, separate and apart from any other sums agreed to under the settlement and subject to Court approval. ASA, ¶ 9.2.[5] Also after an agreement had been reached as to the Settlement Class benefits, Defendant agreed to pay a service award of $1,750 to the Settlement Class Representative, separate and apart from any other sums agreed to under the settlement and subject to Court approval. *Id.*, ¶ 9.1.

**G.     Release**

Upon entry of the Final Approval Order, Plaintiff and the Settlement Class will be deemed to "have, fully, finally, and forever released, relinquished, and discharged all Released Claims." ASA, ¶ 8.1. "Released Claims" are defined, *inter alia*, as:

---

[5]     Plaintiff is filing concurrently herewith a motion for an award by the Court of attorneys' fees and costs and the service award to Plaintiff.

any and all past, present, and future claims, causes of action, lawsuits, set-offs, costs, expenses, attorneys' fees, losses, rights, demands, charges, complaints, actions, suits, petitions, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, matured or unmatured, in law or equity, and any other form of legal or equitable relief that has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons reasonably related to the operative facts alleged in or otherwise described by the Complaint. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Class Members who have timely excluded themselves from this settlement.

*Id.*, ¶ 1.23. Released Claims include Unknown Claims (*see id.*, ¶ 1.31), but do not include the claims of individuals who have timely excluded themselves from the Settlement Class. *Id.*, ¶ 1.23.

## V.    CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS

The deadline to object or opt-out was December 21, 2022. As of the filing of this motion, in response to 2,958 direct postcard and email notices, no objections have been filed and no one has requested exclusion. Bridley Decl., ¶ 10.

The Claims Deadline does not expire until January 20, 2023. Nevertheless, as of January 13, 2023, the Claims Administrator has received 194 claims. *Id.*, ¶ 12. Of the claims received, 67 have been deemed valid pursuant to the criteria outlined in the Claim Form, 82 are invalid because they were received from persons ineligible to submit claims, and 45 have been provided the opportunity to cure deficiencies. *Id.* Not counting the 69 invalid claims, the remaining 112 claims received so far results

in a claims rate of 3.8%, which is already at the high end of the range of claims rates
in other data breach class action settlements within this Circuit. *See*, for example:

| Case Title | Approx. Class Size | No. of Claims | Claims Rate |
|---|---|---|---|
| *Corona v. Sony Pictures Entertainment, Inc.*, No. 2:14-cv-9600 (C.D. Cal.), ECF Nos. 145-1 at 11 n.8 & 164 at 2 | 435,000 | 3,127 | 0.7% |
| *In re LinkedIn User Privacy Litig.*, No. 12-cv-03088-EJD (N.D. Cal.), ECF Nos. 122 at 2 & 145-2 at ¶ 12 | 6,400,000 | 47,336 | 0.7% |
| *Hashemi, et al. v. Bosley, Inc.*, No. 2:21-cv-00946-PSG (C.D. Cal.), ECF Nos. 170 at 1 & 59 at 8 | 86,927 | 893 | 0.9% |
| *Schellhorn et al. v. Timios, Inc.*, No. 2:21-cv-08661-VAP-JC, ECF No. 47-1 at 1-2 | 74,755 | 785 | 1.05% |
| *In re Banner Health Data Breach Litigation*, No. 2:16-cv-2696 (D. Ariz.), ECF Nos. 170 at 1 and 195-3 at ¶ 12 | 2,900,000 | 39,091 | 1.3% |
| *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617-LHK (N.D. Cal.), ECF Nos. 1007 at 4 & 1007-6 at ¶ 2 | 79,200,000 | 1,380,000 | 1.7% |
| *Cochran, et al. v. Kroger Co.* 5:21-cv-01887 (N.D. Cal.), ECF Nos. 108 at 4-6 & 108-1, ¶ 4 | 3,825,200 | 80,630 | 2.1% |
| *Koenig, et al. v. Lime Crime, Inc.*, No. CV 16-503-PSG (JEMx) (C.D. Cal.), ECF Nos. 55 at 1 n.16 & 8 n.1 | 107,726 | 3,094 | 2.87% |
| *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-JLS-DFM (C.D. Cal.), ECF Nos. 286-1 at 20 & 309-3, ¶ 8 | 14,931,074 | 436,006 | 2.9% |
| *Atkinson et al. v. Minted, Inc.* No. 3:20-cv-03869-VC (N.D. Cal.), ECF No. 71 at 4 | 4,198,490 | 147,268 | 3.5% |

Atticus will continue to receive, review, cure, and validate claims that are timely
received through the January 20, 2023, postmark deadline.

## VI.   **LEGAL ARGUMENT**

### A.   **The Court Should Certify the Class for Settlement Purposes**

Before assessing the parties' settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004). The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). The Court found the Settlement Class met these requirements in its Order and provisionally certified the Settlement Class for settlement purposes. ECF No. 35 at 6-11. Plaintiffs respectfully submit the Court's original assessment was correct and it should now certify the Settlement Class for settlement purposes.

### 1.   **The Rule 23(a) Requirements Are Met for Purposes of Settlement**

The Settlement Class includes approximately 2,958 individuals (Bridley Decl., ¶ 5); therefore, it readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1).

The Class also satisfies the commonality requirement, which requires class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, courts in the Ninth Circuit have found that these common issues all center around Defendant's alleged misconduct, and in particular, satisfying the commonality requirement. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, at *31 (D. Or. July 29, 2019). For the same reason, predominance is readily met "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Communs.*

-12-

*Litig.*, 2020 U.S. Dist. LEXIS 47928, at \*21 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, among many, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' PII was compromised during the Data Security Incident; whether Defendant owed a duty to Plaintiff and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiff and Class Members of the material facts of the Data Security Incident.

Likewise, typicality and adequacy are easily met for purposes of settlement. Plaintiff's claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect Plaintiff's and Class Members' PII and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at \*31 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs' claims were reasonably co-extensive with those of absent class members). Plaintiff here alleges that his PII was compromised, and that as a result, Defendant's same alleged poor data security practices caused him the same injury that the Class suffered. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Plaintiff is also an adequate class representative because (1) there are no antagonistic or conflicting interests between Plaintiff and his counsel and the absent Class Members; and (2) Plaintiff and his counsel will vigorously prosecute the action on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (*citing Hanlon v. Chrysler Corp*, 150 F.3d, 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015)*.* Plaintiff has no conflicts of interest with other class members, is not subject to unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the Class.  Plaintiff is a member of the Class who experienced the same injuries and

seeks, like other Class Members, compensation. As such, Plaintiff's and the Proposed Settlement Class Counsel's interests align with those of the Class. Further, Class Counsel have decades of combined experience as class action advocates and are well suited to litigate on behalf of the Class. *See* Berry Decl., ¶ 8; Byrd Decl., ¶ 23 & Ex. 2. Thus, Plaintiff will adequately protect the interests of the Class.

### 2.      The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, the Plaintiff alleges that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Hanlon,* 150 F.3d at 1022.

Common questions of law and fact predominate over individualized questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Capaci v. Sports Rsch. Corp.*, 2022 U.S. Dist. LEXIS 72856, at *26 (C.D. Cal. Apr. 14, 2022) (citing *Amchem Prods.*, 521 U.S. at 623). Courts analyze whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Reynoso v. All Power Mfg. Co.*, 2018 U.S. Dist. LEXIS 227475, at *7 (C.D. Cal. Apr. 30, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). If, to make a prima facie showing on a particular issue, plaintiffs will need to present evidence that varies from one class member to the next, then the issue raises an individual question. *Chua v. City of L.A.*, 2017 U.S. Dist. LEXIS 224221, at *28 (C.D. Cal. May 25, 2017). Conversely, if the same evidence can suffice for each member of the class on an issue, then it becomes a common question.

*Id.* (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1045) (internal quotations and citation omitted). Courts in the Ninth Circuit find predominance where there is a sufficient constellation of common issues that binds class members together. *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

Plaintiff's claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect PII. That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc.* 136 S. Ct. at 1045 ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Rule 23(b)(3) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy" and is intended to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are pertinent to this inquiry: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, class treatment of Plaintiff's and the Class's claims is superior to individual actions because a class action will be more efficient and conserve costs, time, and effort. The relatively minor amount of damages traceable to each Class member on an individual basis would not justify the pursuit of separate lawsuits across the country. Additionally, a class action is the superior method of adjudicating consumer claims arising from the Data Security Incident—just as in other data breach cases where

class-wide settlements have been approved. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Further, the Class consists of thousands of individuals who, should they be required to bring individual cases, would submit identical factual evidence regarding Defendant's liability and seek redress for the same types of injuries, yet risk having different outcomes, even though their claims arise out of the same conduct and the same Data Security Incident. All these considerations demonstrate the superiority of a class action here.

## B.    The Court Should Finally Approve the Settlement

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). In order for a proposed class action to be approved, the Court must determine, after holding a hearing, that it is fair, adequate and reasonable. The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the

negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1.   The Strength of Plaintiff's Case

Plaintiff believes he has a strong case for liability. In particular, Plaintiff believes ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiff's and the Class's PII. Byrd Decl., ¶ 14. Moreover, Plaintiff believes that once he establishes that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the statutory and common law theories of liability Plaintiff pled in his CAC. *Id.*, ¶ 16. However, Plaintiff's success is not a guarantee. It is reasonable to recognize that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. *Id.*, ¶ 17; *see also Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS 201121, at *17 (C.D. Cal. Dec. 5, 2017). Given the challenges and inherent risks Plaintiff faces with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the settlement favor final approval of the Settlement. Byrd Decl., ¶¶ 16-17.

### 2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiff believes his case is strong, substantial risk is inherent in all cases, including this one. This case involves a proposed class of approximately 2,875 individuals (ASA, ¶ 1.6) and a complicated and technical factual background in a relatively novel area: data breach litigation. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular  Alaska P'ship*, 151 F.3d

1234, 1238 (9th Cir. 1998)—this is a particularly complex class action due to the standing challenges plaintiffs face in data breach class actions. *See, e.g., In re U.S. Office of Pers. Mgmt. Data Sec. Breach Liti*g., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a favorable one is at hand. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury.  And, as in any data breach case, establishing causation on a class-wide basis also remains uncertain.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the Class. Therefore, this factor favors approval. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 3.     The Risk of Maintaining Class Action Status Through Trial

If the Parties were to proceed to litigate their claims through trial, Plaintiff would encounter risks in obtaining and maintaining certification of the Class.  The Class has not yet been certified, and Defendant will certainly oppose certification. Thus, Plaintiff "necessarily risk[s] losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 U.S. Dist. LEXIS 199608, at *26 (C.D. Cal. Sep. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Marriott Int'l, Inc., Customer*

*Data Sec. Breach Litig.*, 2022 U.S. Dist. LEXIS 80575 (D. Md. May 3, 2022) and *In re Brinker Data Incident Litig.*, 2021 U.S. Dist. LEXIS 71965 (M.D. Fla., Apr. 14, 2021). Thus, the scarcity of direct precedent amplifies the risks of continuing the Litigation.

### 4.    Amount Offered in Settlement

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, 2013 U.S. Dist. LEXIS 86295, at *12 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The settlement here reflects an excellent result in light of the challenges that come with data breach litigation. Specifically, the settlement provides monetary relief to Class Members who submit valid Claim Forms. *See* ASA, ¶ 2.2. Further, Plaintiff and Class Members will receive, among other non-monetary relief, credit monitoring and identity theft protection for two additional years. *Id.*, ¶ 2.1. Finally, the settlement also involves significant business practice enhancements for Defendant's data security system, which will help to protect the Settlement Class's PII going forward. Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiff would not succeed at trial, the present settlement represents an excellent compromise of Plaintiff's and the Settlement Class Members' claims. Byrd Decl., ¶ 18.

As discussed in detail in Plaintiff's concurrently-filed Motion for Attorneys' Fees, Expenses, and Service Award to Plaintiff (*see* § III.D.6), taken together, the value of the settlement is, at a minimum, $1,269,810, which includes: (1) $350,000 in funds made available for reimbursement of out-of-pocket losses, lost time, and extraordinary losses; (2) $192,500 in requested attorneys' fees and costs; (3) $22,350 in estimated notice and administration expenses (Bridley Decl., ¶ 13); (4) $354,960 for the value of Pango's Identity Defense; and (5) $350,000, the value of the remedial measures agreed to by Defendant as part of the settlement. *See Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 51 (2000) (The value of a settlement is

"calculated on the basis of the total fund made available rather than the actual payments made to the class.") (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)).

Additionally, the Settlement is in line with other settlements in cases involving data breaches of similar scope. *Id.*, ¶ 20. For example, the consideration paid by [24]7.AI, Inc. to settle a data breach class action was up to $2,000 per class member in reimbursement for out-of-pocket expenses, including up to 5 hours at $20 per hour for lost time. *See Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770-BLF, 2022 U.S. Dist. LEXIS 16072 at *3-*5 (N.D. Cal. Jan. 28, 2022). There was no provision for any form of credit monitoring or identity theft insurance for the class members. Similarly, the *Bosley* settlement offered up to $300 per class member in ordinary expense reimbursement and lost time compensation, up to $5,000 per class member in extraordinary expense reimbursement, and two years of Pango's identity and fraud protection services, with an aggregate cap of $500,000 for the monetary relief. *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 U.S. Dist. LEXIS 210946, at *4 (C.D. Cal. Nov. 21, 2022). Likewise, in *Schellhorn et al. v. Timios, Inc.,* No. 2:21-cv-08661-VAP-JCx (C.D. Cal.), the Court approved a claims-made settlement with very similar terms to the instant matter, including reimbursements for lost time and out-of-pocket expenses, reimbursement for extraordinary expenses, and identity theft protection (there was also a payment for statutory damages that are not applicable here). *See Id.*, ECF No. 52 (Nov. 9, 2022). Because the settlement here is similar to other settlements that courts have approved, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, 2018 U.S. Dist. LEXIS 42054, at *21 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

/ / /

/ / /

/ / /

-20-

### 5.     The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiff gathered all of the information that was available regarding King's Seafood and the Data Security Incident—including publicly-available documents concerning announcements of the Security Incident and notice of the Security Incident to its customers, former employees and various states' Attorneys General. Byrd Decl., ¶ 20. Plaintiff also submitted a public records request to the Commonwealth of Massachusetts for additional information. *Id*. The parties also exchanged information during settlement negotiations regarding the number of Settlement Class Members and the amount Defendant has and will spend on remedial measures to advance settlement. *Id*., ¶ 21.

Although the parties have not engaged in formal discovery, Settlement Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiff's and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. *Id.*, ¶ 22. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, 2017 U.S. Dist. LEXIS 230265, at *10 (C.D. Cal. Oct. 12, 2017). Accordingly, Plaintiff made a decision fully informed about the strengths and weaknesses of this case.

### 6.     The Experience and Views of Counsel

Settlement Class Counsel initiated this lawsuit after Defendant announced the Data Security Incident, which impacted over 2,800 individuals. ASA, ¶ 1.6; Bridley Decl., ¶ 5. Settlement Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Berry Decl., ¶ 8; Byrd Decl., ¶ 23 & Ex. 1. Having worked on behalf of the Class since the

Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, Settlement Class Counsel fully endorse the settlement. Berry Decl., ¶ 12; Byrd Decl., ¶ 24. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Therefore, this factor supports approval.

### 7.     Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

### 8.     The Reaction of the Class Members to the Proposed Settlement

The deadline to object or opt-out was December 21, 2022. As of the filing of this motion, in response to 2,958 direct postcard and email notices, no objections have been filed and no one has requested exclusion. Bridley Decl., ¶ 10. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

### 9.     Lack of Collusion among the Parties

The Parties negotiated a substantial, multifaceted settlement, as described above. The Parties did not negotiate attorneys' fees and the service award until after agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations. ASA, ¶¶ 9.1, 9.2; Berry Decl., ¶ 17; Byrd Decl., ¶¶ 9, 10. Furthermore, Settlement Class Counsel and Defendant's counsel are well versed in handling data breach class

actions such as this one and fully understand the values recovered in similar cases. Berry Decl., ¶ 8; Byrd Decl., ¶¶ 19, 23. Therefore, the Court can rest assured that the negotiations were not collusive.

In its Order, the Court requested Plaintiff make a showing that the claims-made structure of this settlement is one that is frequently approved and found to be acceptable by courts. ECF No. 35 at 18-19. Courts, including this one, regularly approve settlements of similar claims with nearly identical settlement structures and benefits for the classes. *See, e.g.*, *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *4; *Ford*, 2022 U.S. Dist. LEXIS 16072 at *3-*5; *Schellhorn*, No. 2:21-cv-08661-VAP-JCx at ECF No. 52; *Aguallo v. Kemper Corporation*, No. 1:21-cv-01883 (N.D. Ill. Oct. 14, 2021), ECF No. 53 (order approving settlement); *Warshawsky v. CBDMD, Inc.*, No. 20-cv-00562 (W.D. N. C. Aug. 9, 2022), ECF No. 21 (order approving settlement).

Plaintiff discusses this issue in more detail in his concurrently-filed Motion for Attorney's Fees, Expenses, and Service Award to Plaintiff.

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, under Rule 23(e)(2)(D), the court must confirm that the settlement treats all class members as equitably as possible under the circumstances. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, 2020 U.S. Dist. LEXIS 84576, at *26 (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

-23-

Here, all Settlement Class Members benefit from the same relief, so no preferential treatment exists. Each Settlement Class Member can claim up to $450 in reimbursements for ordinary expenses and time spent and up to $3,000 in reimbursements for extraordinary expenses, and all Settlement Class Members are eligible to receive identity theft protection.

While Plaintiff also seeks approval of a service award from this Court, as explained in detail in Plaintiff's motion for attorneys' fees, the award of $1,750 aligns with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiff's adequacy as class representative or the validity of the Settlement. As such, this factor also weighs in favor of approval.

## VIII.   CONCLUSION

For all the aforementioned reasons, Plaintiff respectfully requests this Court grant this and finally approve the settlement.

DATED:  January 16, 2023                    Respectfully Submitted,

                                            /s/ M. Anderson Berry

                                            M. ANDERSON BERRY (262879)
                                            GREGORY HAROUTUNIAN (330263)
                                            **CLAYEO C. ARNOLD,**
                                            **  A PROFESSIONAL LAW CORP.**
                                            865 Howe Avenue
                                            Sacramento, CA 95825
                                            Telephone: (916) 239-4778
                                            Facsimile:  (916) 924-1829
                                            aberry@justice4you.com
                                            gharoutunian@justice4you.com

                                            BETSY C. MANIFOLD (182450)
                                            RACHELE R. BYRD (190634)
                                            ALEX J. TRAMONTANO (276666)
                                            **WOLF HALDENSTEIN ADLER**
                                            **  FREEMAN & HERZ LLP**
                                            750 B Street, Suite 1820
                                            San Diego, CA 92101
                                            Telephone: (619) 239-4599
                                            Facsimile: (619) 234-4599
                                            manifold@whafh.com
                                            byrd@whafh.com
                                            tramontano@whafh.com

-24-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Plaintiff and
Settlement Class Counsel*