M. ANDERSON BERRY (262879)
GREGORY HAROUTUNIAN (330263)
**CLAYEO C. ARNOLD,**
 **A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile:  (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
ALEX J. TRAMONTANO (276666)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

*Attorneys for Plaintiff and Settlement Class Counsel*

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BOWDLE, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>KING'S SEAFOOD COMPANY, LLC,<br><br>             Defendant. | Case No. 8:21-cv-01784-CJC-JDE<br><br>**DECLARATION OF RACHELE R. BYRD IN SUPPORT OF PLAINTIFF'S MOTIONS FOR: (1) ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD TO PLAINTIFF; AND (2) FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hrg. Date:   Feb. 13, 2023<br>Time:          1:30 p.m.<br>Ct. Rm:       9B<br>Judge:        Hon. Cormac J. Carney |

We, Rachele R. Byrd, declare as follows:

1.      I, Rachele R. Byrd, am an attorney at law duly authorized to practice law in the State of California. I am a member of the law firm Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), counsel of record for Plaintiff Jonathan Bowdle ("Plaintiff" or "Class Representative"), and the Court appointed me and my co-counsel, M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp. as Settlement Class Counsel on September 23, 2022 (ECF No. 34 (the "Order")).  I have personal knowledge of the following facts and, if called upon as a witness, could and would competently testify to the matters stated herein.

2.      I respectfully submit this Declaration in support of Plaintiff's: (1) Motion for Final Approval of Class Action Settlement; and (2) Motion for Attorneys' Fees, Expenses and Service Award to Plaintiff.

3.      This matter concerns a class action arising out of a data breach (the "Data Security Incident").

4.      Plaintiff seeks an order granting final approval of the class action settlement between himself, on behalf of the Settlement Class, and Defendant King's Seafood Company, LLC ("Defendant" or "King's Seafood"). The Court preliminarily approved the settlement and provisionally certified for settlement purposes a Settlement Class defined as "all individuals residing in the United States to whom Defendant or its authorized representative sent a notice concerning the 2021 Data Security Incident announced by Defendant."

5.      Plaintiff alleges that on or around August 23, 2021, Defendant learned that personally identifiable information ("PII") "may have been compromised during a cyber-attack which began on June 4, 2021."[1]  Plaintiff further alleges that the hacker gained access to directories where PII was stored.  "The unauthorized

---

[1]      *See* https://www.doj.nh.gov/consumer/security-breaches/documents/kings-seafood-20210920.pdf (last visited Jan. 13, 2023).

individual was capable of accessing and acquiring the [PII] in the directories."[2]

6. Defendant issued a "Notice of Data Breach," dated September 14, 2021, to those whose PII may have been affected.

7. Plaintiff further alleges that his and the Class Members' unprotected PII can be sold on the dark web, leaving Plaintiff and Class Members to now face a present and lifetime risk of identity theft, heightened here by the loss of Social Security and driver's license numbers.

8. Consequently, on October 27, 2021, Plaintiff filed a Class Action Complaint (the "Complaint") on behalf of himself and Class Members, asserting claims against Defendant relating to the Data Security Incident and Defendant's failure to (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing sensitive PII using adequate security procedures.

9. Over the course of several months—from December 2021 through execution of a Term Sheet in April 2022 and execution of the Settlement Agreement in August 2022—the Parties engaged in numerous arm's-length, sometimes contentious, settlement negotiations over the telephone and Zoom and via email.

10. The Parties' unwavering pursuit of settlement negotiations led them to eventually reach a settlement in principle on all terms, including attorneys' fees, costs and expenses, and the service award. The Parties did not negotiate attorneys' fees and the service award until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations.

11. The Parties then memorialized the terms of the Settlement in a Settlement Agreement dated August 23, 2022.

---

[2]    *Id.*

12.     Plaintiff's Motion for Preliminary Approval and the initial Settlement Agreement incorrectly identified the credit monitoring and identity theft protection services offered to the Settlement Class as Pango's "Financial Shield." However, the actual name of the product contemplated by all Parties is Pango's "Identity Defense Complete." On December 21, 2022, the parties executed an Amended Settlement Agreement in which the only change was to identify correctly in ¶ 2.1. the Pango product as "Identity Defense Complete." The Amended Settlement Agreement is attached hereto as **Exhibit 1.**

13.     I believe the settlement is fair, reasonable and adequate and that the Court should therefore grant final approval.

14.     Plaintiff believes he has a strong case for liability. In particular, Plaintiff believes ample evidence will establish that Defendant failed to maintain adequate, reasonable and current data security practices, which led directly to the loss of Plaintiff's and the Class' PII.

15.     Moreover, Plaintiff believes that once he establishes that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the statutory and common law theories of liability Plaintiff pled in his Complaint.

16.     However, Plaintiff's success is not guaranteed.  It is reasonable to recognize that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication.

17.     Given the challenges and inherent risks Plaintiff faces with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the Settlement favor approval of the Settlement.

18.     Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiff would not succeed at trial, the settlement represents an excellent compromise of Plaintiff's and the Settlement

Class Members' claims.

19.    Additionally, the settlement is in line with other settlements in cases involving data breaches of similar scope.  For example, the consideration paid by [24]7.AI, Inc. to settle a data breach class action was up to $2,000 per class member in reimbursement for out-of-pocket expenses, including up to 5 hours at $20 per hour for lost time. *See Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770-BLF, 2022 U.S. Dist. LEXIS 16072 at *3-*5 (N.D. Cal. Jan. 28, 2022). There was no provision for any form of credit monitoring or identity theft insurance for the class members. Similarly, the *Bosley* settlement offered up to $300 per class member in ordinary expense reimbursement and lost time compensation, up to $5,000 per class member in extraordinary expense reimbursement, and two years of Pango's identity and fraud protection services, with an aggregate cap of $500,000 for the monetary relief. *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 U.S. Dist. LEXIS 210946, at *4 (C.D. Cal. Nov. 21, 2022). Likewise, in *Schellhorn et al. v. Timios, Inc.,* No. 2:21-cv-08661-VAP-JCx (C.D. Cal.), the Court approved a claims-made settlement with very similar terms to the instant matter, including reimbursements for lost time and out-of-pocket expenses, reimbursement for extraordinary expenses, and identity theft protection (there was also a payment for statutory damages that are not applicable here). *See Id.*, ECF No. 52 (Nov. 9, 2022).

20.    Before entering into settlement discussions on behalf of Class members, we had sufficient information to make reasonable decisions. Specifically, we gathered all of the information that was available regarding King's Seafood and the Data Security Incident—including publicly-available documents concerning announcements of the Security Incident and notices of the Security Incident Defendant provided to its customers, former employees and various states' Attorneys General. We also submitted a public records request to the Commonwealth of Massachusetts for additional information.

21.     The parties also exchanged information during settlement negotiations, including information regarding the number of Settlement Class Members and the amount Defendant will spend on remedial measures.

22.     Although the parties have not engaged in formal discovery, Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable us to represent Plaintiff's and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area.

23.     I have significant and extensive litigation experience, having been involved in class action and other representative litigation since I joined Wolf Haldenstein in 2001. Attached hereto as **Exhibit 2** is Wolf Haldenstein's firm resume.

24.     Having worked on behalf of the Class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, I fully endorse the settlement.

25.     I assert that the attorneys' fees sought in the motion for attorneys' fees are reasonable and seek fair and reasonable compensation for undertaking this case on a contingency basis, and for obtaining the relief for Plaintiff and the Settlement Class. Throughout this action, Class Counsel have been challenged by highly experienced and skilled defense counsel who had the ability to deploy substantial resources on behalf of their client.

26.     The work done by my firm in this case includes, among other things: investigating this case; drafting and finalizing the Complaint; attentively tracking news and announcements concerning the Data Security Incident; assisting in preparing the Opposition to Defendant's Motion to Dismiss; negotiating and drafting a complex Settlement Agreement including the exhibits thereto; discussing the notice and administration plans with the Settlement Administrator to ensure compliance with due process; discussing the credit monitoring and identity theft

services with vendors; moving for and successfully obtaining preliminary approval; supervising with the Settlement Administrator; reviewing and editing notices; and planning, reviewing and editing the motions for final approval and for attorneys' fees, expenses costs and service award and the memoranda of points and authorities and declarations in support thereof. I provided assistance while being mindful to avoid duplicative efforts both within my firm and with Co-Class Counsel.

27.    Additional time will be spent to: prepare for and attend the Final Fairness Hearing and obtain final approval; defend any appeals taken from the final judgment approving settlement if such appeals are taken; respond to inquiries from Settlement Class Members about the case and the settlement; and to ensure that the distribution of settlement proceeds to Settlement Class Members is done in a timely manner in accordance with the terms of the settlement. I assert that the attorneys' fees sought in the motion for attorneys' fee are reasonable and that Class Counsel seek fair and reasonable compensation for undertaking this case on a contingency basis, and for obtaining the relief for Plaintiff and the Settlement Class. Throughout this action, we have been challenged by highly experienced and skilled counsel who deployed substantial resources on Defendant's behalf.

28.    My firm prosecuted this case on a purely contingent basis. As such, the firm assumed a significant risk or nonpayment or underpayment.

29.    This matter has required me, and other attorneys at my firm, to spend time on this litigation that could have been spent on other matters. At various times during the litigation of this class action, this lawsuit has consumed significant amounts of my time and my firm's time.

30.    Because our firm undertook representation of this matter on a contingency-fee basis, we shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.

31.     If not devoted to litigating this action, from which any remuneration is wholly contingent on a successful outcome, the time our Firm spent working on this case could and would have been spent pursuing other potentially fee generating matters.

32.     Litigation is inherently unpredictable and therefore risky. Here, that risk was very real, due to the rapidly evolving nature of case law pertaining to data breach litigation, and the state of data privacy law. Therefore, despite my firm's devotion to the case and our confidence in the claims alleged against Defendant, there have been many factors beyond our control that posed significant risks.

33.     My firm kept detailed records regarding the amount of time its attorneys and professional staff spent on this litigation, and the lodestar calculation is based on my firm's current billing rates. The information was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. Based upon these records, my firm has expended 186.10 hours on this litigation as of January 16, 2023, which, multiplied by the current hourly rates of the attorneys and other professionals, amounts to $110,869.00 in lodestar. The below chart reflects a breakdown of the amount of time spent by myself and members of my firm in the prosecution of this case as of January 16th:

| Biller | Biller Type | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Rachele R. Byrd | Partner | $750.00 | 81.2 | $60,900.00 |
| Alex J. Tramontano | Associate | $450.00 | 32.8 | $14,760.00 |
| Oana Constantin | Associate | $445.00 | 69.7 | $31,016.50 |
| Alexandra Loutsenhizer | Paralegal | $250.00 | 3.7 | $925.00 |
| Michele Mitchell | Paralegal | $250.00 | 6.1 | $1,525.00 |
| Amanda Salas | Paralegal | $205.00 | 8.5 | $1,752.50 |
| **TOTALS:** | | | **186.1** | **$110,869.00** |

34.     Attached to this declaration as **Exhibit 3** is a detailed chart breaking down the above time and hours into eleven (11) separate categories of tasks performed by the professionals listed above.

35.     In my judgment, and based on my years of experience in class action litigation and other litigation, the number of hours expended, and the services performed by my firm, were reasonable and necessary for my firm's representation of Plaintiffs and the Class.

36.     I have general familiarity with the range of hourly rates typically charged by plaintiffs' class action counsel in the geographical area where my firm practices and throughout the United States, both on a current basis and historically. From that basis, I am able to conclude that the rates charged by my firm are within the range of market rates charged by attorneys and professional staff of equivalent experience, skill and expertise for legal services furnished in complex contingency class action litigation such as this.

37.     The hourly rates of the professionals in my firm, including my own, reflect experience and accomplishments in the area of class litigation. The rate of $750 per hour which I charge for my time is commensurate with hourly rates charged by my contemporaries around the country, including those rates charged by lawyers with my level of experience who practice in the area of class litigation across the nation, and courts have approved my firm's rates in the following examples: *Carrera Aguallo v. Kemper Corp., No. 1:21-cv-01883* (N.D. Ill. Mar. 18, 2022) (ECF No. 53, ¶ 18) (order approving fees and costs); *Riggs v. Kroto, Inc., D/B/A iCanvas*, No. 1:30-cv-05822 (N.D. Ill. Oct. 29, 2021) (ECF No. 61, ¶ 13) (same); *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534-RGK-E (C.D. Cal. Dec. 9, 2021) (ECF No. 52 at 5-6) (same); *In re Hanna Andersson & Salesforce.com Data Breach Litig.*, No. 3:20-cv-00812-EMC (N.D. Cal. Jun. 25, 2021) (ECF No. 75, ¶ 12) (same); *Enquist v. City of Los Angeles*, No. BC591331 (L.A. Cty. Super. Ct. Mar. 17, 2021) (order approving fees and costs); *Granados v. County of Los Angeles*, No.

BC361470 (L.A. Cty. Super. Ct. Oct. 30, 2018); *Ardon v. City of Los Angeles*, No. BC363959 (L.A. Cty. Super Ct. Oct. 26, 2016) (order approving fees and costs); *DeFrees v. Kirkland*, No. CV 11-4272-JLS (SPx), ECF No. 400 (C.D. Cal. Apr. 11, 2016); *DeFrees v. Kirkland*, No. CV 11-4272 GAF (SPx), 2014 U.S. Dist. LEXIS 157320, at *2 (C.D. Cal. Nov. 4, 2014) ("the Court finds the fees and costs appear to be reasonable"); *DeFrees v. Kirkland*, No. CV 11-4272 GAF (SPx), ECF No. 226 (C.D. Cal. Sept. 5, 2012) (order granting plaintiffs' application for fees and costs) ("The Court routinely approves billing rates in the range charged by [Wolf Haldenstein] for counsel of similar skill and experience"); and *McWilliams v. City of Long Beach*, No. BC361469 (L.A. Cty. Super. Ct. Oct. 30, 2018). These rates reflect the risk undertaken due to contingency representation of the Plaintiffs given that the firm bore the risk of no payment at all for its services during this litigation.

38. My firm expended a significant amount of time litigating this case and securing the Settlement for the Class. I took meaningful steps to ensure the efficiency of our work and to avoid duplication of efforts. I expect to maintain a high level of oversight and involvement in this process; therefore, my firm anticipates incurring significant additional lodestar in the future.

39. The time described above does not include charges for expense items. Expense items are billed separately, and such charges are not duplicated in my firm's billing rates. Based upon my firm's records, Wolf Haldenstein incurred $1,629.62 in expenses. These costs were necessary to the investigation, prosecution, and settlement of this Action. A breakdown of my firm's costs and expenses, which I assert are reasonable and were entirely self-funded, are pulled from a computerized database maintained by individuals in the accounting office of my firm and which were checked for accuracy, are reflected below:

| Description | Totals Per Category |
|---|---|
| Research | $1,100.72 |
| Service of Process | $126.75 |
| Copies & Printing | $0.15 |
| Filing Fees | $402.00 |
| **Total:** | **$1,629.62** |

40.    The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  It is anticipated that costs will continue to accrue, including, but not limited to, costs associated with preparation of the motion for final approval of the Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 16th day of January, 2023 at Poway, California.

_Rachele R. Byrd_
RACHELE R. BYRD

29086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

1
2
3
4
5
6
7
8
9          **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11

12  JONATHAN BOWDLE, individually        | Case No. 8:21-cv-01784-CJC-JDE
    and on behalf of all others similarly
13  situated,                             | **AMENDED SETTLEMENT AGREEMENT**

14              Plaintiff,

15

16       v.

17  KING'S SEAFOOD COMPANY, LLC,

18              Defendant.

19
20
21
22
23
24
25
26
27
28

4876-8906-7565.1

This Amended Settlement Agreement, dated December 21, 2022, is made and entered into by and among Plaintiff Jonathan Bowdle, individually and on behalf of the Settlement Class and King's Seafood Company, LLC ("King's Seafood" or "Defendant"), by and through their respective counsel.

## RECITALS

WHEREAS, on October 27, 2021, Mr. Bowdle filed a class action complaint (the "Complaint") in the United States District Court for the Central District of California (the "Court") entitled, *Bowdle v. King's Seafood Company, LLC*, Case No. 8:21-cv-01784-CJC-JDE (the "Litigation");

WHEREAS, the Complaint asserts claims against Defendant for: (1) negligence; (2) breach of implied contract; (3) invasion of privacy; (4) breach of confidence; (5) unjust enrichment; (6) violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0915 & 598.0923; and (7) violation of the Nevada Data Breach Law, Nev. Rev. Stat. § 603A.010, *et seq.*, arising from the Data Security Incident (as such term is defined below);

WHEREAS, Defendant has denied and continues to deny (a) each and every allegation and all charges of wrongdoing or liability of any kind whatsoever asserted or which could have been asserted in this Litigation, (b) that the Representative Plaintiff in the Action and the class he purports to represent have suffered any damage, and (c) that the Action satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23. Without acknowledging any fault or liability on the part of the Defendant, the Settling Parties have agreed to enter into this Agreement as an appropriate compromise of Representative Plaintiff's and Class Members' claims to put to rest all controversy and to avoid the uncertainty, risk, and/or expense of burdensome, protracted, and costly litigation that would be involved in prosecuting and defending this Action. This agreement is for settlement purposes only, and nothing in this agreement shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact

alleged by Representative Plaintiff in this action or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of Defendant or admission by any of the parties of the validity or lack thereof of any claim, allegation, or defense asserted in this Litigation or in any other action;

WHEREAS, the Settling Parties participated in good faith, arms-length settlement discussions over the course of several months, through which the basic terms of a settlement were negotiated and finalized;

WHEREAS, Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in this settlement and how best to serve the interests of the putative class in the Litigation. Based on this investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this Litigation, and the benefits to be provided to the Settlement Class pursuant to this Agreement, that a settlement with Defendant on the terms set forth in this Agreement is fair, reasonable, adequate and in the best interests of the putative class;

WHEREAS, this Settlement Agreement is intended to fully, finally and forever resolve all claims and causes of action asserted, or that could have been asserted based upon the facts alleged in the Complaint, against Defendant and the Released Persons, by and on behalf of the Representative Plaintiff and Settlement Class Members, and any other such actions by and on behalf of any other putative classes of individuals against Defendant originating, or that may originate, in jurisdictions in the United States, reasonably related to the operative facts alleged in the Complaint.

NOW, THEREFORE, IT IS HEREBY AGREED, by and between the Representative Plaintiff, Class Counsel, and Defendant, that, subject to the approval of the Court as provided for in this Agreement, the Litigation and Released Claims (including Unknown Claims) shall be fully and finally settled, compromised, and

released, and the Litigation shall be dismissed with prejudice, on the following terms and conditions:

## I.  DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1   "Agreement" or "Settlement Agreement" means this agreement.

1.2   "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.3   "Claims Administrator" means a company to be selected by Defendant, with the approval of Class Counsel which approval shall not be unreasonably withheld, experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation.

1.4   "Claims Deadline" means the postmark and/or online submission deadline for valid claims submitted pursuant to ¶ 2 below. The Claims Deadline is 90 days after the Notice Commencement date.

1.5   "Claim Form" means the claim form to be used by Settlement Class Members to submit a Settlement Claim, either through the mail or online through the Settlement Website, substantially in the form as shown in **Exhibit A**.

1.6   "Class Members" means all individuals residing in the United States to whom Defendant or its authorized representative sent a notice concerning the 2021 Data Security Incident announced by Defendant. Class Members specifically excludes: (i) King's Seafood and King's Seafood's parents, subsidiaries, affiliates and any entity in which King's Seafood has a controlling interest; and (ii) all judges assigned to hear any aspect of this Litigation as well as their immediate family members. Class Members consists of approximately 2,875 individuals.   These individuals constitute the "Settlement Class" solely for purposes of certifying a settlement class in this Litigation.

1.7    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration. Defendant shall pay all Costs of Claims Administration.

1.8    "Court" means the United States District Court for the Central District of California.

1.9    "Data Security Incident" means the cyberattack perpetrated on King's Seafood beginning on or around June 4, 2021, and which Defendant learned about on or around August 23, 2021.

1.10    "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.11    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 11.1 herein have occurred and been met.

1.12    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.13    "Judgment" means a judgment rendered by the Court.

1.14    "Long Notice" means the long form notice of settlement posted on the Settlement Website, substantially in the form as shown in **Exhibit B**.

1.15    "Notice Commencement Date" means thirty days (30) following entry of the Preliminary Approval Order.

1.16 "Notice Program" means steps taken by the Claims Administrator to notify Class Members of the settlement as set forth below.

1.17 "Objection Date" means the date by which Settlement Class Members must file with the Court, with service to counsel for the Settling Parties, their objection to the Settlement Agreement for that objection to be effective. The Objection Date is 60 days after the Notice Commencement Date.

1.18 "Opt-Out Date" means the date by which Class Members must mail their requests to be excluded from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt-Out Date is 60 days after the Notice Commencement Date.

1.19 "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.20 "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to Class Members substantially in the form attached hereto as **Exhibit C**.

1.21 "Proposed Settlement Class Counsel" and "Class Counsel" means M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp., and Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP.

1.22 "Related Entities" means King's Seafood's respective past or present officers, directors, employees, servants, members, partners, principals, shareholders, owners, parents, subsidiaries, divisions, partnerships, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, executors, heirs, administrators, joint ventures, personal representatives, assigns, transferees, trustees, insurers, and reinsurers, and includes,

without limitation, any Person related to any such entity who is, was, or could have been named as a defendant in any of the actions in the Litigation.

1.23 "Released Claims" shall collectively mean any and all past, present, and future claims, causes of action, lawsuits, set-offs, costs, expenses, attorneys' fees, losses, rights, demands, charges, complaints, actions, suits, petitions, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, matured or unmatured, in law or equity, and any other form of legal or equitable relief that has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons reasonably related to the operative facts alleged in or otherwise described by the Complaint. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Class Members who have timely excluded themselves from this settlement proceeding using the protocol described herein.

1.24 "Released Persons" means King's Seafood and its Related Entities.

1.25 "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.26 "Settlement Class Member(s)" means Class Members who do not timely and validly opt-out of the Agreement by excluding themselves from this settlement proceeding using the protocol described herein.

1.27 "Settlement Class Representative" or "Representative Plaintiff" means Jonathan Bowdle.

1.28 "Settling Parties" means, collectively, King's Seafood and Plaintiff, individually and on behalf of the Settlement Class Members.

1.29 "Settlement Website" means a website, the URL for which to be mutually selected by the Settling Parties, that will inform Class Members of the terms

of this Settlement Agreement, their rights, dates and deadlines and related information, as well as provide the Class Members with the ability to submit a Settlement Claim online.

1.30 "Short Notice" means the short form notice of the proposed class action settlement, substantially in the form as shown in **Exhibit D**. The Short Notice will direct recipients to the Settlement Website and inform Class Members of, among other things, the Claims Deadline, the Opt-Out Date and Objection Date, and the date of the Final Fairness Hearing.

1.31 "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiff intends to and expressly shall have, and each of the Settlement Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived, to the fullest extent permitted by law, the provisions, rights, and benefits conferred by California Civil Code § 1542 and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, California Civil Code §§ 1798.80, *et seq.*; Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR

HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER
SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Plaintiff, may hereafter discover facts in
addition to, or different from, those that they, and any of them, now know or believe
to be true with respect to the subject matter of the Released Claims, but Plaintiff
expressly shall have, and each other Settlement Class Member shall be deemed to
have, and by operation of the Judgment shall have, upon the Effective Date, fully,
finally and forever settled and released any and all Released Claims and Unknown
Claims. The Settling Parties acknowledge, and the Settlement Class Members shall
be deemed by operation of the Judgment to have acknowledged, that the foregoing
waiver is a material element of the Settlement Agreement of which the Released
Claims are a part.

1.32   "United States" as used in this Settlement Agreement includes all 50
states, the District of Columbia, and all territories.

1.33   "Valid Claims" means Settlement Claims in an amount approved by the
Claims Administrator or found to be valid through the claims processing and/or
Dispute Resolution process, or through the process for review and challenge set forth
in the section entitled, "Administration of Claims."

## II.    SETTLEMENT CLASS BENEFITS

2.1   <u>Identity Protection and Credit Monitoring Services</u>. All Settlement
Class Members are eligible for two (2) years of free identity-theft protection and
credit monitoring services, called Identity Defense Complete. The two years of free
identity-theft protection provided under this Settlement Agreement shall be in
addition to any other identity-theft protection and/or credit monitoring received by
Settlement Class Members from Defendant. Settlement Class Members must submit
a Claim Form to be provided with this benefit. The commencement of protection and
monitoring will begin upon the Effective Date of the settlement and will remain

available for commencement for 90 days thereafter. Protection and monitoring provided shall include, at a minimum:

      a)    Credit monitoring at one of the three major credit reporting agencies: Equifax, Experian or TransUnion.

      b)    Dark web monitoring.

      c)    Identity restoration and recovery services.

      d)    $1,000,000 identity theft insurance with no deductible.

2.1.1  Settlement Class Members can enroll for these identity protection and credit monitoring services whether or not they are eligible for a monetary recovery under this Settlement.

2.1.2  Those Settlement Class Members who enroll in monitoring and protection services and who already have obtained monitoring and protection services offered through Defendant as a result of the Data Security Incident will receive an additional two (2) years of monitoring and protection services from the expiration date of the monitoring and protection services already received.

2.2    <u>Cash Benefits</u>. Defendant agrees to make available the below compensation to Settlement Class Members who submit valid and timely Claim Forms. Claims will be reviewed for completeness and plausibility by the Claims Administrator. For claims deemed invalid, the Claims Administrator shall provide claimants an opportunity to cure, unless an inability to cure is apparent from the face of the claim, e.g., the claimant is not a Class Member.

2.2.1  <u>Compensation for Ordinary Losses</u>: Defendant will provide up to $450 in compensation to each Settlement Class Member upon submission of a valid and timely Claim Form attesting under penalty of perjury that the Settlement Class Member incurred expenses, fees, and/or lost time as a direct result of the Data Security Incident and providing supporting documentation of out of pocket expenses and fees. Ordinary losses can arise from the following categories of expenses, fees and lost time:

a)    Documented out of pocket expenses incurred as a direct result of the Data Security Incident, namely, documented (1) costs incurred associated with accessing or freezing/unfreezing credit reports with any credit reporting agency or other entity; and (2) other expenses incurred, namely, postage, copying, scanning, faxing, mileage and other travel-related charges, parking, notary charges, research charges, cell phone charges (only if charged by the minute), long distance phone charges, data charges (only if charged based on the amount of data used), bank fees, accountant fees, and attorneys' fees, all of which must be fairly traceable to the Data Security Incident and must not have been previously reimbursed by a third party. Expenses must be supported by documentation substantiating the full extent of the amount claimed and attested to under penalty of perjury;

b)    Documented fees for credit reports, credit monitoring, or other identity theft insurance product purchased between June 4, 2021 and the Claims Deadline.  These fees must be supported by documentation substantiating the full extent of the amount claimed and the fees, as attested to under penalty of perjury, and must be fairly traceable to the Data Security Incident;

c)    Reimbursement for Lost Time: Settlement Class Members may submit claims to be compensated for lost time they reasonably spent responding to the Data Security Incident. Settlement Class Members may claim up to three (3) hours of time compensated at the rate of $20 per hour. All such lost time must be fairly traceable to the Data Security Incident, reasonably described by type of lost time incurred, and supported by an attestation under penalty of perjury that the time spent was reasonably incurred dealing with the Data Security Incident.

2.2.2 <u>Compensation for Extraordinary Losses</u>:  Defendant will provide up to $3,000 in compensation to each Settlement Class Member who submits a valid and timely claim form and who proves monetary loss directly arising from documented identity theft perpetrated on or against the Settlement Class Member if:

a)    The loss is an actual, documented, and unreimbursed monetary loss;

b)    The loss was fairly traceable to the Data Security Incident;

c)    The loss occurred after June 4, 2021 and before the date of the close of the Claims Period;

d)    The loss is not already covered by the "Compensation for Ordinary Losses" category; and

e)    The Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

2.2.3  Settlement Class Members seeking reimbursement under ¶¶ 2.2.1 and/or 2.2.2 must complete and submit to the Claims Administrator a Claim Form in a form substantially similar to the one attached as **Exhibit A**, postmarked or submitted online on or before the Claims Deadline. The notice to the Class Members will specify this deadline and other relevant dates described herein. The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. Notarization shall not be required. Claims for extraordinary losses and out of pocket expenses and fees must be supported by documentation substantiating the full extent of the amount claimed and attested to under penalty of perjury. Failure to provide such supporting documentation, as requested on the Claim Form, shall result in denial of a claim. No documentation is needed for lost-time expenses. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶¶ 2.4, 10.1.

2.2.4  Defendant's maximum, not to exceed payment obligations under this Settlement for any claims made under paragraph 2.2 is $350,000. To avoid any ambiguity, the maximum in this paragraph excludes paragraph 2.1. This maximum does not include any other relief provided in this Settlement Agreement.  If approved

claims under paragraph 2.2 exceed the not to exceed amount, the Claims Administrator shall modify the monetary proceeds to be distributed to affected Settlement Class Members on a *pro rata* basis.

2.3    <u>Business Practice Enhancements, Including Monetary Investment into Data Security</u>. For a period of 36 months beginning in July 2021, Defendant has and will continue to undertake certain reasonable steps to enhance the security deployed to secure access to its data network. Defendant estimates the cost or value of these enhancements will exceed $500,000. Defendant shall take or will take the following steps:

a)    Periodic third-party security auditor and/or internal IT security personnel monitoring, scanning, and testing of data system security, with prompt correction of detected problems;

b)    Periodic internal IT security personnel training on data system security, including any modifications or updates thereto;

c)    Data system segmentation, including firewalls and access controls such that hackers cannot use a breach in one system area to access other system areas;

d)    Use of encrypted email, including encryption of email attachments, and enlist protocols as reasonable to avoid PII storage in email accounts;

e)    Routinely conduct employee training/education on best practices to ID and avoid threats to data system;

f)    Have a breach response plan and train IT security personnel on operation of same;

g)    Practices to ensure reasonable software lifecycle management;

h)    Deploy active encryption software covering relevant data locations where PII maintained.

13

2.4    <u>Dispute Resolution</u>. The Claims Administrator, in its discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the out-of-pocket expenses, ordinary fees, and extraordinary losses described in ¶¶ 2.2.1 and/or 2.2.2; and (3) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the claimed losses as a result of the Data Security Incident. The Claims Administrator may, at any time, request from the claimant, in writing, additional information as the Claims Administrator may reasonably require in order to evaluate the claim (e.g., documentation requested on the Claim Form, information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof). For any such Settlement Claims that the Claims Administrator determines to be implausible, the Claims will be deemed invalid and submitted to counsel for the Settling Parties. If counsel for the Settling Parties agree that any such claim is a Valid Claim, the Claims Administrator shall follow counsel's joint direction regarding the disposition of the claim.

2.4.1    Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid, the Claims Administrator shall request additional information and give the claimant thirty (30) days to cure the defect before rejecting the claim. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.4.2    Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that

such a claim is valid, then the claim shall be paid, subject to the review and challenge process set forth in ¶ 10.1. If the claim is determined to be invalid, then the Claims Administrator will submit it to counsel for the Settling Parties.  If counsel for the Settling Parties agree that any such claim is a Valid Claim, the Claims Administrator shall follow counsel's joint direction regarding the disposition of the claim.

2.4.3 Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination. If the claimant approves the final determination, then the approved amount shall be the amount to be paid. If the claimant does not approve the final determination within thirty (30) days, then the dispute will be submitted to counsel for the Settling Parties within an additional ten (10) days.  The Claims Administrator shall follow counsel for the Settling Parties' joint direction regarding the disposition of the claim.

## III.    CLASS CERTIFICATION

3.1    The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

/ / /

## IV.    NOTICE AND CLAIMS ADMINISTRATION

4.1    Upon reaching an agreeable resolution of the claims of the Class Members, Defendant will select, subject to Plaintiff's approval with such approval not to be unreasonably withheld, a Claims Administrator who will be charged with delivering sufficient notice (including direct notice) and administering the claims process. Defendant will pay the entirety of the settlement administration fees, including the cost of notice.

4.2    After the Court enters an order finally approving the Settlement, the Claims Administrator shall provide the requested relief to all Settlement Class Members that made valid and timely claims, subject to the individual and aggregate caps on Settlement Class Member payments set forth in Paragraph 2 above.

## V.    PRELIMINARY APPROVAL

5.1    As soon as practicable after the execution of the Settlement Agreement, Proposed Settlement Class Counsel and counsel for King's Seafood shall jointly submit this Settlement Agreement to the Court, and Proposed Settlement Class Counsel will file an unopposed motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in a form substantially similar to the one attached as **Exhibit C**, requesting, among other things:

a)    certification of the Settlement Class for settlement purposes only pursuant to ¶ 3.1;

b)    preliminary approval of the Settlement Agreement as set forth herein;

c)    appointment of Proposed Settlement Class Counsel as Settlement Class Counsel;

d)    appointment of Plaintiff as Settlement Class Representative;

e)    approval of a customary form of Short Notice to be mailed to Class Members or emailed to specified Class Members, in a form

substantially similar to **Exhibit D** (the "Settlement Class Notice");

f)    approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to **Exhibit B**, which, together with the Short Notice, shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing; and

g)    appointment of the Claims Administrator.

The Short Notice and Long Notice will be reviewed and approved by the Claims Administrator but may be revised as agreed upon by the Settling Parties prior to submission to the Court for approval.

5.2    King's Seafood shall pay for providing notice to Class Members in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration. Attorneys' fees, costs, and expenses of Settlement Class Counsel, and service awards to Class Representatives, as approved by the Court, shall be paid by King's Seafood as set forth in ¶ 9 below.

5.3    Notice shall be provided to Class Members by the Claims Administrator as follows:

5.3.1  Class Member Information:  No later than fourteen (14) days after entry of the Preliminary Approval Order, King's Seafood shall provide the Claims Administrator with the name, email address (where included in existing notice materials), and last known physical address of each Class Member (collectively, "Class Member Information") that King's Seafood used to notify Class Members of the Data Security Incident. The Class Member Information and its contents shall be used by the Claims Administrator solely for the purpose of performing its obligations

pursuant to this Settlement Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement, or provide all data and information in its possession to the Settling Parties upon request, the Claims Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

5.3.2 <u>Settlement Website</u>: Prior to the dissemination of the Settlement Class Notice, the Claims Administrator shall establish the Settlement Website that will inform Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; (v) the operative Complaint filed in the Litigation; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically.

5.3.3 <u>Short Notice</u>: Within thirty (30) days after the entry of the Preliminary Approval Order and to be substantially completed not later than forty-five (45) days after entry of the Preliminary Approval Order, and subject to the requirements of this Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to Class Members as follows:

a) Via U.S. mail to all Class Members, excepting specifically identified Class Members for whom email notification is to be provided due to the absence of a U.S. mailing address. Before any mailing under this paragraph occurs, the Claims Administrator shall run the postal addresses of Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

        i.    In the event that a mailed Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice;

        ii.    In the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out and Objection Deadline, a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Short Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing.

b)    Publishing, on or before the Notice Commencement Date, the Short Notice, Claim Form, and Long Notice on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the website throughout the claim period;

5.3.4 A toll-free help line shall be made available to provide Class Members with additional information about the settlement. The Claims Administrator also will provide copies of the forms of Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request; and

5.3.5 Contemporaneously with seeking Final Approval of the Settlement, Proposed Settlement Class Counsel and King's Seafood shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

5.4     The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and consistent with such approval. The Notice Program shall commence within thirty (30) days after entry of the Preliminary Approval Order and shall be completed within forty-five (45) days after entry of the Preliminary Approval Order.

5.5     Proposed Settlement Class Counsel and King's Seafood's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

5.6     King's Seafood, if it does not perform the function itself, will also cause the Claims Administrator to provide (at King's Seafood's expense) notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

## VI.     OPT-OUT PROCEDURES

6.1     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest a Person's intent to opt-out of the Settlement Class. To be effective, written notice must be postmarked by the Opt-Out Date.

6.2     Persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in ¶ 6.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not opt-out of the Settlement Class in the manner set forth in ¶ 6.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

6.3     In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than one hundred forty-five (145) timely and valid Opt-Outs submitted, Defendant may, by notifying Settlement Class Counsel and the Court in writing, within twenty-one (21) days after the Opt-Out Date, void this Settlement Agreement. If Defendant voids the Settlement Agreement, Defendant shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel and Plaintiffs' Counsel and service awards and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## VII.     OBJECTION PROCEDURES

7.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state: (i) the objector's full name and address; (ii) the case name and docket number - *Jonathan Bowdle v. King's Seafood Company, LLC,* Case No. 8:21-cv-01784-CJC-JDE (C.D. Cal.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a Settlement Class Member (e.g., copy of the objector's settlement notice, copy of original notice of the Data Security Incident, or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the

objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be filed with the Court no later than the Objection Date, with service to the Proposed Settlement Class Counsel: M. Anderson Berry, Clayeo C. Arnold, A Professional Law Corp., 865 Howe Avenue, Sacramento, CA 95825; and Rachele R. Byrd, Wolf Haldenstein Adler Freeman & Herz LLP, 750 B Street, Suite 1820, San Diego, CA 92101; and counsel for King's Seafood, Jon P. Kardassakis, Lewis Brisbois Bisgaard and Smith, 633 West 5th Street, Suite 4000, Los Angeles, California 90071. Alternatively, the objector or his or her counsel may file Objections with the Court electronically, through the Court's ECF system, with service on Proposed Settlement Class Counsel and King's Seafood's counsel made through the ECF system.   If filing and service on the above counsel is properly made electronically, via ECF, service need not be made at the above addresses.  For all timely filed objections, Proposed Settlement Class Counsel will file them with the Court as an exhibit to the Motion for Final Approval of the Settlement.

7.2    Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 7.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 7.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be through appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

/ / /

/ / /

## VIII. RELEASES

8.1    Upon the Effective Date, each Settlement Class Member, including Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims, to include Unknown Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, excluding Opt-Outs but including Plaintiff, shall directly, indirectly, or in any representative capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in this Settlement Agreement as provided herein) in which any of the Released Claims is asserted.

8.2    Upon the Effective Date, King's Seafood shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, the Settlement Class Representative, the Settlement Class Members, and Proposed Settlement Class Counsel, of all claims, including Unknown Claims, based upon the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement. Any other claims or defenses King's Seafood may have against the Settlement Class Representative, the Settlement Class Members, and the Proposed Settlement Class Counsel including, without limitation, any claims based upon any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons not based on the institution, prosecution, assertion, settlement, or resolution of the Litigation are specifically preserved and shall not be affected by the preceding sentence.

8.3    Notwithstanding any term herein, neither King's Seafood nor its Related Entities shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Representative Plaintiff, each and all of the Settlement Class Members, and Proposed Settlement Class Counsel.

/ / /

## IX.        SERVICE AWARD AND ATTORNEYS' FEES AND EXPENSES

9.1    After an agreement had been reached as to the essential terms of a settlement (i.e., Settlement Class benefits), the Parties negotiated the amount of a service award to the Representative Plaintiff. The Representative Plaintiff shall seek, and Defendant agrees to pay, a service award of $1,750 to the Representative Plaintiff subject to Court approval. Defendant shall pay the service award separate and apart from any other sums agreed to under this Settlement Agreement. If the Court approves a lesser service award, Defendant will be responsible to pay only the approved amount.

9.2    After an agreement had been reached as to the essential terms of a settlement (i.e., Settlement Class benefits), the Parties negotiated the amount of Plaintiff's attorneys' fees and litigation expenses. Plaintiff shall seek an award of attorneys' fees and litigation expenses not to exceed $192,500. Defendant shall pay the attorneys' fees and litigation expenses award amount separate and apart from any other sums agreed to under this term sheet. If the Court approves a lesser award of attorneys' fees and litigation expenses, Defendant will be responsible to pay only the approved amount.

9.3    Defendant shall pay the attorneys' fees and expenses and service award awarded by the Court to Clayeo C. Arnold, A Professional Law Corp. within fourteen (14) days after the Effective Date.  The attorneys' fees and expenses award will be allocated among Proposed Settlement Class Counsel by M. Anderson Berry and Rachele R. Byrd.  Defendant bears no responsibility or liability relating to the allocation of the attorneys' fees and expenses among Proposed Settlement Class Counsel.

9.4    The finality or effectiveness of the Settlement Agreement shall not depend upon the Court awarding any particular attorneys' fees and expenses award or service award. No order of the Court, or modification or reversal or appeal of any order of the Court concerning the amount(s) of any attorneys' fees and expenses,

and/or service awards ordered by the Court to Proposed Settlement Class Counsel or Representative Plaintiff shall affect whether the Judgment is final or constitute grounds for cancellation or termination of this Settlement Agreement.

**X.    ADMINISTRATION OF CLAIMS**

10.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶¶ 2.2.1 and/or 2.2.2. Proposed Settlement Class Counsel and counsel for King's Seafood shall be given reports as to both claims and distribution, and have the right to challenge the claims and distribution set forth in the reports, including by requesting and receiving, for any approved claim, the name of the Settlement Class Member, a description of the approved claim, including dollar amounts to be paid as extraordinary or ordinary losses, and all supporting documentation submitted.  If counsel for the Settling Parties agree that any such claim is improper, the Claims Administrator shall follow counsel's joint direction regarding the disposition of the claim.  If the Settling Parties cannot agree on the disposition of a claim, the Settling Parties, upon the election of either Settling Party, will submit the claim for disposition to a jointly agreed upon impartial third-party claim referee for determination.  The Claims Administrator's determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the above right of review and challenge and the Dispute Resolution process set forth in ¶ 2.4. All claims agreed to be paid in full by King's Seafood shall be deemed Valid Claims.

10.2    Checks for Valid Claims shall be mailed and postmarked, and electronic payments shall be issued electronically, within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later.

10.3    All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from

receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

10.4    No Person shall have any claim against the Claims Administrator, King's Seafood, Proposed Settlement Class Counsel, Proposed Class Representative, and/or King's Seafood's counsel based on distributions of benefits, or the denial of benefits, to Settlement Class Members.

## XI.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

11.1    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

        a)    The Court has entered the Preliminary Approval Order, as required by ¶ 5.1;

        b)    The Court has entered the Judgment granting final approval to the settlement as set forth herein; and

        c)    Judgment has become Final, as defined in ¶ 1.12.

11.2    If all conditions specified in ¶ 11.1 hereof are not satisfied and the Effective Date does not occur, the Settlement Agreement shall be canceled and terminated unless Proposed Settlement Class Counsel and King's Seafood's counsel mutually agree in writing to proceed with the Settlement Agreement.

11.3    Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Settlement Class Counsel and to King's Seafood's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

11.4    In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in this Settlement Agreement is terminated in accordance with its terms, (a) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or

Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, King's Seafood shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, Claims Administration, and Dispute Resolution pursuant to ¶ 4.1 above and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.  In the event any of the releases or definitions set forth in ¶¶ 1.22, 1.23, 1.24, 1.31, 8.1, or 8.2 are not approved by the Court as written, the Settlement Agreement shall be terminated and provisions (a) and (b) of this paragraph shall apply to the Settling Parties and this Agreement unless Proposed Settlement Class Counsel and King's Seafood's counsel mutually agree in writing to proceed with the Settlement Agreement.

## XII.    MISCELLANEOUS PROVISIONS

12.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

12.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that are contested and shall not be deemed an admission by any

Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth herein.

12.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

12.5    This Settlement Agreement contains the entire understanding between King's Seafood and Plaintiff individually and on behalf of the Class Members regarding the Litigation settlement and this Agreement, and this Agreement supersedes all previous negotiations, agreements, commitments, understandings, and

writings between King's Seafood and Plaintiff, including between counsel for King's Seafood and Class Counsel, in connection with the Litigation settlement and this Agreement. Except as otherwise provided herein, each party shall bear its own costs.

12.6    Proposed Settlement Class Counsel, on behalf of the Settlement Class, is expressly authorized by Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

12.7    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

12.8    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

12.9    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

12.10   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

12.11   All dollar amounts are in United States dollars (USD).

12.12   Cashing a settlement check (paper or electronic) is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void." If a check becomes void, the Settlement Class Member shall have until six

29

months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and King's Seafood shall have no obligation to make payments to the Settlement Class Member under ¶¶ 2.2.1 and/or 2.2.2 or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for further re-issuance will not be honored after such checks become void.  For monetary relief not cashed by Settlement Class Members and on the expiration of all Settlement Class Members' right to receive said monetary relief, the Claims Administrator shall submit the total of all such uncashed monetary relief to the Electronic Privacy Information Center, which promotes internet privacy.

12.13  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed.

*Jonathan Bowdle*

---

JONATHAN BOWDLE
*Plaintiff*

RICHARD S. FIORE JR.
*On behalf of King's Seafood Co., LLC*

**Approved as to Form:**

**CLAYEO C. ARNOLD, A
PROFESSIONAL LAW CORP.**

**LEWIS BRISBOIS BISGAARD &
SMITH, LLP**

---

M. Anderson Berry (262879)
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778

Christopher H. Wood
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Tel.: (303) 861-7760

Doc ID: 0abb6d5954a471d5b8b94748e3a8ca33a80b8a46

months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and King's Seafood shall have no obligation to make payments to the Settlement Class Member under ¶¶ 2.2.1 and/or 2.2.2 or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for further re-issuance will not be honored after such checks become void.  For monetary relief not cashed by Settlement Class Members and on the expiration of all Settlement Class Members' right to receive said monetary relief, the Claims Administrator shall submit the total of all such uncashed monetary relief to the Electronic Privacy Information Center, which promotes internet privacy.

12.13  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed.

_____    _____
JONATHAN BOWDLE                           RICHARD S. FIORE JR.
*Plaintiff*                                         *On behalf of King's Seafood Co., LLC*

**Approved as to Form:**

**CLAYEO C. ARNOLD, A                  LEWIS BRISBOIS BISGAARD &
PROFESSIONAL LAW CORP.         SMITH, LLP**

_____    _____
M. Anderson Berry (262879)              Christopher H. Wood
865 Howe Avenue                            1700 Lincoln Street, Suite 4000
Sacramento, CA 95825                      Denver, Colorado 80203
Telephone: (916) 239-4778              Tel.: (303) 861-7760

1  months after the Effective Date to request re-issuance. If no request for re-issuance

2  is made within this period, the Settlement Class Member will have failed to meet a

3  condition precedent to recovery of settlement benefits, the Settlement Class

4  Member's right to receive monetary relief shall be extinguished, and King's Seafood

5  shall have no obligation to make payments to the Settlement Class Member under

6  ¶¶ 2.2.1 and/or 2.2.2 or any other type of monetary relief. The same provisions shall

7  apply to any re-issued check. For any checks that are issued or re-issued for any

8  reason more than one hundred eighty (180) days from the Effective Date, requests

9  for further re-issuance will not be honored after such checks become void.  For

10  monetary relief not cashed by Settlement Class Members and on the expiration of all

11  Settlement Class Members' right to receive said monetary relief, the Claims

12  Administrator shall submit the total of all such uncashed monetary relief to the

13  Electronic Privacy Information Center, which promotes internet privacy.

14      12.13  All agreements made and orders entered during the course of the

15  Litigation relating to the confidentiality of information shall survive this Settlement

16  Agreement.

17      IN WITNESS WHEREOF, the parties hereto have caused the Settlement

18  Agreement to be executed.

19

20  _____     _____
    JONATHAN BOWDLE                  RICHARD S. FIORE JR.
21  *Plaintiff*                      *On behalf of King's Seafood Co., LLC*

22  **Approved as to Form:**

23
    **CLAYEO C. ARNOLD, A**          **LEWIS BRISBOIS BISGAARD &**
24  **PROFESSIONAL LAW CORP.**       **SMITH, LLP**

25
    _____     _____
26  M. Anderson Berry (262879)       Christopher H. Wood
27  865 Howe Avenue                  1700 Lincoln Street, Suite 4000
    Sacramento, CA 95825             Denver, Colorado 80203
28  Telephone: (916) 239-4778        Tel.: (303) 861-7760

Fax: (916) 924-1829
aberry@justice4you.com

Rachele R. Byrd (190634)
**WOLF HALDENSTEIN ADLER**
      **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
byrd@whafh.com
*Attorneys for Plaintiff and the*
*Settlement Class*

Fax: (303) 861-7767
christopher.wood@lewisbrisbois.com

*Attorneys for Defendant*
*King's Seafood Company, LLC*

# EXHIBIT A

King's Seafood Settlement Administrator

c/o [Settlement Administrator]

[Address Line 1]

[Address Line 2]

**Your Claim Form Must Be Submitted On or Before [DATE]**

# *Bowdle v. King's Seafood Company, LLC,*

### In the United States District Court for the Central District of California
### (Case No. 8:21-cv-01784-CJC-JDE)

## Claim Form

This claim form should be filled out online or submitted by mail if you are a U.S. resident who received notice in or about August, 2021 from King's Seafood Company, LLC ("King's Seafood") of a cyberattack perpetrated on King's Seafood beginning on or around June 4, 2021 (the "Data Security Incident"). The potential benefits include reimbursement for out-of-pocket losses, reimbursement for extraordinary losses, payment for lost time spent directly dealing with the Data Security Incident, and identity protection and credit monitoring services. You may get a payment or other benefit if you fill out this claim form, if the settlement is approved, and if you are found to be eligible for a payment or other benefit.

The settlement notice describes your legal rights and options. Please visit the official settlement administration website, [WEBSITE], or call [TELEPHONE #] for more information.

If you wish to submit a claim for a settlement payment, you need to provide the information requested below. Please print clearly in blue or black ink. This claim form must be mailed and postmarked by [DATE].

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED (*) INFORMATION BELOW AND YOU MUST SIGN THIS CLAIM FORM. THIS CLAIM FORM SHOULD ONLY BE USED IF A CLAIM IS BEING MAILED IN AND IS NOT BEING FILED ONLINE. YOU MAY ALSO FILE YOUR CLAIM ONLINE AT [WEBSITE].

## 1. CLASS MEMBER INFORMATION.

First Name*                                                                    Middle Initial

Last Name*                                                                    Suffix

Primary Address*

Apt/Floor/Suite

City*                                                    State*        Zip Code*

Current Email Address*

Current Phone Number                    Settlement Clam ID*

If your current address is outside the United States, please complete this claim form online at [WEBSITE] and select the checkbox on the Class Member Information page that says "Please check if this is a non-U.S. address".

Your Settlement Claim ID is printed on the notice you received in the mail. If you no longer have your notice, contact the Claims Administrator at [telephone number].

## 2. IDENTITY PROTECTION AND CREDIT MONITORING SERVICES.

Please review the notice and paragraph 2.1 of the Settlement Agreement for more information on the identity-theft protection called Identity Defense Complete being offered as part of the settlement.  This is being offered in addition to any other payments to be made under this Settlement.

**PLEASE PROVIDE THE INFORMATION LISTED BELOW:**

Check the box if you elect to receive two years of free identity-theft protection, called Identity Defense Complete which shall be provided in addition to any other identity-theft protection and/or credit monitoring received from King's Seafood Company, LLC.

☐    **Yes, I'd like to receive two years of free identity-theft protection as part of the settlement, including an additional two (2) years of monitoring and protection services from the expiration date of any monitoring and protection services I've already received through Defendant.**

## 3. PAYMENT ELIGIBILITY INFORMATION.

Please review the notice and paragraph 2.2 of the Settlement Agreement for more information on who is eligible for a payment and the nature of the expenses or losses that can be claimed.

Please provide as much information as you can to help us determine if you are entitled to a settlement payment or other benefit.

**PLEASE PROVIDE THE INFORMATION LISTED BELOW:**

Check the box for each category of expenses or lost time that you incurred as a result of the Data Security Incident. Please be sure to fill in the total amount you are claiming for each category and to attach documentation of the charges as described in bold type (if you are asked to provide account statements as part of proof required for any part of your claim, you may mark out any unrelated transactions if you wish). Please note that recovery is limited to $450 per person for ordinary losses, including lost time amounts limited to up to $60, and $3,000 for extraordinary losses.

You must provide a description of the charges or time sought to be reimbursed.

☐ **Documented ordinary  expenses and/or lost time incurred as a result of the Data Security Incident. This category is capped at $450 to include lost time amounts.**

☐ **Time reimbursement for time spent dealing with the Data Security Incident**
**Examples –**You spent an hour contacting your bank and/or implementing credit monitoring, and/or checking your statements as a result of the Data Security Incident. Recovery for this category is paid out at $20/hour, for up to 3 hours.

☐  1 Hour                 ☐  2 Hours                 ☐  3 Hours

| **Explanation of Time Spent** (Identify what you did by activity and why) | **Approx. Date(s) (if known)** | **Time Spent on Activity** |
|---|---|---|
| _____<br>_____<br>_____<br>_____ | | |

2

☐ **Documented Out of Pocket Expenses/reimbursement of fees paid for services or products purchased as a result of the Date Security Incident**

*You must provide supporting documentation.* The types of Out of Pocket Expenses and fees that will be reimbursed are:

(1) costs incurred associated with accessing or freezing/unfreezing credit reports with any credit reporting agency or other entity;

(2) other expenses incurred, namely, postage, copying, scanning, faxing, mileage and other travel-related charges, parking, notary charges, research charges, cell phone charges (only if charged by the minute), long distance phone charges, data charges (only if charged based on the amount of data used), bank fees, accountant fees, and attorneys' fees, all of which must be fairly traceable to the Data Security Incident and must not have been previously reimbursed by a third party; and

(3) fees for credit reports, credit monitoring, or other identity theft insurance product purchased between June 4, 2021 and [ENTER DATE FOR CLAIMS DEADLINE].

Total amount for this category:     $ ⬚⬚⬚⬚⬚⬚

| Expense Types | Approximate Amount of Expense and Date | Description of Expense or Money Paid and Supporting Documents (Identify what you are attaching, and why it's related to the Data Incident) |
|---|---|---|
| | $<br>Date:<br><br>$<br>Date: | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |

*If you are seeking reimbursement for out-of-pocket expenses, please attach a copy of a statement or receipt from the company that charged you, showing the amount of charges incurred. Documentation you create may be submitted but may not suffice.*

You may mark out any transactions that are not relevant to your claim before sending in the documentation.

☐ **Documented Extraordinary Losses – documented monetary loss arising from actual identity theft incurred as a result of the Data Security Incident. This category is capped at $3,000.**

Reimbursements in this category are for those whose suffered actual identity theft because of the Data Security Incident and reimbursement must be (1) for actual, documented, and unreimbursed losses; (2) fairly traceable to the Data Security Incident; (3) occurring between June 4, 2021 and [INSERT CLAIMS DEADLINE]; and (4) not already covered by any existing identity theft or other insurance**.**

Total amount for this category:     $ ⬚⬚⬚⬚⬚

3

| Approximate Amount of Loss and Date | Description of Losses and Supporting Documents (Identify what you are attaching, and why it is related to the Data Incident) |
|---|---|
| $<br><br>Date: | _____<br>_____<br>_____<br>_____<br>_____<br>_____<br>_____ |

*If you are seeking reimbursement for extraordinary losses, please attach a copy of a statement or other document that demonstrates the amount of the loss. Documentation you create may be submitted but may not suffice.*

You may mark out any transactions that are not relevant to your claim before sending in the documentation.

## 4. SIGN AND DATE YOUR CLAIM FORM.

I declare under penalty of perjury under the laws of the United States and the laws of my State of residence that the information supplied in this claim form by the undersigned is true and correct to the best of my recollection, and that this form was executed on the date set forth below. I understand that I may be asked by the Settlement Administrator to provide supplemental information before my claim will be considered complete and valid.

_____    _____    _____
**Signature**                                            **Print**                                                     **Date**

## 5. REMINDER CHECKLIST

1. Keep copies of the completed Claim Form and documentation for your own records.
2. If your address changes or you need to make a correction to the address on this claim form, please visit the settlement administration website at [WEBSITE] and complete the Update Contact Information form or send written notification of your new address. Make sure to include your Settlement Claim ID and your phone number in case we need to contact you in order to complete your request.
3. If you need to supplement your claim submission with additional documentation, please visit the settlement administration website at [WEBSITE] and provide these documents by completing the Secure Contact Form.
4. For more information, please visit the settlement administration website at [WEBSITE] or call the Settlement Administrator at [TELEPHONE#]. Please do not call the Court or the Clerk of the Court.

4

# EXHIBIT B

*Bowdle v. King's Seafood Company, LLC*, No. 8:21-cv-01784-CJC-JDE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**If your data was stored by King's Seafood as of June 2021, you may be eligible for benefits from a class action settlement.**

*Para una notificación en Español, visitar [WEB ADDRESS]*

**A federal court authorized this notice. This is not junk mail, an advertisement or a lawyer solicitation.**

- A settlement has been proposed in a class action against King's Seafood Company, LLC ("King's Seafood") arising out of a June 2021 cyberattack during which unauthorized third parties gained access, beginning on June 4, 2021, to personally identifiable information ("PII") stored by King's Seafood ("Data Security Incident"). The computer files accessed in the Data Security Incident may have contained names, Social Security numbers, payment card information, and driver's license numbers or government-issued identification numbers.

- Plaintiff Jonathan Bowdle filed a class action on behalf of himself and those similarly situated and claims that King's Seafood was responsible for the increased risk of identity theft stemming from the Data Security Incident and asserts claims for: (i) negligence; (ii) breach of implied contract; (iii) invasion of privacy; (iv) breach of confidence; (v) unjust enrichment; (vi) violation of the Nevada Deceptive Trade Practices Act; and (vii) violation of the Nevada Data Breach Law.

- If you received a notice from King's Seafood concerning the 2021 Data Security Incident you are part of the Settlement Class and may be eligible for benefits.

- The settlement provides reimbursement of up to **$450** for out-of-pocket expenses fairly traceable to the Data Security Incident, up to **$3,000** for documented unreimbursed extraordinary losses due to identity theft, compensation for up to three (3) hours for time spent dealing with the Data Security Incident at $20 per hour, and two (2) years of credit monitoring and identity theft protection.

- Your legal rights are affected regardless of whether you do or do not act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** Deadline: **[Insert]** | This is the only way to receive a payment. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** Deadline: **[Insert]** | Get no benefits. This is the only option that may allow you to sue King's Seafood over the claims being resolved by this settlement. |
| **OBJECT TO THE SETTLEMENT** Deadline: **[Insert]** | Write the Court with reasons why you do not agree with the settlement. |
| **GO TO THE FINAL APPROVAL HEARING** | You may ask the Court for permission for you or your attorney to speak about your objection at the Final Approval Hearing. |
| **DO NOTHING** | You will not get any compensation from the settlement and you will give up certain legal rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice. For complete details, view the Settlement Agreement at [WEBSITE] or call [TELEPHONE #].

- The Court in charge of this case still has to decide whether to grant final approval of the settlement. Payments will be made and settlement benefits distributed only after the Court grants final approval of the settlement and after any appeals are resolved in favor of the settlement.

**Questions? Call (NUMBER) or visit** www.[website].com

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ...................................................................................................**Page 3**
1.  Why was this Notice issued?
2.  What is this lawsuit about?
3.  What is a class action?
4.  Why is there a settlement?

**WHO IS IN THE SETTLEMENT?** .................................................................................**Pages 3 and 4**
5.  How do I know if I am included in the settlement?
6.  What if I am not sure whether I am included in the settlement?

**THE SETTLEMENT BENEFITS** .......................................................................................**Page 4**
7.  What does the settlement provide?
8.  What payments are available?

**HOW TO GET BENEFITS** ..................................................................................................**Page 5**
9.  How do I get benefits?
10. How will claims be decided?

**REMAINING IN THE SETTLEMENT** ...............................................................................**Page 5**
11. Do I need to do anything to remain in the settlement?
12. What am I giving up as part of the settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ....................................................**Page 6**
13. If I exclude myself, can I get a payment from this settlement?
14. If I do not exclude myself, can I sue King's Seafood for the same thing later?
15. How do I get out of the settlement?

**THE LAWYERS REPRESENTING YOU** ................................................................. **Page 6 and 7**
16. Do I have a lawyer in this case?
17. How will Settlement Class Counsel be paid?

**OBJECTING TO THE SETTLEMENT** ...............................................................**Pages 6 and 7**
18. How do I tell the Court that I do not like the settlement?
19. What is the difference between objecting and asking to be excluded?

**THE COURT'S FINAL APPROVAL HEARING** .................................................**Pages 7 and 8**
20. When and where will the Court decide whether to approve the settlement?
21. Do I have to attend the Final Approval Hearing?
22. May I speak at the Final Approval Hearing?

**IF YOU DO NOTHING** .......................................................................................................**Page 8**
23. What happens if I do nothing?

**GETTING MORE INFORMATION** .................................................................................**Page 8**
24. How do I get more information?

# BASIC INFORMATION

### 1.  Why was this Notice issued?

The Court authorized this notice because you have a right to know about the proposed settlement in this class action and about all of your options before the Court decides whether to give "final approval" to the settlement. This notice explains the legal rights and options that you may exercise before the Court decides whether to approve the settlement.

Judge Cormac J. Carney of the United States District Court for the Central District of California is overseeing this case.  The case is known as *Jonathan Bowdle v. King's Seafood Company, LLC,* No. 8:21-cv-01784-CJC-JDE (the "Lawsuit").  The person who sued is called the Plaintiff. King's Seafood is called the Defendant.

### 2.  What is this lawsuit about?

Plaintiff claims King's Seafood was responsible for the increased risk of identity theft stemming from the Data Security Incident and asserts claims including: (i) negligence; (ii) breach of implied contract; (iii) invasion of privacy; (iv) breach of confidence; (v) unjust enrichment; (vi) violation of the Nevada Deceptive Trade Practices Act; and (vii) violation of the Nevada Data Breach Law. The Lawsuit seeks, among other things, payment for persons who were injured by the Data Security Incident.

King's Seafood has denied and continues to deny all of the claims made in the Lawsuit, as well as all charges of wrongdoing or liability against it.

### 3.  What is a class action?

In a class action, one or more people called "Plaintiff(s)" or "Representative Plaintiff(s)" (in this case, Jonathan Bowdle) sue(s) on behalf of all people who have similar claims.  Together, all these people are called a "class" or "class members."  One court and one judge resolve the issues for all class members, except for those who exclude themselves from the class.

### 4.  Why is there a Settlement?

The Court did not decide in favor of Plaintiff or King's Seafood.  Instead, the Plaintiff negotiated a settlement with King's Seafood that allows both Plaintiff and King's Seafood to avoid the risks and costs of lengthy and uncertain litigation and the uncertainty of trial and appeals.  It also allows Settlement Class Members to obtain benefits without further delay. The Representative Plaintiff and his attorneys believe the settlement is best for all Settlement Class Members.  The settlement does not mean that King's Seafood did anything wrong.

# WHO IS IN THE SETTLEMENT?

### 5.  How do I know if I am included in the Settlement?

You are part of this settlement as a Class Member if King's Seafood sent you notice of the Data Security Incident announced by King's Seafood in or about August 2021.

Specifically excluded from the Class are: (i) King's Seafood and King's Seafood's parents, subsidiaries, affiliates, and any entity in which King's Seafood has a controlling interest; and (ii) all judges assigned to hear any aspect of this Litigation as well as their immediate family members.

**Questions? Call (NUMBER) or visit** www.[website].com

3

### 6.   What if I am not sure whether I am included in the settlement?

If you are not sure whether you are included in the settlement, or have any other questions related to the settlement, you may:

1.  Call (NUMBER)

2.  Email (EMAIL); or

3.  Write to:

(ADDRESS)

Please do not contact the Court with questions.

# THE SETTLEMENT BENEFITS

### 7.   What does the settlement provide?

There are two types of cash payments available: (1) ordinary expense reimbursement and compensation for lost time (up to a total of **$450**); and (2) extraordinary losses reimbursement (up to a total of **$3,000**). You may submit a claim for any of the above listed remedies. To claim each type of remedy, you must provide information and documentation with the Claim Form.  King's Seafood has agreed to pay up to $350,000 in the aggregate for these cash payments.  Therefore, if the total of all valid claims for cash payments exceeds $350,000, payments will be reduced *pro rata*.

In addition to the payments listed above, the settlement also provides all Settlement Class Members with access to Identity Defense Complete identity protection and credit monitoring services for a period of two (2) years upon the filing of a timely and valid Claim Form.  Settlement Class Members will be able to begin receiving Financial Shield services on the Effective Date of the settlement with the period to begin the services to continue for 90 days thereafter.

King's Seafood has also agreed, for a period of 36 months beginning in July 2021, that it has and will continue to undertake certain reasonable steps to enhance the security deployed to secure access to its data network.  These steps are delineated in the Settlement Agreement available at www.[website].com.   King's Seafood estimates the cost or value of these enhancements will exceed $500,000.

### 8.   What payments are available?

<u>Ordinary Out of Pocket Expenses and Lost Time Reimbursement</u>: Qualified Class Members are eligible to claim reimbursement of up to $450 per person for their documented out-of-pocket expenses resulting from the Data Security Incident and compensation for time spent dealing with the Data Security Incident.  The types of out of pocket expenses that will be reimbursed are:

- costs incurred associated with accessing or freezing/unfreezing credit reports with any credit reporting agency or other entity;

- other expenses incurred, namely, postage, copying, scanning, faxing, mileage and other travel-related charges, parking, notary charges, research charges, cell phone charges (only if charged by the minute), long distance phone charges, data charges (only if charged based on the amount of data used), bank fees, accountant fees, and attorneys' fees, all of which

must be fairly traceable to the Data Security Incident and must not have been previously reimbursed by a third party; and

- fees for credit reports, credit monitoring, or identity theft insurance product purchased between June 4, 2021 and [CLAIMS DEADLINE]; and

- Up to 3 hours of lost time at $20/hour for time spent dealing with the Data Security Incident.

Extraordinary Losses Reimbursement:  Qualified Settlement Class Members who suffered actual identity theft are eligible to claim reimbursement of up to $3,000 per person for their documented and unreimbursed loss if the loss (1) is fairly traceable to the Data Security Incident; (2) occurred between June 4, 2021 and [CLAIMS DEADLINE]; and (3) the loss is not already covered and the claimant made reasonable efforts to mitigate the loss.

# HOW TO GET BENEFITS

### 9.  How do I get benefits?

To receive a payment and identity protection and credit monitoring services from the settlement, you must complete a Claim Form.  You may download a copy of the Claim Form at www.[website].com, or you may request to receive one by mail by calling (NUMBER).  To complete the Claim Form, please read the instructions carefully, fill out the Claim Form, provide reasonable documentation (where applicable), and submit your Claim online or mail it postmarked no later than **(CLAIM DEADLINE)** to:

(ADDRESS)

### 10. How will claims be decided?

The Claims Administrator will initially decide whether the information provided on a Claim Form is complete and valid.  The Claims Administrator may request additional information from any claimant.  If the claimant does not timely provide the required information, the Claim will be considered invalid and will not be paid.  If the claim is rejected in whole or in part, for any other reason, then the Claims Administrator shall refer the claim to the Representative Plaintiff's and King's Seafood's counsel for a determination.

# REMAINING IN THE SETTLEMENT

### 11. Do I need to do anything to remain in the settlement?

You do not have to do anything to remain in the settlement, but if you want a payment, you must submit a Claim Form postmarked or submitted online by **[CLAIM DEADLINE].**

### 12. What am I giving up as part of the settlement?

By not timely opting-out of the Class, all of the Court's orders will apply to you, and you give King's Seafood a "Release."  A Release means you cannot sue or be part of any other lawsuit against King's Seafood about the claims or issues in this lawsuit (relating to the Data Security Incident), and you will be bound by the settlement.  The specific claims you are giving up against King's Seafood and related persons or entities are called "Released Claims."  The Released Claims

Questions? Call (NUMBER) or visit www.[website].com

5

are defined in Sections 1.23, 1.24 and 1.31 and described in Section VIII of the Settlement Agreement, which is available under the Important Documents page at www.[website].com.  The Settlement Agreement describes the Released Claims with specific and accurate legal descriptions, so read it carefully.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this settlement, but you want to keep the right to sue King's Seafood about issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself from – or is sometimes referred to as "opting out" of – the Settlement Class.

### 13. If I exclude myself, can I get a payment from this settlement?

No.  If you exclude yourself, you will not be entitled to any benefits of the settlement.  You will also not be bound by any judgment in this case.

### 14. If I do not exclude myself, can I sue King's Seafood for the same thing later?

No.  Unless you exclude yourself, you give up any right to sue King's Seafood for the Claims that this settlement resolves.  You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case.  If you exclude yourself, do not submit a Claim Form to ask for a payment.

### 15. How do I get out of the settlement?

To exclude yourself from the settlement, send a letter that says you want to be excluded from the settlement in *Jonathan Bowdle v. King's Seafood Company, LLC,* No. 8:21-cv-01784-CJC-JDE (C.D. Cal.) ("Exclusion Request").  Include your name, address, and signature.  You must mail your Exclusion Request postmarked by [**EXCLUSION DEADLINE**] to:

Bowdle v. King's Seafood Settlement
c/o NAME Claims Administrator
P.O. Box XXXX
XXXXX, XX  XXXXX-XXXX

# THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

Yes.  The Court appointed M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp. and Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP to represent you and other Settlement Class Members. These lawyers are called Settlement Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will Settlement Class Counsel be paid?

If the settlmnet is approved and becomes final, Settlement Class Counsel will will ask the Court to award combined attorneys' fees and costs in the amount of $192,500.  Settlement Class Counsel

will also request approval of a service award to the Representative Plaintiff in the amount of $1,750. If approved, these amounts, as well as the costs of notice and settlement administration, will be paid separately by King's Seafood and will not reduce the amount of total payments available to Settlement Class Members.

# OBJECTING TO THE SETTLEMENT

**18. How do I tell the Court that I do not like the settlement?**

If you are a Settlement Class member, you can object to the settlement if you do not like it or some part of it. You can give reasons why you think the Court should not approve the settlement. The Court will consider your views before making a decision. To object, you must file with the Court and mail or email copies to Class Counsel and King's Seafood's counsel a written notice stating that you object to the settlement. Your objection must include all of the following information: (i) your full name and address; (ii) the case name and docket number - *Jonathan Bowdle v. King's Seafood Company, LLC,* No. 8:21-cv-01784-CJC-JDE (C.D. Cal.); (iii) proof that you are a member of the Settlement Class (e.g., copy of your settlement notice, a copy of original notice of the Data Security Incident, or a statement explaining why you believe you are a Settlement Class member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection you believe applicable; (v) the identity of any and all counsel representing you in connection with the objection; (vi) a statement whether you and/or your counsel will appear at the Final Approval Hearing; and (vii) your signature or the signature of your duly authorized attorney or other duly authorized representative (if any) representing you in connection with the objection.

Your written notice of an objection, in the appropriate form, must be either (1) filed with the Court through the Court's ECF system by [objection deadline], with service on Settlement Class Counsel and King's Seafood's counsel made through the ECF system; or (2) filed with the Court by [objection deadline] by mailing it to Clerk of Court, United States District Court for the Central District of California, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, CA, 92701-4516 with copies mailed to Settlement Class Counsel and King's Seafood's counsel at:

| Class Counsel | Counsel for King's Seafood |
|---|---|
| M. Anderson Berry<br>**Clayeo C Arnold,**<br>**A Professional Law Corp.**<br>865 Howe Avenue<br>Sacramento, CA 95825<br>aberry@justice4you.com<br><br>Rachele R. Byrd<br>**Wolf Haldenstein Adler**<br>  **Freeman & Herz LLP**<br>750 B Street, Suite 1820<br>San Diego, CA 92101<br>byrd@whafh.com | Jon P. Kardassakis<br>**Lewis Brisbois Bisgaard & Smith LLP**<br>633 West 5th Street, Suite 4000<br>Los Angeles, CA 90071<br>Jon.Kardassakis@lewisbrisbois.com |

**19. What is the difference between objecting and asking to be excluded?**

Objecting is telling the Court that you do not like the settlement and why you do not think the Court should approve it.  You can object only if you do not exclude yourself from the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FINAL APPROVAL HEARING

**20. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Approval Hearing on DATE at [TIME] in the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Courtroom 9 B, Santa Ana, CA, 92701-4516. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. The Court will take into consideration any properly filed written objections and may also listen to people who have asked to speak at the hearing (see Question 18). The Court will also decide whether to approve fees and costs to Settlement Class Counsel, and the service award to the Representative Plaintiff.

**21. Do I have to attend the Final Approval Hearing?**

No.  Settlement Class Counsel will present the Settlement Agreement to the Court.  You or your own lawyer are welcome to attend at your own expense, but you are not required to do so. If you send an objection, you do not have to come to the Court to talk about it. As long as you filed your written objection on time with the Court and served it according to the instructions provided in Question 18, the Court will consider it.

**22. May I speak at the Final Approval Hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must file and serve an objection according to the instructions in Question 18, including all the information required.

# IF YOU DO NOTHING

**23. What happens if I do nothing?**

If you do nothing, you will get no monetary benefits from this settlement. Once the Court grants the settlement final approval and the judgment becomes final, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against King's Seafood about the legal issues in this case, ever again.

You must exclude yourself from the settlement if you want to retain the right to sue King's settlement for the claims resolved by this settlement.

# GETTING MORE INFORMATION

**24. How do I get more information?**

This notice only provides a summary of the proposed settlement.  You can find complete details about the settlement in the Settlement Agreement available at www.[website].com. You may also:

**Questions? Call (NUMBER) or visit** www.[website].com

8

1. Write to:

Bowdle v. King's Seafood Settlement
c/o NAME Claims Administrator
P.O. Box XXXX
XXXXX, XX XXXXX-XXXX

2. Visit the settlement website at www.[website].com

3. Call the toll-free number (NUMBER)

**PLEASE DO <u>NOT</u> CALL THE COURT OR THE JUDGE WITH QUESTIONS ABOUT THE SETTLEMENT OR CLAIMS PROCESS.**

**Questions? Call (NUMBER) or visit** www.[website].com

9

**EXHIBIT C**

1

2

3

4

5

6

7

8

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11

12   JONATHAN BOWDLE, individually          Case No. 8:21-cv-01784-CJC-JDE
     and on behalf of all others similarly
13   situated,                               **[PROPOSED] ORDER GRANTING
                                             PLAINTIFF'S MOTION FOR
14                                           PRELIMINARY APPROVAL OF
                 Plaintiff,                  CLASS ACTION SETTLEMENT**
15

16          v.

17   KING'S SEAFOOD COMPANY, LLC,

18               Defendant.

19

20

21

22

23

24

25

26

27

28

This matter is before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"). Plaintiff, individually and on behalf of the Class, and Defendant King's Seafood Company, LLC ("Defendant") have entered into a Settlement Agreement dated August __, 2022 that, if approved, would settle the above-captioned litigation. Having considered the Motion, the Settlement Agreement together with all exhibits and attachments thereto, the record in this matter, and the briefs and arguments of counsel, IT IS HEREBY ORDERED as follows:

1.     Unless otherwise defined herein, all terms that are capitalized herein shall have the same meanings ascribed to those terms in the Settlement Agreement.

2.     The Court has jurisdiction over this litigation, Settlement Class Representative, Defendant, Class Members, and any party to any agreement that is part of or related to the Settlement Agreement.

## **PRELIMINARY APPROVAL**

3.     The Court has reviewed the terms of the proposed Settlement Agreement, the exhibits and attachments thereto, Plaintiff's Motion, briefs and papers, and the declarations of Class Counsel and the Claims Administrator. Based on its review of these papers, the Court finds that the Settlement Agreement appears to be the result of serious, informed, non-collusive negotiations. The terms of the Settlement Agreement fall within the range of possible approval as fair, reasonable, and adequate.

4.     The Court therefore GRANTS preliminary approval of the Settlement Agreement and all of the terms and conditions contained therein.

## **PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS**

5.     Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for settlement purposes only, the Settlement Class defined in the Settlement Agreement as follows:

All individuals residing in the United States to whom Defendant or its authorized representative sent a notice concerning the 2021 Data

1

Security Incident announced by Defendant.  The Settlement Class
specifically excludes: (i) King's Seafood and King's Seafood's parents,
subsidiaries, affiliates, and any entity in which King's Seafood has a
controlling interest; and (ii) all judges assigned to hear any aspect of this
Litigation as well as their immediate family members.

The Settlement Class consists of approximately 2,875 individuals.

6. The Court preliminarily finds that the Settlement Class satisfies the
requirements of Federal Rule of Civil Procedure 23(a) for settlement purposes: (1)
the Settlement Class is so numerous that joinder of all members is impracticable; (2)
there are questions of law or fact common to the Settlement Class; (3) the Settlement
Class Representative's claims are typical of those of Settlement Class Members; and
(4) the Settlement Class Representative will fairly and adequately protect the interests
of the Settlement Class.

7. The Court preliminarily finds that the Settlement Class satisfies the
requirements of Federal Rule of Civil Procedure 23(b)(3) for settlement purposes:
(1) the questions of law or fact common to the Settlement Class predominate over
individual questions; and (2) class action litigation is superior to other available
methods for the fair and efficient adjudication of this controversy.

8. The Court hereby appoints Jonathan Bowdle as the Settlement Class
Representative.

9. The Court hereby appoints as Settlement Class Counsel Rachele R. Byrd
of Wolf Haldenstein Adler Freeman & Herz LLP and M. Anderson Berry of Clayeo
C. Arnold, A Professional Law Corp.

## NOTICE AND ADMINISTRATION

10. Pursuant to the Settlement Agreement, the Parties have designated
Atticus Administration LLC ("Atticus") as the Claims Administrator.  Atticus shall
perform all the duties of the Claims Administrator set forth in the Settlement
Agreement.

11. The Court finds that the Short and Long Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances. The Short and Long Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. The Court therefore approves the Short and Long Notice and Notice Program and directs the parties and the Claims Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and this Order.

12. The Claims Administrator shall commence the Notice Program within the time required by the Settlement Agreement.

13. The Court also approves the Claim Form.

**EXCLUSIONS AND OBJECTIONS**

14. Settlement Class Members who wish to opt-out and exclude themselves from the Settlement Class may do so by notifying the Claims Administrator in writing, postmarked no later than Date____, 2022 (90 calendar days after entry of this Order). To be valid, each request for exclusion must be individually signed and timely submitted to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest a Person's intent to opt-out of the Settlement Class. All Requests for Exclusion must be submitted individually in connection with a Settlement Class Member, *i.e.*, one request is required for every Settlement Class Member seeking exclusion.

15. All Settlement Class Members who do not opt out and exclude themselves shall be bound by the terms of the Settlement Agreement upon entry of the Final Approval Order and Judgment.

16.     Settlement Class Members who wish to object to the Settlement may do so by filing a written objection with the Court in accordance with the procedures outlined in the Long Notice, filed or postmarked no later than Date _____, 2022 (90 calendar days after entry of this Order).  Any Settlement Class Member wishing to comment on or object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date.  Such notice shall state: (i) the objector's full name and address; (ii) the case name and docket number - *Jonathan Bowdle v. King's Seafood Company, LLC*, Case No. 8:21-cv-01784-CJC-JDE (C.D. Cal.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Security Incident, or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.  To be timely, written notice of an objection in the appropriate form must be filed with the Court no later than the Objection Date, with service to the Proposed Settlement Class Counsel:   M. Anderson Berry, Clayeo C. Arnold, A Professional Law Corp., 865 Howe Avenue, Sacramento, CA 95825; and Rachele R. Byrd, Wolf Haldenstein Adler Freeman & Herz LLP, 750 B Street, Suite 1820, San Diego, CA 92101; and counsel for King's Seafood, Jon P. Kardassakis, Lewis Brisbois Bisgaard and Smith, 633 West 5th Street, Suite 4000, Los Angeles, California 90071. Alternatively, the objector or his or her counsel may file Objections with the Court electronically, through the Court's ECF system, with service on Proposed Settlement Class Counsel and King's Seafood's counsel made through the ECF system.  If filing and service on the above

counsel is properly made electronically, via ECF, service need not be made at the above addresses. For all timely filed objections, Proposed Settlement Class Counsel will file them with the Court as an exhibit to the Motion for Final Approval of the Settlement.

17.    Any Settlement Class Member who does not timely submit a written objection in accordance with these procedures and the procedures detailed in the notice provided to Settlement Class Members and Settlement Agreement shall be deemed to have waived any objection, shall not be permitted to object to the settlement, and shall be precluded from seeking any review of the Settlement Agreement and/or the Final Approval Order and Judgment by appeal or other means.

## FINAL APPROVAL HEARING

18.    The Court will hold a Final Fairness Hearing on Date _____, 202_ at [TIME] in Courtroom 9B, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California.

19.    At the Final Fairness Hearing, the Court will consider whether: (a) the Settlement is fair, reasonable, and adequate; (b) the Settlement Class should be finally certified for settlement purposes; (c) a final judgment should be entered; (d) Settlement Class Counsel's motion for attorneys' fees and costs should be granted; and (e) the service award sought for Representative Plaintiff should be granted.

20.    The Court reserves the right to continue the date of the Final Fairness Hearing without further notice to Settlement Class Members.

## DEADLINES, INJUNCTION & TERMINATION

| Event | Date |
|---|---|
| Defendant to provide Settlement Class Member data to Claims Administrator | 14 days after entry of this Order |
| Notice Program per Settlement Agreement commences | 30 days after entry of this Order |
| Class Counsel's Motion for Attorneys' Fees and Costs and Service Award | 14 days prior to the Objection Deadline |
| Opt-Out and Objection Deadlines | 90 days after entry of this Order |

| Motion for Final Approval | 28 days prior to the Final Fairness Hearing |
| Replies in Support of Motion for Final Approval and Motion for Attorneys' Fees and Costs and Service Award | 14 days prior to the Final Approval Hearing |
| Final Fairness Hearing | At the Court's convenience at least 125 days after entry of this Order |

21.     All proceedings and deadlines in this matter, except those necessary to implement this Order and the settlement, are hereby stayed and suspended until further order of the Court.

22.     All Class Members who do not validly opt out and exclude themselves are hereby enjoined from pursuing or prosecuting any of the Released Claims as set forth in the Settlement Agreement until further order of the Court.

23.     In the event that the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement: (a) the Settlement Agreement and this Order shall become void, shall have no further force or effect, and shall not be used in the Litigation or any other proceedings for any purpose other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination; (b) this matter will revert to the status that existed before execution of the Settlement Agreement; and (c) no term or draft of the Settlement Agreement or any part of the Settling Parties' settlement discussions, negotiations or documentation (including any briefs filed in support of preliminary or final approval of the settlement) shall (i) be admissible into evidence for any purpose in this Litigation or in any other action or proceeding other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination, (ii) be deemed an admission or concession by any Settling Party regarding the validity of any of the Released Claims or the propriety of certifying any class against Defendant, or (iii) be deemed an admission or concession by any Settling Party regarding the truth or falsity of any facts alleged in the Litigation or the availability or lack of availability of any defense to the Released Claims.

1

2       **IT IS SO ORDERED**.

3

4 Dated: _____     _____

HON. CORMAC J. CARNEY

5                                     UNITED STATES DISTRICT COURT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

# Individuals sent a notice in August 2021 from King's Seafood Company, LLC about a data security incident may be eligible for benefits from a class action settlement.

*<u>A federal court ordered this notice</u>. This is not a solicitation from a lawyer.*
*Si desea recibir esta notificación en español, llámenos al 1-800-XXX-XXXX.*

**WHAT CAN I GET?** The settlement provides two types of **payments** to people who submit a valid claim form: (1) reimbursement of up to **$450** per Settlement Class member in reimbursement for out-of-pocket expenses and lost time (up to 3 hours at **$20/hr**.) incurred as a result of the Data Security Incident; and

(2) reimbursement of up to **$3,000** in extraordinary losses incurred from identity theft fairly traceable to the Data Security Incident. The above amounts are subject to proration if the total of all approved claims exceeds $350,000.

A settlement has been reached in a class action against King's Seafood Company, LLC ("King's Seafood") in a lawsuit filed against King's Seafood asserting claims relating to a cyberattack during which a hacker gained access, beginning on June 4, 2021, to personally identifiable information ("PII") stored by King's Seafood ("Data Security Incident"). King's Seafood announced the Data Security Incident in August of 2021. King's Seafood denies all of the claims and says it did not do anything wrong.

**WHO IS INCLUDED? You received this notice because King's Seafood's records show you are a member of the Class.** The Class includes all residents of the United States to whom King's Seafood sent notice concerning a Data Security Incident that took place on or around June 4, 2021.

In addition to the payments listed above, the settlement also provides all Settlement Class Members with access to Identity Defense Complete identity protection and credit monitoring services for a period of two (2) years. The commencement of protection and monitoring will begin on the Effective Date of the settlement and will remain available for commencement for 90 days thereafter.

**CLAIM FORM.** You must submit a Claim Form to receive a cash payment for (1) documented out-of-pocket expenses incurred as a result of the Data Security Incident, (2) payment for time spent dealing with the Data Security Incident, (3) documented extraordinary losses incurred as a result of identity theft fairly traceable to the Data Security incident, and/or (4) identity protection and credit monitoring services. You can submit a claim online or download a Claim Form at www.[website].com and mail it, or you may call 1-800-XXX-XXXX and ask that a Claim Form be mailed to you. The claim deadline is [**DATE**].

**OTHER OPTIONS**. If you do not want to be legally bound by the settlement, you must exclude yourself by [**DATE**]. If you stay in the settlement, you may object to it by [**DATE**]. A more detailed notice is available to explain how to exclude yourself or object. Please visit the website www.[website].com or call the toll-free number [**TELEPHONE #**] for a copy of the more detailed notice. On [**DATE**] at [**TIME**], the Court will hold a Final Fairness Hearing to determine whether to approve the settlement, Settlement Class Counsel's request for attorneys' fees and costs of up to $192,500, and an incentive award of $1,750 for the Settlement Class Representative. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to. This is only a summary. For more information, call or visit the website below.

**Questions? Call 1-800-XXX-XXXX or visit www.[website].com**

# EXHIBIT 2



Providing Exemplary Legal Services Since 1888

FIRM RESUME

Founded in 1888, Wolf Haldenstein Adler Freeman & Herz LLP is a full service law firm specializing in complex litigation in federal and state courts nationwide. The firm's practice includes litigation, both hourly and contingent, in securities, antitrust, wage & hour, consumer fraud, false marketing, ERISA, and general and commercial matters, whistleblower, false claim, trust & estate, corporate investigation, and white collar matters, and FINRA arbitration. The Firm has a particular specialty in complex class action and other representative litigation – including investor, shareholder, antitrust, ERISA, consumer, employee, and biotechnology matters – under both federal and state law.

Wolf Haldenstein's total practice approach distinguishes it from other firms. Our longstanding tradition of a close attorney/client relationship ensures that each one of our clients receives prompt, individual attention and does not become lost in an institutional bureaucracy. Our team approach is at the very heart of Wolf Haldenstein's practice. All of our lawyers are readily available to all of our clients and to each other. The result of this approach is that we provide our clients with an efficient legal team having the broad perspective, expertise and experience required for any matter at hand. We are thus able to provide our clients with cost effective and thorough counsel focused on our clients' overall goals.

270 MADISON AVENUE
NEW YORK, NY 10016
Telephone: 212-545-4600
Telecopier: 212-686-0114
WWW.WHAFH.COM

SYMPHONY TOWERS
750 B STREET, SUITE 1820
SAN DIEGO, CA 92101
Telephone: 619-239-4599
Telecopier: 619-234-4599

111 West Jackson
SUITE 1700
CHICAGO, IL 60604
Telephone: 312-984-0000
Telecopier: 312-214-3110



## THE FIRM

Wolf Haldenstein has been recognized by state and federal courts throughout the country as being highly experienced in complex litigation, particularly with respect to securities, consumer, ERISA, FLSA and state overtime and expense deductions, and antitrust class actions and shareholder rights litigation.

Among its colleagues in the plaintiffs' bar, as well as among its adversaries in the defense bar, Wolf Haldenstein is known for the high ability of its attorneys, and the exceptionally high quality of its written and oral advocacy.

The nature of the Firm's activities in both individual and representative litigation is extremely broad.  In addition to a large case load of securities fraud and other investor class actions, Wolf Haldenstein has represented classes of corn and rice farmers in connection with the devaluation of their crops; canned tuna consumers for tuna companies' violations of antitrust laws; merchants compelled to accept certain types of debit cards; insurance policyholders for insurance companies' deceptive sales practices; victims of unlawful strip searches under the civil rights laws; and various cases involving violations of Internet users' on-line privacy rights.

The Firm's experience in class action securities litigation, in particular public shareholder rights under state law and securities fraud claims arising under the federal securities laws and regulations is particularly extensive.  The Firm was one of the lead or other primary counsel in securities class action cases that have recouped billions of dollars on behalf of investor classes, in stockholder rights class actions that have resulted in billions of dollars in increased merger consideration to shareholder classes, and in derivative litigation that has recovered billions of dollars for corporations.

Its pioneering efforts in difficult or unusual areas of securities or investor protection laws include: groundbreaking claims that have been successfully brought under the Investment Company Act of 1940 regarding fiduciary responsibilities of investment companies and their advisors toward their shareholders; claims under ERISA involving fiduciary duties of ERISA trustees who are also insiders in possession of adverse information regarding their fund's primary stockholdings; the fiduciary duties of the directors of Delaware corporations in connection with change of control transactions; the early application of the fraud-on-the-market theory to claims against public accounting firms in connection with their audits of publicly traded corporations; and the application of federal securities class certification standards to state law claims often thought to be beyond the reach of class action treatment.



## Judicial Commendations

Wolf Haldenstein has repeatedly received favorable judicial recognition. The following representative judicial comments over the past decade indicate the high regard in which the Firm is held:

- *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012 (Sup. Ct. N.Y. Co.) – On May 2, 2013, Justice O. Peter Sherwood praised the Firm in its role as chair of the committee of co-lead counsel as follows: "It is apparent to me, having presided over this case, that class counsel has performed in an excellent manner, and you have represented your clients quite well. You should be complimented for that." In awarding attorneys' fees, the Court stated that the fee was "intended to reward class counsel handsomely for the very good result achieved for the Class, assumption of the high risk of Plaintiffs prevailing and the efficiency of effort that resulted in the settlement of the case at an early stage without protracted motion practice." May 17, 2013 slip. op. at 5 (citations omitted).

- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) – On April 9, 2013, Justice Richard B. Lowe III praised the Firm's efforts as follows: "[W]hen you have challenging cases, the one thing you like to ask for is that the legal representation on both sides rise to that level. Because when you have lawyers who are professionals, who are confident, who are experienced, each of you know that each side has a job to do [. . . .] I want to tell you that I am very satisfied with your performance and with your, quite frankly, tenacity on both sides. And it took six years, but look at the history of the litigation. There were two appeals all of the way to the Court of Appeals [. . . .] And then look at the results. I mean, there are dissents in the Court of Appeals, so that shows you the complexity of the issues that were presented in this litigation [. . . .] [I]t shows you effort that went into this and the professionalism that was exhibited [. . . .] So let me just again express my appreciation to both sides."

- *K.J. Egleston L.P. v. Heartland Industrial Partners, et al.*, 2:06-13555 (E.D. Mich.) – where the Firm was Lead Counsel, Judge Rosen, at the June 7, 2010 final approval hearing, praised the Firm for doing "an outstanding job of representing [its] clients," and further commented that "the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition they enjoy."



- *Klein, et al. v. Ryan Beck Holdings, Inc., et al.*, 06-cv-3460 (DAB) (S.D.N.Y. 2010) – where the Firm was Lead Counsel, Judge Deborah A. Batts described the Firm's successful establishment of a settlement fund as follows: "[a] miracle that there is a settlement fund at all."  Judge Batts continued: "As I said earlier, there is no question that the litigation is complex and of a large and, if you will, *pioneering magnitude ...*" (Emphasis added).

- *Parker Friedland v. Iridium World Communications, Ltd.*, 99-1002 (D.D.C.) – where the Firm was co-lead counsel, Judge Laughrey said (on October 16, 2008), "[a]ll of the attorneys in this case have done an outstanding job, and I really appreciate the quality of work that we had in our chambers as a result of this case."

- *In re Dynamic Random Access Memory Antitrust Litigation*, MDL-02-1486 (N.D. Cal.) – where the Firm was co-lead counsel, Judge Hamilton said (on August 15, 2007), "I think I can conclude on the basis with my five years with you all, watching this litigation progress and seeing it wind to a conclusion, that the results are exceptional.  The percentages, as you have outlined them, do put this [case] in one of the upper categories of results of this kind of [antitrust] class action.  I am aware of the complexity . . . I thought that you all did an exceptionally good job of bringing to me only those matters that really required the Court's attention.  You did an exceptionally good job at organizing and managing the case, assisting me in management of the case.  There was excellent coordination between all the various different plaintiffs' counsel with your group and the other groups that are part of this litigation. . . . So my conclusion is the case was well litigated by both sides, well managed as well by both sides."

- *In re Comdisco Sec. Litigation*, 01 C 2110 (N.D. Ill. July 14, 2005) – Judge Milton Shadur observed: "It has to be said . . . that the efforts that have been extended [by Wolf Haldenstein] on behalf of the plaintiff class in the face of these obstacles have been exemplary.  And in my view [Wolf Haldenstein] reflected the kind of professionalism that the critics of class actions . . . are never willing to recognize. . . . I really cannot speak too highly of the services rendered by class counsel in an extraordinary difficult situation."

- *Good Morning to You Productions Corp. v. Warner/Chappell Music, Inc.*, No. CV 13-04460-GHK (MRWx) (C.D. Cal., Aug. 16, 2016) – Judge George H. King



stated: "Not all, or perhaps even most, plaintiffs' class counsel could have litigated this case as successfully as did class counsel against such a fierce and exceptionally accomplished opponent."

- *Bokelman et al. v. FCH Enterprises, Inc.*, (Case No. 1:18-cv-209, D. Haw., May 3, 2019): Judge Robert J. Bryan said, "I've been impressed by the quality of the work you've done throughout here, and that is reflected, I think, in the fact that no one has objected to the settlement."

## Recent Noteworthy Results

Wolf Haldenstein's performance in representative litigation has repeatedly resulted in favorable results for its clients. The Firm has helped recover **_billions of_ _dollars_** on behalf of its clients in the cases listed below. Recent examples include the following:

- On May 13, 2019, in *Apple Inc. v. Pepper*, No. 17-204, the Supreme Court affirmed a decision by the Ninth Circuit Court of Appeals holding that iPhone purchasers have standing to sue Apple for monopolizing the market for iPhone apps in this longstanding antitrust class action. Wolf Haldenstein has been Lead Counsel for the plaintiffs since 2007. The case was commenced in federal district court in Oakland. The Supreme Court's decision clears the way for the plaintiffs to proceed on the merits of their claim.

- On June 11, 2018, the United States Supreme Court issued a highly anticipated decision in *China Agritech, Inc. v. Michael H. Resh, et al.* Wolf Haldenstein represented the plaintiffs/respondents, having commenced the action on behalf of aggrieved shareholders of *China Agritech* after two prior cases had failed at the class certification stage.

- *In re Genetically Modified Rice Litigation*, MDL 1811 (E.D. Mo.) - Wolf Haldenstein represented U.S. rice farmers in this landmark action against Bayer A.G. and its global affiliates, achieving a global recovery of $750 million. The case arose from the contamination of the nation's long grain rice crop by Bayer's experimental and unapproved genetically modified Liberty Link rice.

- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) - a class action brought on behalf of over 27,500 current and former tenants of New York City's iconic Stuyvesant Town and Peter Cooper Village housing complexes. On April 9, 2013, Justice Richard B. Lowe III of the New York Supreme Court finally



approved settlement of the action, which totals over $173 million, sets aside $68.75 million in damages, re-regulates the apartments at issue, and sets preferential rents for the units that will save tenants significant monies in the future. The settlement also enables the tenants to retain an estimated $105 million in rent savings they enjoyed between 2009 and 2012. **The settlement is by many magnitudes the largest tenant settlement in United States history.**

- *In re Empire State Realty Trust, Inc. Investor Litig.*, Index No. 650607/2012 – The firm served as Chair of the Executive Committee of Co-Lead Counsel for the Plaintiffs in a class action settlement finally approved on May 2, 2013 that provides for the establishment of a $55 million settlement fund for investors, in addition to substantial tax deferral benefits estimated to be in excess of $100 million.

- *American International Group Consolidated Derivative Litigation*, Civil Action No. 769-VCS (Del. Ch.) The Firm acted as co-lead counsel and the settlement addressed claims alleging that the D&O Defendants breached their fiduciary duties to the Company and otherwise committed wrongdoing to the detriment of AIG in connection with various allegedly fraudulent schemes during the 1999-2005 time period.

- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, Master File No. 09 MD 2058 (S.D.N.Y.) (firm was co-lead counsel in parallel derivative action pending in Delaware (*In Re Bank of America Stockholder Derivative Litigation*, C.A. No. 4307-CS (Del. Ch.)) (increase of settlement cash recovery from $20 million to $62.5 million).

- *The Investment Committee of the Manhattan and Bronx Service Transit Operating Authority Pension Plan v. JPMorgan Chase Bank*, N.A., 1:09-cv-04408-SAS (S.D.N.Y.) (class recovered $150 million).

- *In re Tremont Sec. Law, State Law and Insurance Litig.*, No. 08-civ-11117 (TPG) (SDNY) (class recovered $100 million). The firm was court-appointed co-lead counsel in the Insurance Action, 08 Civ. 557, and represented a class of persons who purchased or otherwise acquired Variable Universal Life ("VUL") insurance policies or Deferred Variable Annuity ("DVA") policies issued by Tremont International Insurance Limited or Argus International Life Bermuda Limited from May 10, 1994 - December 11, 2008 to the extent the investment



accounts of those policies were exposed to the massive Ponzi scheme orchestrated by Bernard L. Madoff through one or more Rye funds.

- *In re Initial Public Offering Securities Litigation*, 21 MC 92 (SAS) (S.D.N.Y.) (class recovered $586 million). Wolf Haldenstein served as Co-Lead Counsel of one of the largest securities fraud cases in history. Despite the United States Court of Appeals for the Second Circuit's decision to vacate the district court's class certification decision, on remand, counsel for plaintiffs were able to press on to a settlement on April 1, 2009, ultimately recovering in excess of a half-billion dollars.



## FIRM PRACTICE AREAS

### CLASS ACTION LITIGATION

Wolf Haldenstein is a leader in class and derivative action litigation and is currently or has been the court-appointed lead counsel, co-lead counsel, or executive committee member in some of the largest and most significant class action and derivative action lawsuits in the United States. For example, the class action *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009) was recently described by a sitting member of the U.S. House of Representatives as the greatest legal victory for tenants in her lifetime. In *Roberts*, the Firm obtained a victory in the New York Court of Appeals requiring the reregulation of thousands of apartment units in the Stuyvesant Town complex in Manhattan, New York. Many of the firm's other successful results are summarized within.

### PRIVATE ACTIONS FOR INSTITUTIONAL INVESTORS

In addition to its vast class action practice, the Firm also regularly represents institutional clients such as public funds, investment funds, limited partnerships, and qualified institutional buyers in private actions. The Firm has represented institutional clients in non-class federal and state actions concerning a variety of matters, including private placements, disputes with investment advisors, and disputes with corporate management.

The Firm has also acted as special counsel to investors' committees in efforts to assert and advance the investors' interests without resorting to litigation. For example, the Firm served as Counsel to the Courtyard by Marriott Limited Partners Committee for several years in its dealings with Host Marriott Corporation, and as Special Counsel to the Windsor Park Properties 7 and 8 limited partners to insure the fairness of their liquidation transactions.

### ANTITRUST LITIGATION

Wolf Haldenstein is a leader in antitrust and competition litigation. The Firm actively seeks to enforce the federal and state antitrust laws to protect and strengthen the rights and claims of businesses, organizations, Taft-Hartley funds, and consumers throughout the United States. To that end, Wolf Haldenstein commences large, often complex, antitrust and trade regulation class actions and other cases that target some of the most powerful and well-funded corporate interests in the world. Many of these interests exert strong influence over enforcement policy that is in the hands of elected officials, so that private enforcement provides the only true assurance that unfair and



anticompetitive conduct will be duly scrutinized for compliance with the law. These cases frequently bring to light concealed, unlawful behavior such as price fixing, monopolization, market allocation, monopoly leveraging, essential facilities, tying arrangements, vertical restraints, exclusive dealing, and refusals to deal. Wolf Haldenstein's Antitrust Practice Group has successfully prosecuted numerous antitrust cases and aggressively advocates remedies and restitution for businesses and investors wronged by violations of the antitrust laws. For example, in *In re DRAM Antitrust Litigation*, No. 02-cv-1486 (PJH) (N.D. Cal.) the firm successfully prosecuted an antitrust case resulting in a $315 million recovery. Many of the firm's successful results are summarized within.

Wolf Haldenstein attorneys currently serve as lead counsel, co-lead counsel, or as executive committee members in some of the largest and most significant antitrust class action lawsuits. The firm was most recently appointed lead counsel in the Salmon Antitrust Indirect Litigation pending in the U.S. District Court for the Southern District of Florida.

### OVERTIME AND COMPENSATION CLASS ACTIONS

Wolf Haldenstein is a leader class action litigation on behalf of employees who have not been paid overtime or other compensation they are entitled to receive, or have had improper deductions taken from their compensation. These claims under the federal Fair Labor Standards Act and state labor laws allege improper failure to pay overtime and other wages, and improper deductions from compensation for various company expenses. Wolf Haldenstein has served as lead or co-lead counsel, or other similar lead role, in some of the most significant overtime class actions pending in the United States, and has recovered hundreds of millions of dollars in recovered wages for its clients. For example, in *LaVoice v. Citigroup Global Markets, Inc.*, Case No. C 07-801 (CW) (N.D. Cal.)) a $108 million settlement was secured for the class. Many of the firm's other successful wage and hour results are summarized within.

### SUBSTANTIAL RECOVERIES IN CLASS ACTION AND DERIVATIVE CASES IN WHICH WOLF HALDENSTEIN WAS LEAD COUNSEL OR HAD ANOTHER SIGNIFICANT ROLE

- *In re Beacon Associates Litigation*, Master File No. 09 Civ. 0777 (LBS) (S.D.N.Y.) (**$219 million** settlement in this and related action).

- *Roberts v. Tishman Speyer*, No. 100956/2007 (Sup. Ct. N.Y. Cty.) (**$173 Million** settlement).



- *In re Mutual Fund Investment Litigation,* MDL No. 1586 (D. Md.) (derivative counsel in consolidated cases against numerous mutual fund companies involved in market timing resulting in class/derivative settlements totaling more than **$300 million**).

- *Inland Western Securities Litigation,* Case No. 07 C 6174 (N.D. Ill.) (settlement value of shares valued between **$61.5 million** and **$90 million**).

- *In re Direxion Shares ETF Trust,* No. 09-Civ-8011 (KBF) (S.D.N.Y.) (class recovered **$8 million**).

- *In re BankAmerica Corp. Securities Litigation,* MDL Docket No. 1264 (JFN) (E.D. Mo.) (class recovered **$490 million**).

- *In re Dynamic Random Access Memory Antitrust Litigation,* (MD-02 1486 (N.D. Cal.) (class recovered **$325 million**).

- *In re MicroStrategy, Inc. Securities Litigation,* Civ. No. 00-473-A (E.D. Va.) (class recovered **$160 million** in cash and securities).

- *Kurzweil v. Philip Morris Cos.,* 94 Civ 2373, 94 Civ 2546 (S.D.N.Y.) (securities fraud) (class recovered **$116.5 million** in cash).

- *In re Starlink Corn Products Liability Litigation,* (N.D. Ill.) (class recovered **$110 million**).

- *In Computer Associates 2002 Class Action Sec. Litigation,* 2:02-CV-1226 (E.D.N.Y.) (**$130 million** settlement in this and two related actions).

- *In re Sepracor Inc. Securities Litigation,* Civ. No. 02-12338 (MEL) (D. Mass.) (classes recovered **$52.5 million**).

- *In re Transkaryotic Therapies, Inc., Securities Litigation,* C.A. No. 03-10165-RWZ (D. Mass) (class recovered **$50 million**).

- *In re Iridium Securities Litigation,* C.A. No. 99-1002 (D.D.C.) (class recovered **$43 million**).



- *In re J.P. Morgan Chase Securities Litigation,* MDL No. 1783 (N.D. Ill.) (settlement providing for adoption of corporate governance principles relating to potential corporate transactions requiring shareholder approval).

- *LaVoice v. Citigroup Global Markets, Inc.,* Case No. C 07-801 (CW) (N.D. Cal.)) (**$108 million** settlement).

- *Steinberg v. Morgan Stanley & Co., Inc.,* Case No. 06-cv-2628 (BEN) (S.D. Cal.) (**$50 million** settlement).

- *Poole v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* Case No. CV-06-1657 (D. Or.) (**$43.5 million** settlement).

- *In re Wachovia Securities, LLC Wage and Hour Litigation,* MDL No. 07-1807 DOC (C.D. Cal.) (**$39 million** settlement).

- *In re Wachovia Securities, LLC Wage and Hour Litigation (Prudential),* MDL No. 07-1807 DOC (C.D. Cal.) (**$11 million** settlement).

- *Basile v. A.G. Edwards, Inc.,* 08-CV-00338-JAH-RBB (S.D. Cal.) (**$12 million** settlement).

- *Miguel Garcia, et al. v. Lowe's Home Center, Inc. et al.* – Case No. GIC 841120 (Barton) (Cal. Sup. Ct, San Diego) (co-lead, **$1.65 million** settlement w/ average class member recovery of $5,500, attorney fees and cost awarded separately).

- *Neil Weinstein, et al. v. MetLife, Inc., et al.* – Case No. 3:06-cv-04444-SI (N.D.Cal) (co-lead, **$7.4 million** settlement).

- *Creighton v. Oppenheimer,* Index No. 1:06 - cv - 04607 - BSJ - DCF (S.D.N.Y.) (**$2.3 million** settlement).

- *Klein v. Ryan Beck,* 06-CV-3460 (DAB)(S.D.N.Y.) (**$1.3 million** settlement).

- *In re American Pharmaceutical Partners, Inc. Shareholder Litigation,* Consolidated C.A. No. 1823-N (Del. Ch. Ct.) (**$14.3 million** settlement).

- *Egleston v. Collins and Aikman Corp.,* 06-cv-13555 (E.D. Mich.) (class recovered **$12 million**).



- *In re Merrill Lynch & Co., Inc. Global Technology Fund Securities Litigation,* 02 CV 7854 (JFK) (SDNY); and *In re Merrill Lynch & Co., Inc. Focus Twenty Fund Securities Litigation*, 02 CV 10221 (JFK) (SDNY) (class recovered **$39 million** in combined cases).

- *In re CNL Hotels & Resorts, Inc. Securities Litigation,* No. 6:04-cv-1231 (Orl-31) (class recovered **$35 million**, and lawsuit also instrumental in **$225 million** benefit to corporation).

- *In re Cablevision Systems Corp. Shareholder Derivative Litigation*, Master File No. 06-CV-4130-DGT-AKT (**$34.4 million** recovery).

- *In re Monster Worldwide, Inc. Stock Option Derivative Litigation,* Master File No. 06cv4622 (S.D.N.Y.) (**$32 million** recovery and corporate governance reforms).

- *Berger v. Compaq Computer Corp.,* Docket No. 98-1148 (S.D. Tex.) (class recovered **$29 million**).

- *In re Arakis Energy Corporation Securities Litigation,* 95 CV 3431 (E.D.N.Y.) (class recovered **$24 million**).

- *In re E.W. Blanche Holdings, Inc. Securities Litigation*, Civ. No. 01-258 (D. Minn.) (class recovered **$20 million**).

- *In re Globalstar Securities Litigation,* Case No. 01-CV-1748 (SHS) (S.D.N.Y.) (class recovered **$20 million**).

- *In re Luxottica Group S.p.A. Securities Litigation,* No. CV 01-3285 (E.D.N.Y) (class recovered **$18.25 million**).

- *In re Musicmaker.com Securities Litigation,* CV-00-2018 (C.D. Cal.) (class recovered **$13.75 million**).

- *In re Comdisco Securities Litigation,* No. 01 C 2110 (MIS) (N.D. Ill.) (class recovered **$13.75 million**).

- *In re Acclaim Entertainment, Inc., Securities Litigation,* C.A. No. 03-CV-1270 (E.D.N.Y.) (class recovered **$13.65 million**).



- *In re Concord EFS, Inc. Securities Litigation*, No. 02-2097 (MA) (W.D. Tenn) (class recovered **$13.25 million**).

- *In re Bausch & Lomb, Inc. Securities Litigation,* 01 Civ. 6190 (CJS) (W.D.N.Y.) (class recovered **$12.5 million**).

- *In re Allaire Corp. Securities Litigation,* 00-11972 (D. Mass.) (class recovered **$12 million**).

- *Bamboo Partners LLC v. Robert Mondavi Corp.,* No. 26-27170 (Cal. Sup. Ct.) (class recovered **$10.8 million**).

- *Curative Health Services Securities Litigation,* 99-2074 (E.D.N.Y.) (class recovered **$10.5 million**).

- *City Partnership Co. v. Jones Intercable*, 99 WM-1051 (D. Colo.) (class recovered **$10.5 million**).

- *In re Aquila, Inc.,* (ERISA Litigation), 04-865 (W.D. Mo.) (**$10.5 million** recovery for the class).

- *In re Tenfold Corporation Securities Litigation,* 2:00-CV-652 (D. Utah) (class recovered **$5.9 million**).

- *In re Industrial Gas Antitrust Litigation*, 80 C 3479 and related cases (N.D. Ill.) (class recovered **$50 million**).

- *In re Chor-Alkalai and Caustic Soda Antitrust Litigation*, 86-5428 and related cases (E.D. Pa.) (class recovered **$55 million**).

- *In re Infant Formula Antitrust Litigation,* MDL No. 878 (N.D. Fla.) (class recovered **$126 million**).

- *In re Brand Name Prescription Drugs Antitrust Litigation,* No. 1:94-cv-00897, M.D.L. 997 (N.D. Ill.) (class recovered **$715 million**).

- *Landon v. Freel,* M.D.L. No. 592 (S.D. Tex.) (class recovered **$12 million**).

- *Holloway v. Peat, Marwick, Mitchell & Co.,* No. 84 C 814 EU (N.D. Okla.) (class recovered **$38 million**).



- *In re The Chubb Corp.* Drought Insurance Litigation, C-1-88-644 (S.D. Ohio) (class recovered **$100 million**).

- *Wong v. Megafoods,* Civ-94-1702 (D. Ariz.) (securities fraud) (class recovered **$12.25 million**).

- *In re Del Val Financial Corp. Securities Litigation,* 92 Civ 4854 (S.D.N.Y.) (class recovered **$11.5 million**).

- *In re Home Shopping Network Shareholders Litigation,* Consolidated Civil Action No. 12868, (Del. Ch. 1995) (class recovered **$13 million**).

- *In re Paine Webber Limited Partnerships Litigation,* 94 Civ 8547 (S.D.N.Y.) (class recovered **$200 million**).

- *In re Bristol-Meyers Squibb Co. Securities Litigation,* 92 Civ 4007 (S.D.N.Y.) (class recovered **$19 million**).

- *In re Spectrum Information Technologies Securities Litigation,* CV 93-2245 (E.D.N.Y.) (class recovered **$13 million**).

- *In re Chase Manhattan Securities Litigation,* 90 Civ. 6092 (LJF) (S.D.N.Y.) (class recovered **$17.5 million**).

- *Prostic v. Xerox Corp.,* No. B-90-113 (EBB) (D. Conn.) (class recovered **$9 million**).

- *Steiner v. Hercules,* Civil Action No. 90-442-RRM (D. Del.) (class recovered **$18 million**).

- *In re Ambase Securities Litigation,* 90 Civ 2011 (S.D.N.Y.) (class recovered **$14.6 million**).

- *In re Southmark Securities Litigation,* CA No. 3-89-1402-D (N.D. Tex.) (class recovered **$70 million**).

- *Steiner v. Ideal Basic Industries, Inc.,* No. 86-M 456 (D. Colo. 1989) (securities fraud) (class recovered **$18 million**).

- *Tucson Electric Power Derivative Litigation,* 2:89 Civ. 01274 TUC. ACM (corporation recovered **$30 million**).



- *Alleco Stockholders Litigation,* (Md. Cir. Ct. Pr. Georges County) (class recovered **$16 million**).

- *In re Revlon Group, Inc. Shareholders Litigation*, No. 8362 (Del. Ch.) (class recovered **$30 million**).

- *In re Taft Broadcasting Company Shareholders Litigation,* No. 8897 (Del. Ch.) (class recovered **$20 million**).

- *In re Southland Corp. Securities Litigation,* No. 87-8834-K (N.D.Tex.) (class recovered **$20 million**).

- *In re Crocker Bank Securities Litigation*, CA No. 7405 (Del. Ch.) (class recovered **$30 million**).

- *In re Warner Communications Securities Litigation,* No. 82 Civ. 8288 (JFK) (S.D.N.Y.) (class recovered **$17.5 million**).

- *Joseph v. Shell Oil,* CA No. 7450 (Del. Ch.) (securities fraud) (class recovered **$200 million**).

- *In re Flight Transportation Corp. Securities Litigation,* Master Docket No. 4-82-874, MDL No. 517 (D. Minn.) (recovery of over **$50 million**).

- *In re Whittaker Corporation Securities Litigation,* CA000817 (Cal. Super. Ct., Los Angeles County) (class recovered **$18 million**).

- *Naevus International, Inc. v. AT&T Corp.,* C.A. No. 602191/99 (N.Y. Sup. Ct.) (consumer fraud) (class recovered **$40 million**).

- *Sewell v. Sprint PCS Limited Partnership*, C.A. No. 97-188027/CC 3879 (Cir. Ct. for Baltimore City) (consumer fraud) (class recovered **$45.2 million**).

- *In re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation,* 2:08-cv-285 (D.N.J.) (class recovered **$41.5 million**).

- *Egleston v. Verizon*, No. 104784/2011 (N.Y. Sup. Ct.) – Wolf Haldenstein represented a class of New York Verizon Centrex customers in an action against Verizon stemming from overbilling of certain charges. The Firm secured a settlement with a total value to the Class of over **$5 million**, which



provided, among other things, each class member with full refunds of certain disputed charges, plus interest.

- *Zelouf Int'l Corp. v. Nahal Zelouf*, Index No. 653652/2014 (Sup. Ct. N.Y. Co. 2015). In an important trial decision following an appraisal proceeding triggered by the freeze-out merger of a closely-held corporation, which also included shareholder derivative claims, Justice Kornreich of the New York Supreme Court refused to apply a discount for lack of marketability to the minority interest in the former corporation and found that the insiders stole more than $14 million dollars; the minority shareholder recovered over **$9 million**.

- *Zelouf Int'l Corp. v. Zelouf*, 45 Misc.3d 1205(A) (Sup. Ct. N.Y. Co., 2014). The Court rejected application of a discount for lack of marketability and awarded a **$10,031,438.28** judgment following an eleven day bench trial in the Commercial Division of the Supreme Court of the State of New York (New York County) on the value of a minority interest in a closely held corporation.

- *Thompson et al. v. Bethpage Federal Credit Union et al.*, No. 2:17-cv-00921-GRB (E.D.N.Y.) (**$3.6 million** settlement)



REPRESENTATIVE REPORTED OPINIONS SINCE 1990 IN WHICH WOLF HALDENSTEIN WAS LEAD COUNSEL OR HAD ANOTHER SIGNIFICANT ROLE

FEDERAL APPELLATE AND DISTRICT COURT OPINIONS

- *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)

- *Hymes v. Bank of America*, 408 F. Supp. 3d 171 (E.D.N.Y. 2019)

- *In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308 (S.D. Cal. 2019)

- *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018)

- *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017)

- *DeFrees v. Kirkland*, 2012 U.S. Dist. LEXIS 52780 (C.D. Cal. Apr. 11, 2012).

- *In re Beacon Associates Litig.*, 282 F.R.D. 315 (S.D.N.Y. 2012).

- *Messner v. Northshore University HealthSystem*, 669 F.3d 802, No. 10-2514 (7th Cir. Jan. 13, 2012).

- *In re Text Message Antitrust Litigation*, 630 F.3d, 622 (7th Cir. 2010).

- *In re Apple & ATTM Antitrust Litig.*, 2010 U.S. Dist. LEXIS 98270 (N.D. Cal. July 8, 2010).

- *In re Beacon Associates Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010)

- *Freeland v. Iridium World Communications Ltd.*, 545 F. Supp. 2d 59 (D.D.C. 2008).

- *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288 (N.D. Cal. 2008).

- *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007).

- *In re JP Morgan Chase & Co. Securities Litigation*, No. 06 C 4674, 2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007).

- *Schoenbaum v. E.I. Dupont De Nemours and Co.*, 2007 WL 2768383 (E.D. Mo. Sept. 20, 2007).



- *Jeffries v. Pension Trust Fund,* 99 Civ. 4174 (LMM), 2007 U.S. Dist. LEXIS 61454 (S.D.N.Y. Aug. 20, 2007).

- *Klein v. Ryan Beck,* 06-Civ. 3460 (WCC), 2007 U.S. Dist. LEXIS 51465 (S.D.N.Y. July 13, 2007).

- *Cannon v. MBNA Corp.* No. 05-429 GMS, 2007 U.S. Dist. LEXIS 48901 (D. Del. 2007).

- *In re Aquila ERISA Litig.,* 237 F.R.D. 202 (W.D. Mo. 2006).

- *Smith v.* Aon Corp., 238 F.R.D. 609 (N.D. Ill. 2006).

- *In re Sepracor Inc. Securities Litigation,* 233 F.R.D. 52 (D. Mass. 2005).

- *In re Transkaryotic Therapies, Inc. Securities Litigation,* No. 03-10165, 2005 U.S. Dist. LEXIS 29656 (D. Mass. Nov. 28, 2005).

- *In re Luxottica Group, S.p.A. Securities Litigation,* 2005 U.S. Dist. LEXIS 9071 (E.D.N.Y. May 12, 2005).

- *In re CNL Hotels & Resorts, Inc. Securities Litigation,* 2005 U.S. Dist. LEXIS 38876, No. 6:04-cv-1231-Orl-31KRS (M.D. Fla. May 9, 2005).

- *Johnson v. Aegon USA, Inc.,* 355 F. Supp. 2d 1337 (N.D. Ga. 2004).

- *Freeland v. Iridium World Communications, Ltd.,* 99-1002, 2004 U.S. Dist. LEXIS 33018 (D.D.C. Aug. 31, 2004).

- *In re Acclaim Entertainment, Inc. Securities Litigation,* 03-CV-1270 (E.D.N.Y. June 22, 2004).

- *In re Sepracor Inc. Securities Litigation,* 308 F. Supp. 2d 20 (D. Mass. 2004).

- *In re Concord EFS, Inc. Securities Litigation,* No. 02-2697 (W.D. Tenn. Jan. 7, 2004).

- *In re Pharmatrak, Inc. Privacy Litig.,* 2003 U.S. App. LEXIS 8758 (1st Cir. May 9, 2003).

- *In re PerkinElmer, Inc. Securities Litigation,* 286 F. Supp. 2d 46 (D. Mass. 2003).



- *In re Initial Public Offering Securities Litigation,* 241 F. Supp. 2d 281 (S.D.N.Y. 2003).

- *In re Comdisco Securities Litigation,* No. 01 C 2110, 2003 U.S. Dist. LEXIS 5047 (N.D. Ill. Mar. 31, 2003).

- *Berger v. Compaq Computer Corp.,* 257 F.3d 475 (2001), clarified, 279 F.3d 313 (5th Cir. 2002).

- *City Partnership Co. v. Cable TV Fund 14-B,* 213 F.R.D. 576 (D. Colo. 2002).

- *In re Allaire Corporation Securities Litigation,* Docket No. 00-11972 - WGY, 2002 U.S. Dist. LEXIS 18143 (D. Mass., Sept. 27, 2002).

- *In re StarLink Corn Products Liability Litigation,* 212 F.Supp.2d 828 (N.D. Ill. 2002).

- *In re Bankamerica Corp. Securities Litigation,* 263 F.3d 795 (8th Cir. 2001).

- *In re Comdisco Securities Litigation,* 166 F.Supp.2d 1260 (N.D. Ill. 2001).

- *In re Crossroads Systems, Inc. Securities Litigation,* Master File No. A-00-CA-457 JN, 2001 U.S. Dist. LEXIS 14780 (W.D. Tx. Aug. 15, 2001).

- *In re MicroStrategy, Inc. Securities Litigation,* 150 F. Supp. 2d 896 (E.D. Va. 2001).

- *Lindelow v. Hill,* No. 00 C 3727, 2001 U.S. Dist. LEXIS 10301 (N.D. Ill. July 19, 2001).

- *In re MicroStrategy, Inc. Securities Litigation,* 148 F. Supp. 2d 654 (E.D. Va. 2001).

- *Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Electrical Industry,* 172 F. Supp. 2d 389 (S.D.N.Y. 2001).

- *Carney v. Cambridge Technology Partners, Inc.,* 135 F. Supp. 2d 235 (D. Mass. 2001).

- *Weltz v. Lee,* 199 F.R.D. 129 (S.D.N.Y. 2001).

- *Schoers v. Pfizer, Inc.,* 00 Civ. 6121, 2001 U.S. Dist. LEXIS 511 (S.D.N.Y. Jan. 23, 2001).



- *Kurzweil v. Philip Morris Cos.,* 94 Civ. 2373 (MBM), 2001 U.S. Dist. LEXIS 83 (S.D.N.Y. Jan. 9, 2001).

- *Goldberger v. Bear, Stearns & Co.,* 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714 (S.D.N.Y. Dec. 28, 2000).

- *In re Newell Rubbermaid, Inc., Securities Litigation,* Case No. 99 C 6853, 2000 U.S. Dist. LEXIS 15190 (N.D. Ill. Oct. 2, 2000).

- *Stanley v. Safeskin Corp.,* Case No. 99 CV 454 BTM (LSP), 2000 U.S. Dist. LEXIS 14100, Fed. Sec. L. Rep. (CCH) P91, 221 (S.D. Cal. Sept. 18, 2000).

- *In re MicroStrategy, Inc. Securities Litigation,* 115 F. Supp. 2d 620 (E.D. Va. 2000).

- *In re USA Talks.com, Inc. Securities Litigation,* 2000 U.S. Dist. LEXIS 14823, Fed. Sec. L. Rep. (CCH) P91, 231 (S.D. Cal. Sept. 14, 2000).

- *In re Sotheby's Holdings, Inc. Securities Litigation,* 00 CIV. 1041 (DLC), 2000 U.S. Dist. LEXIS 12504, Fed. Sec. L. Rep. (CCH) P91, 059 (S.D.N.Y. Aug. 31, 2000).

- *Dumont v. Charles Schwab & Co., Inc.,* Civil Action No. 99-2840 2000 U.S. Dist. LEXIS 10906 (E.D. La. July 21, 2000).

- *Berger v. Compaq Computer Corp.,* Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21424 (S.D. Tex. July 17, 2000).

- *In re BankAmerica Corp. Securities Litigation,* 95 F. Supp. 2d 1044 (E.D. Mo. 2000).

- *In re Carnegie International Corp. Securities Litigation,* 107 F. Supp. 2d 676 (D. Md. 2000).

- *Berger v. Compaq Computer Corp.,* Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21423 (S.D. Tex. Mar. 13, 2000).

- *In re Imperial Credit Industries Securities Litigation,* CV 98-8842 SVW, 2000 U.S. Dist. LEXIS 2340 (C.D. Cal. Feb. 23, 2000).

- *Sturm v. Marriott Marquis Corp.,* 85 F. Supp. 2d 1356 (N.D. Ga. 2000).

- *In re Health Management Systems Securities Litigation,* 82 F. Supp. 2d 227 (S.D.N.Y. 2000).



- *Dumont v. Charles Schwab & Co., Inc.,* Civil Action No. 99-2840, 2000 U.S. Dist. LEXIS 619 (E.D. La. Jan. 19, 2000).

- *In re MicroStrategy, Inc. Securities Litigation,* 110 F. Supp. 2d 427 (E.D. Va. 2000).

- *In re BankAmerica Corp. Securities Litigation,* 78 F. Supp. 2d 976 (E.D. Mo. 1999).

- *Kurzweil v. Philip Morris Cos.,* 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 24, 1999).

- *In re Nanophase Technologies Corp. Litigation,* 98 C 3450, 1999 U.S. Dist. LEXIS 16171 (N.D. Ill. Sept. 27, 1999).

- *In re Clearly Canadian Securities Litigation,* File No. C-93-1037-VRW, 1999 U.S. Dist. LEXIS 14273 Cal. Sept. 7, 1999).

- *Yuan v. Bayard Drilling Technologies, Inc.,* 96 F. Supp. 2d 1259 (W.D. Okla. 1999).

- *In re Spyglass, Inc. Securities Litigation,* No. 99 C 512, 1999 U.S. Dist. LEXIS 11382 (N.D. Ill. July 20, 1999).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11595 (N.D. Ga. June 30, 1999).

- *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,* 98 CV 3287, 1999 U.S. Dist. LEXIS 11363 (E.D.N.Y. June 1, 1999).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 1368, Fed. Sec. L. Rep. (CCH) P90, 429 (N.D. Ga. Jan. 19, 1999).

- *Longman v. Food Lion, Inc.,* 186 F.R.D. 331 (M.D.N.C. 1999).

- *Wright v. Ernst & Young LLP,* 152 F.3d 169 (2d Cir. 1998).

- *Romine v. Compuserve Corp.,* 160 F.3d 337 (6th Cir. 1998).

- *Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998).

- *Walsingham v. Biocontrol Technology, Inc.,* 66 F. Supp. 2d 669 (W.D. Pa. 1998).

- *Sturm v. Marriott Marquis Corp.,* 26 F. Supp. 2d 1358 (N.D. Ga. 1998).



- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 27 F. Supp. 2d 1324 (N.D. Ga. 1998).

- *In re MobileMedia Securities Litigation,* 28 F.Supp.2d 901 (D.N.J. 1998).

- *Weikel v. Tower Semiconductor, Ltd.,* 183 F.R.D. 377 (D.N.J. 1998).

- *In re Health Management Systems Securities Litigation,* 97 Civ. 1865 (HB), 1998 U.S. Dist. LEXIS 8061 (S.D.N.Y. May 27, 1998).

- *In re Painewebber Ltd. Partnership Litigation,* 999 F. Supp. 719 (S.D.N.Y. 1998).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 1:97-cv-3183-TWT, 1998 U.S. Dist. LEXIS 23222 (N.D. Ga. Feb. 10, 1998).

- *Brown v. Radica Games (In re Radica Games Securities Litigation),* No. 96-17274, 1997 U.S. App. LEXIS 32775 (9th Cir. Nov. 14, 1997).

- *Robbins v. Koger Properties,* 116 F.3d 1441 (11th Cir. 1997).

- *In re TCW/DW North American Government Income Trust Securities Litigation,* 95 Civ. 0167 (PKL), 1997 U.S. Dist. LEXIS 18485 (S.D.N.Y. Nov. 20, 1997).

- *Wright v. Ernst & Young, LLP,* 97 Civ. 2189 (SAS), 1997 U.S. Dist. LEXIS 13630 (S.D.N.Y. Sept. 9, 1997).

- *Felzen v. Andreas,* No. 95-2279, 1997 U.S. Dist. LEXIS 23646 (C.D. Ill. July 7, 1997).

- *Felzen v. Andreas,* No. 95-2279, 1997 U.S. Dist. LEXIS 23647 (C.D. Ill. July 7, 1997).

- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.,* 964 F. Supp. 147 (S.D.N.Y. 1997).

- *Kurzweil v. Philip Morris Companies,* 94 Civ. 2373 (MBM), 1997 U.S. Dist. LEXIS 4451 (S.D.N.Y. April 8, 1997).

- *Bobrow v. Mobilmedia, Inc.,* Civil Action No. 96-4715, 1997 U.S. Dist. LEXIS 23806 (D.N.J. March 31, 1997).



- *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200 (N.D.Tex. 1997).

- *In re Painewebber Ltd. Partnerships Litigation*, 171 F.R.D. 104 (S.D.N.Y. 1997).

- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.*, 95 Civ. 8422 (LAK), 1997 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 7, 1997).

- *In re Painewebber Inc. Limited Partnerships Litigation*, 94 F.3d 49 (2d Cir. 1996).

- *Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996).

- *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996).

- *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996).

- *Dresner Co. Profit Sharing Plan v. First Fidelity Bank, N.A.*, 95 Civ. 1924 (MBM), 1996 U.S. Dist. LEXIS 17913 (S.D.N.Y. Dec. 3, 1996).

- *Simon v. American Power Conversion Corp.*, 945 F. Supp. 416 (D.R.I. 1996).

- *TII Industries, Inc.*, 96 Civ. 4412 (SAS), 1996 U.S. Dist. LEXIS 14466 (S.D.N.Y. Oct. 1, 1996).

- *In re TCW/DW North American Government Income Trust Securities Litigation*, 941 F. Supp. 326 (S.D.N.Y. Oct. 1, 1996).

- *In re Painewebber Ltd. Partnership Litigation*, 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 9195 (S.D.N.Y. June 28, 1996).

- *In re Tricord Systems, Inc., Securities Litigation*, Civil No. 3-94-746, 1996 U.S. Dist. LEXIS 20943 (D. Minn. April 5, 1996).

- *In re Painewebber Limited Partnership Litigation*, 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 1265 (S.D.N.Y. Feb. 6, 1996).

- *Riley v. Simmons*, 45 F.3d 764 (3d Cir. 1995).

- *Stepak v. Addison*, 20 F.3d 398 (11th Cir. 1994).

- *Zitin v. Turley*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,123 (D. Ariz. June 20, 1994).



- *In re Southeast Hotel Properties Limited Partnership Investor Litigation*, 151 F.R.D. 597 (W.D.N.C. 1993).

- *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990).

### Notable State Court Opinions

- *William Hughes, Jr. v. Xiaoming Hu, et al.* [*In re Kandi Technologies Group*], C.A. No. 2019-0112-JTL (Del. Ch. April 27, 2020).

- *Eshaghian v. Roshanzamir*, 179 A.D.3d 596 (N.Y. App. Div. 1st Dep't 2020).

- *Cohen v. Saks, Inc.*, 169 A.D.3d 515 (N.Y. App. Div. 1st Dep't 2019).

- *Bartis v. Harbor Tech, LLC*, 147 A.D.3d 52 (N.Y. App. Div. 2d Dep't 2016).

- *Zelouf Int'l Corp. v. Zelouf*, 47 Misc. 3d 346 (N.Y. Sup. Ct. 2014).

- *McWilliams v. City of Long Beach*, 56 Cal. 4th 613 (2013).

- *Roberts v. Tishman Speyer*, 89 A.D.3d 444 (N.Y. App. Div. 1st Dep't 2011).

- *Ardon v. City of Los Angeles*, 52 Cal. 4th 241 (2011).

- *Roberts v. Tishman Speyer*, 13 N.Y.3d 270 (N.Y. 2009).

- *In re Tyson Foods, Inc., Consolidated Shareholder Litigation*, 919 A.2d 563 (Del. Ch. 2007).

- *Naevus Int'l v. AT&T Corp.*, 283 A.D.2d 171, 724 N.Y.S.2d 721 (2001).

- *In re Western National Corp. Shareholders Litigation*, Consolidated C.A. No. 15927, 2000 Del. Ch. LEXIS 82 (May 22, 2000).

- *In re Cencom Cable Income Partners, L.P. Litigation*, C.A. No. 14634, 2000 Del. Ch. LEXIS 90 (May 5, 2000).

- *In re Cencom Cable Income Partners, L.P. Litigation*, Consolidated C.A. No. 14634, 2000 Del. Ch. LEXIS 10 (Jan. 27, 2000).



- *In re Marriott Hotels Properties II Limited Partnership Unitholders Litigation,* Consolidated C.A. No. 14961, 2000 Del. Ch. LEXIS 17 (Jan. 24, 2000).

- *Romig v. Jefferson-Pilot Life Insurance Company,* 132 N.C. App. 682, 513 S.E.2d 598 (Ct. App. 1999), *aff'd,* 351 N.C. 349, 524 S.E.2d 804 (N.C. 2000).

- *Wallace v. Wood,* 752 A.2d 1175 (Del. Ch. 1999).

- *Greenwald v. Batterson,* C.A. No. 16475, 1999 Del. Ch. LEXIS 158 (July 26, 1999).

- *Brown v. Perrette,* Civil Action No. 13531, 1999 Del. Ch. LEXIS 92 (May 18, 1999).

- *Seinfeld v. Robinson,* 246 A.D.2d 291, 676 N.Y.S.2d 579 (N.Y. 1998).

- *Werner v. Alexander,* 130 N.C. App. 435, 502 S.E.2d 897 (N.C. Ct. App. 1998).#

- *In re Cencom Cable Income Partners, L.P. Litigation,* C.A. No. 14634, 1997 Del. Ch. LEXIS 146 (Oct. 15, 1997).

- *In re Marriott Hotel Properties II Limited Partnership Unitholders Litigation,* Consolidated C.A. No. 14961, 1997 Del. Ch. LEXIS 128 (Sept. 17, 1997).

- *In re Cheyenne Software Shareholders Litigation,* Consolidated C.A. No. 14941, 1996 Del. Ch. LEXIS 142 (Nov. 7, 1996).

- *Paramount Communications, Inc. v. QVC Network, Inc.,* 637 A.2d 34 (Del. Super. Ct. 1994).



ATTORNEY BIOGRAPHIES

The qualifications of the attorneys in the Wolf Haldenstein Litigation Group are set forth below and are followed by descriptions of some of the Firm's attorneys who normally practice outside the Litigation Group who contribute significantly to the class action practice from time to time.

PARTNERS

**MARK C. RIFKIN:** *admitted:* New York; Pennsylvania; New Jersey; U.S. Supreme Court; U.S. Courts of Appeals for the Second, Third, Fifth, and D.C. Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Pennsylvania, the District of New Jersey, the Eastern District of Wisconsin and the Western District of Michigan. *Education:* Princeton University (A.B. 1982); Villanova University School of Law (J.D. 1985). Contributor, Packel & Poulin, *Pennsylvania Evidence* (1987).

A highly experienced securities class action and shareholder rights litigator, Mr. Rifkin has recovered hundreds of millions of dollars for victims of corporate fraud and abuse in federal and state litigation across the country. Since 1990, Mr. Rifkin has served as lead counsel, co-lead counsel, or trial counsel in many class and derivative actions in securities, intellectual property, antitrust, insurance, consumer and mass tort litigation throughout the country.

Unique among his peers in the class action practice, Mr. Rifkin has extensive trial experience. Over the past thirty years, Mr. Rifkin has tried many complex commercial actions in federal and state courts across the country in class and derivative actions, including *In re National Media Corp. Derivative Litig.*, C.A. 90-7574 (E.D. Pa.), *Upp v. Mellon Bank, N.A.*, C.A. No. 91-5229 (E.D. Pa.), where the verdict awarded more than $60 million in damages to the Class (later reversed on appeal, 997 F.2d 1039 (3d Cir. 1993)), and *In re AST Research Securities Litigation*, No. 94-1370 SVW (C.D. Cal.), as well as a number of commercial matters for individual clients, including *Zelouf Int'l Corp. v. Zelouf*, Index No. 653652/2013 (N.Y. Sup. Ct. 2015), in which he obtained a $10 million judgment for his client.

Mr. Rifkin also has extensive appellate experience. Over thirty years, Mr. Rifkin has argued dozens of appeals on behalf of appellants and appellees in several federal appellate courts, and in the highest appellate courts in New York, Pennsylvania, New Jersey, and Delaware.



Mr. Rifkin has earned the AV®-Preeminent rating by Martindale-Hubbell® for more than 20 years, and has been selected for inclusion in the New York Metro SuperLawyers® listing since 2010. In 2014, Mr. Rifkin was named a "Titan of the Plaintiff's Bar" by Law360®.

In 2015, Mr. Rifkin received worldwide acclaim for his role as lead counsel for the class in *Good Morning To You Productions Corp. v. Warner/Chappell Music, Inc.*, No. CV 13-04460-GHK (MRWx), in federal court in Los Angeles, successfully challenging the copyright to "Happy Birthday to You," the world's most famous song.  In recognition of his historic victory, Mr. Rifkin was named a Trailblazer in Intellectual Property by the National Law Journal in 2016.  In 2018, Mr. Rifkin led a team of lawyers from Wolf Haldenstein who represented the plaintiffs in *We Shall Overcome Foundation, et al. v. The Richmond Organization, Inc., et al.*, No. 16-cv-02725-DLC (S.D.N.Y.), which successfully challenged the copyright to "We Shall Overcome," called the "most powerful song of the 20th century" by the Librarian of Congress.

Mr. Rifkin lectures frequently to business and professional organizations on a variety of securities, shareholder, intellectual property, and corporate governance matters. Mr. Rifkin is a guest lecturer to graduate and undergraduate economics and finance students on corporate governance and financial disclosure topics. He also serves as a moot court judge for the A.B.A. and New York University Law School.  Mr. Rifkin appears frequently in print and broadcast media on diverse law-related topics in corporate, securities, intellectual property, antitrust, regulatory, and enforcement matters.

**BETSY C. MANIFOLD**:  *admitted*:  Wisconsin; New York; California; U.S. District Courts for the Western District of Wisconsin, Eastern and Southern Districts of New York, and Northern, Central and Southern Districts of California.  *Education*:  Elmira College; Middlebury College (B.A., *cum laude*, 1980); Marquette University (J.D., 1986); New York University. Thomas More Scholar. Recipient, American Jurisprudence Award in Agency. Member: The Association of the Bar of the City of New York.  Languages: French.

Ms. Manifold served as co-lead counsel in the following cases to recovery on behalf of employees: *Miguel Garcia, et al. v. Lowe's Home Center, Inc. et al.* – Case No. GIC 841120 (Barton) (Cal. Sup. Ct, San Diego) ($1.65 million settlement w/ average class member recovery of $5,500, attorney fees and cost awarded separately) and *Neil Weinstein, et al.*



*v. MetLife, Inc., et al.* – Case No. 3:06-cv-04444-SI (N.D. Cal) ($7.4 million settlement).
Ms. Manifold also served as co-lead counsel in the following derivative actions: *In re Atmel Corporation Derivative Litigation*, Master File No. CV 06-4592-JF (N.D. Cal.) ($9.65 million payment to Atmel) and *In re Silicon Storage Technology Inc. Derivative Litig.*, Case No. C 06-04310 JF (N.D. Cal.) (cash payment and re-pricing of options with a total value of $5.45 million). Ms. Manifold also worked as lead counsel on the following class action: *Lewis v. American Spectrum Realty*, Case No. 01 CC 00394, Cal. Sup. Ct (Orange County) ($6.5 million settlement).

BENJAMIN Y. KAUFMAN: *admitted*: New York, United States Supreme Court, United States Court of Appeals for the Fourth Circuit, Southern, Northern and Eastern Districts of New York, District of New Jersey; and District of Colorado. *Education*: Yeshiva University, B.A.; Benjamin N. Cardozo School of Law, Yeshiva University, J.D; New York University, Stern School of Business, M.B.A. Mr. Kaufman focuses on class actions on behalf of defrauded shareholders, investors, and consumers. Mr. Kaufman has extensive experience in complex class actions representing clients including institutional investors such as public and labor pension funds, labor health and welfare benefit funds, as well as private individuals and funds who suffered losses due to corporate fraud. Mr. Kaufman also has extensive experience litigating complex commercial cases in state and federal court.

Mr. Kaufman's successful securities litigations include *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.), a complex international securities litigation requiring evidentiary discovery in both the United States and Europe, which settled for $120 million. Mr. Kaufman was also part of the team that recovered $46 million for investors in *In re Asia Pulp & Paper Securities Litigation*, No. 01-7351 (S.D.N.Y.); and $43.1 million in *Freeland v. Iridium World Communications, Ltd.*, No. 99-1002 (D.D.C.).

Mr. Kaufman's outstanding representative results in derivative and transactional litigations include: *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-cv-7820 (S.D.N.Y.) (in settlement Trump personally contributed some of his holdings and the company adopted corporate reforms); *Southwest Airlines Derivative Litigation (Carbon County Employee Retirement System v. Kelly)* (Dist. Ct. Dallas Cnty., Tex.) (derivative matter that resulted in significant reforms to the air carrier's corporate governance and safety and maintenance practices and procedures for the benefit of the company and its shareholders); *Lynn v. Tennessee Commerce Bancorp, Inc., et al.*, No. 3:12-cv-01137 (M.D. Tenn.) ($2.6 million settlement); *In re ClubCorp Holdings Shareholder Litigation*, No. A-17-758912-B (D. Nev.) ($5 million settlement and corporate therapeutics). Mr. Kaufman



also argued the appeal in *In re Comverse Technology, Inc. Derivative Litig.*, 56 A.D.3d 49 (1st Dep't 2008) which led to the seminal New York Appellate Division opinion clarifying the standards of demand futility in New York and *In re Topps Company, Inc. Shareholders Litigation* which resulted in a 2007 decision vindicating the rights of shareholders to pursue claims in the most relevant forum notwithstanding the state of incorporation. Mr. Kaufman has also lectured and taught in the subjects of corporate governance as well as transactional and derivative litigation.

In addition, Mr. Kaufman has represented many corporate clients in complex commercial matters, including complex copyright royalty class actions against music companies. *Puckett v. Sony Music Entertainment*, No. 108802/98 (Sup. Ct. N.Y. Cnty. ); *Shropshire v. Sony Music Entertainment*, No. 06-3252 (S.D.N.Y.), and *The Youngbloods v. BMG Music*, No. 07-2394 (S.D.N.Y.). In *Mich II Holdings LLC v. Schron*, No. 600736/10 (Sup. Ct. N.Y. Cnty.), Mr. Kaufman represented certain prominent real estate investors and successfully moved to dismiss all claims against those defendants. Mr. Kaufman has also represented clients in arbitrations and litigations involving oppressed minority shareholders in closely held corporations.

Currently, Mr. Kaufman represents clients in a wide array of matters, including shareholders of a large cooperative complex alleging breach of fiduciary duty by the board of directors and property manager; purchasers of New York City taxi medallions in a class action pending in New York Supreme Court, Queens County; a New York art gallery in an action against several European insurers over insurance coverage for paintings seized while on exhibit; and shareholders of Saks, Inc. alleging that the board of directors and its investment advisor sold the company for inadequate consideration. *Cohen v. Saks*, 169 A.D.3d 51 (1st Dep't 2019).

Prior to joining Wolf Haldenstein, and prior to joining Milberg LLP in 1998, Mr. Kaufman was a Court Attorney for the New York State Supreme Court, New York County (1988-1990) and Principal Law Clerk to Justice Herman Cahn of the Commercial Division of the New York State Supreme Court, New York County (1990-1998).

Mr. Kaufman is an active member of the Commercial and Federal Litigation Section of the New York State Bar Association, the International Association of Jewish Lawyers and Jurists and the Jewish Lawyers Guild in which he serves as a Vice President. Mr. Kaufman was the Dinner Chair at the Jewish Lawyers Guild Annual Dinner in 2017, 2018, and 2019. Mr. Kaufman is a member of the Board of Trustees of Congregation



Beth Sholom in Lawrence, NY and was a member of the Board of Trustees of the Hebrew Academy of the Five Towns and Rockaways from 2015-2019.

Mr. Kaufman has been recognized by SuperLawyers® each year since 2012.

**THOMAS H. BURT**: *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York, Eastern District of Michigan. *Education*: American University (B.A. 1993); New York University (J.D. 1997). Articles Editor with New York University Review of Law and Social Change. Mr. Burt is a litigator with a practice concentrated in securities class actions and complex commercial litigation. After practicing criminal defense with noted defense lawyer Jack T. Litman for three years, he joined Wolf Haldenstein, where he has worked on such notable cases as *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS) (S.D.N.Y.) (a novel and sweeping amalgamation of over 300 class actions which resulted in a recovery of $586 million); *In re MicroStrategy Securities Litigation*, No. 00-473-A (E.D. Va.) (recovery of $192 million); *In re DRAM Antitrust Litigation*, No. 02-cv-1486 (PJH) (N.D. Cal.) (antitrust case resulting in $315 million recovery); *In re Computer Associates 2002 Class Action Securities Litigation*, No. 02-cv-1226 (TCP) (E.D.N.Y.)(settled, together with a related fraud case, for over $133 million); *K.J. Egleston L.P. v. Heartland Industrial Partners, et al.*, 2:06-13555 (E.D. Mich.) (recovery included personal assets from former Reagan Administration budget director David A. Stockman); and *Parker Friedland v. Iridium World Communications, Ltd.*, 99-1002 (D.D.C.)(recovery of $43.1 million). Mr. Burt has spoken on several occasions to investor and activist groups regarding the intersection of litigation and corporate social responsibility. Mr. Burt writes and speaks on both securities and antitrust litigation topics. He has served as a board member and officer of the St. Andrew's Society of the State of New York, New York's oldest charity.

**RACHELE R. BYRD**: *admitted*: California; U.S. District Courts for the Southern, Northern, Central and Eastern Districts of California, the Northern District of Illinois, and the Eastern District of Michigan; U.S. Court of Appeals for the Ninth Circuit; U.S. Supreme Court. *Education*: Point Loma Nazarene College (B.A., 1994); University of California, Hastings College of the Law (J.D. 1997). Member: State Bar of California. Ms. Byrd is located in the firm's San Diego office and practices corporate derivative and class action litigation including securities, consumer, privacy and security, antitrust, employment and general corporate and business litigation. Ms. Byrd has played a significant role in litigating numerous class and derivative actions, including *Enquist v. City of Los Angeles*, No. BC591331 (Los Angeles Super. Ct.) (gas tax refund action that recently settled for $32.5 million and injunctive relief, valued at a minimum of $24.5



million over 3 years and $81.8 million over 10 years, following certification of the class and on the eve of a hearing on the parties' cross-motions for summary judgment); *Ardon v. City of Los Angeles*, 52 Cal.4th 241 (2011) (telephone tax refund action against the City of Los Angeles that settled for $92.5 million after a successful appeal and a groundbreaking opinion from the California Supreme Court); *McWilliams v. City of Long Beach*, Cal. Supreme Ct. No. S202037, 2013 Cal. LEXIS 3510 (April 25, 2013) (telephone tax refund action that settled for $16.6 million after a successful appeal and another groundbreaking opinion from the California Supreme Court); *Granados v. County of Los Angeles*, BC361470 (Los Angeles Super. Ct.) (telephone tax refund action that settled for $16.9 million following class certification and a successful appeal); *In re: Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-0291 (N.D. Cal.) (member of Plaintiffs' Steering Committee; settled for $85 million); *In re Robinhood Outage Litigation*, No. 20-cv-01626-JD (N.D. Cal.) (member of Plaintiffs' Executive Committee); *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR (N.D. Cal.) (ongoing antitrust class action on behalf of consumers against Apple over its monopolization of the iOS applications aftermarket that secured a favorable opinion in the U.S. Supreme Court: *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)); *Defrees v. Kirkland, et al.*, 11-04272 (JLS) (C.D. Cal.) ($12.2 million settlement reached in derivative action on the eve of trial); *Bokelman et al. v. FCH Enterprises, Inc.*, No. 18-00209-RJB-RLP (D. Haw.) (settled data breach class action; final approval granted May 3, 2019); *Carrera Aguallo, et al. v. Kemper Corp., et al.*, No. 1:21-cv-01883 (N.D. Ill.) (settled data breach class action where Ms. Byrd was Interim Co-Lead Counsel; final approval granted March 18, 2022); *In re: Scripps Health Data Incident Litigation*, San Diego Super. Ct. No. 37-2021-00024103-CU-BT-CTL (ongoing data breach class action where Wolf Haldenstein is co-lead counsel); *Hinds v. Community Medical Centers, Inc.*, No. STK-CV-UNPI-2021-10404 (San Joaquin Super. Ct.) (ongoing data breach class action where Wolf Haldenstein is co-lead counsel); *Christofferson v. Creation Entertainment, Inc.*, No. 19STCV11000 (Los Angeles Super. Ct.) (settled data breach class action; final approval granted on June 29, 2021; *In re: Hanna Andersson and salesforce.com Data Breach Litig.*, No. 3:20-cv-00812-EMC (N.D. Cal.) (settled data breach class action; final approval granted on June 25, 2021); *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534-RGK-E (C.D. Cal.) (settled data breach class action; final approval granted on December 6, 2021); *Rossi v. Claire's Stores*, No. 1:20-cv-05090 (N.D. Ill) (settled data breach class action; preliminary approval granted March 28, 2022); *Riggs v. Kroto, Inc., D/B/A/ iCanvas*, No. 1:20-cv-5822 (N.D. Ill.) (settled data breach class action; final approval granted on October 29, 2021); *Thomas v. San Diego Family Care*, San Diego Super. Ct. No. 37-2021-00026758-CU-BT-CTL (settled data breach class action; preliminary approval granted April 13, 2022); *Miller v. CSI Financial, LLC*, No. 37-



2021-00030263-CU-BT-CT (San Diego Super. Ct.) (recently settled data breach class action); *Fields v. The Regents of the University of California*, Alameda Superior Court No. RG21107152 (ongoing data breach class action); *In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (ongoing); *In re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (settled data breach class action; preliminary approval granted March 3, 2022).

**MATTHEW M. GUINEY**:  *admitted:* New York State; United States Supreme Court; United States Courts of Appeals for the Second, Third and Ninth Circuits; U.S. District Courts for the Southern and Eastern District of New York and numerous others. **Education:** The College of William & Mary (B.A. in Government and Economics 1998); Georgetown University Law Center (J.D. 2002). Mr. Guiney's primary areas of practice are securities class actions under the Securities Act of 1933 and the Exchange Act of 1934, complex commercial litigation, Employee Retirement Income Security Act (ERISA) actions on behalf of plan participants, Fair Labor Standards Act of 1938 actions concerning overtime payment, and fiduciary duty actions under various state laws. Mr. Guiney has helped recover hundreds of millions of dollars for victims of corporate fraud and abuse in federal and state litigation across the country.  Mr. Guiney was on the merits briefs at the United States Supreme Court on behalf of the plaintiffs/respondents in *Apple Inc. v. Pepper*, No. 17-204, 587 U.S. ___ (2019) where the Court affirmed plaintiffs' antitrust standing under *Illinois Brick*.  Mr. Guiney also represented plaintiffs/respondents at the United States Supreme Court in *China Agritech v. Resh*, 584 U.S. __ (2018), where the Court addressed tolling in the class action context. Mr. Guiney also initially served as counsel of record and briefed opposition to petition for writ of certiorari, and argued and achieved a precedential reversal of motion to dismiss in a published opinion at the United States Court of Appeals for the Ninth Circuit in *Resh v. China Agritech*, No. 15-5543, 2017 U.S. App. LEXIS 9029 (9th Cir. May 24, 2017).

Some of Mr. Guiney's notable results on behalf of investors include: *Mallozzi v. Industrial Enterprises of America, Inc., et al.*, 1:07-cv-10321-DLC (S.D.N.Y.) ($3.4 million settlement on behalf of shareholders); *In re Luxottica Group S.p.A. Securities Litigation*, No. CV 01-3285 (JBW) (MDG) (E.D.N.Y.) ($18.5 million settlement on behalf of shareholders); *In re MBNA Corp. ERISA Litigation*, Master Docket No. 05-429 (GMS), (D. Del) ($4.5 million settlement on behalf of plan participants).

**MALCOLM T. BROWN**: *admitted:* United States District Courts for the Eastern, Northern, and Southern Districts of New York; District of New Jersey; and Eastern



District of Pennsylvania; United States Court of Appeals for the Second Circuit. **Education:** University of Pennsylvania (B.A., Political Science 1988) and Rutgers University School of Law (J.D. 1994). Mr. Brown's primary areas of practice are securities, derivative, M&A litigation and consumer class actions. Recent notable decisions include: *Siegmund v. Bian*, 2019 U.S. Dist. LEXIS 19349 (S.D. Fla. Feb. 6, 2019); *Siegmund v. Bian*, 2018 U.S. Dist. LEXIS 55724, 2018 U.S. Dist. LEXIS 55725 (April 2, 2018); *Johnson v. Ford Motor Co.*, 309 F.R.D. 226 (S.D. W. Va. 2015); *Thomas v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 43268 (D.S.C. Mar. 31, 2014); *In re Merkin Sec. Litig.*, 2015 U.S. Dist. LEXIS 178084 (S.D.N.Y. Aug. 24, 2015). Prior to joining Wolf Haldenstein, Mr. Brown was a business litigation attorney who represented financial institutions, corporations and partnerships and advised clients on business disputes, reorganizations, dissolutions and insurance coverage matters.

Mr. Brown is a member of the National Association of Pension Plan Attorneys and the National Black Lawyers, and a Fellow of the American Bar Foundation.

### SPECIAL COUNSEL

**JUSTICE HERMAN CAHN: admitted:** New York. **Education**: Harvard Law School and a B.A. from City College of the City University of New York. Justice Herman Cahn was first elected as Judge of the Civil Court of the City of New York in 1976. He subsequently served as an Acting Justice of the Supreme Court from 1980 until 1992, when he was elected to the Supreme Court. Throughout his decades on the bench, he principally handled civil cases, with the exception of 1981 until 1987, when he presided over criminal matters. Justice Cahn was instrumental in the creation of, and a founding Justice in, the Commercial Division within the New York State Supreme Court. He served as a Justice of the Commercial Division from its inception in 1993.

Among his most notable recent cases are the consolidated cases stemming from the Bear Stearns merger with JP Morgan (*In re Bear Stearns Litigation*); litigation regarding the America's Cup Yacht Race (*Golden Gate Yacht Club v. Société Nautique de Genève*); litigation stemming from the attempt to enjoin the construction of the new Yankee Stadium (*Save Our Parks v. City of New York*); and the consolidated state cases regarding the rebuilding of the World Trade Center site (*World Trade Center Properties v. Alliance Insurance; Port Authority v. Alliance Insurance*).

Justice Cahn is a member of the Council on Judicial Administration of the Association of the Bar of the City of New York. He has also recently been appointed to the



Character and Fitness Committee of the Appellate Division, First Department. He is on the Register of Mediators for the United States Bankruptcy Court, Southern and Eastern Districts of New York.

Before ascending the bench, Justice Cahn practiced law in Manhattan. He was first admitted to the New York bar in 1956. He is admitted to practice in numerous courts, including the New York State courts, the Southern District of New York and the United States Supreme Court.

OF COUNSEL

**DANIEL W. KRASNER**: *admitted:* New York; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Central District of Illinois, and Northern District of Michigan. *Education:* Yale Law School (LL.B., 1965); Yeshiva College (B.A., 1962). Mr. Krasner is of counsel at Wolf Haldenstein. He began practicing law with Abraham L. Pomerantz, generally credited as the "Dean of the Class Action Bar." He founded the Class Litigation Group at Wolf Haldenstein in 1976.

Mr. Krasner received judicial praise for his class action acumen as early as 1978. *See, e.g.*, *Shapiro v. Consolidated Edison Co.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 96,364 at 93,252 (S.D.N.Y. 1978) ("in the Court's opinion the reputation, skill and expertise of . . . [Mr.] Krasner, considerably enhanced the probability of obtaining as large a cash settlement as was obtained"); *Steiner v. BOC Financial Corp.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 97,656, at 98,491.4, (S.D.N.Y. 1980) ("This Court has previously recognized the high quality of work of plaintiffs' lead counsel, Mr. Krasner"). The New York Law Journal referred to Mr. Krasner as one of the "top rank plaintiffs' counsel" in the securities and class action fields. In connection with a failed 1989 management buyout of United Airlines, Mr. Krasner testified before Congress.

More recently, Mr. Krasner has been one of the lead attorneys for plaintiffs in some of the leading Federal multidistrict cases in the United States, including the IPO Litigation in the Southern District of New York, the Mutual Fund Market Timing Litigation in the District of Maryland, and several Madoff-related litigations pending in the Southern District of New York. Mr. Krasner has also been lead attorney in several precedent-setting shareholder actions in Delaware Chancery Court and the New York Court of Appeals, including *American International Group, Inc. v. Greenberg*, 965 A.2d 763 (Del. Ch. 2009) and the companion certified appeal, *Kirschner v. KPMG LLP*, Nos. 151, 152, 2010



N.Y. LEXIS 2959 (N.Y. Oct. 21, 2010); *Teachers' Retirement System of Louisiana and City of New Orleans Employees' Retirement System, derivatively on behalf of nominal defendant American International Group, Inc., v. PricewaterhouseCoopers LLP*, No. 152 (New York, October 21, 2010); *In re CNX Gas Corp. S'holders Litig.*, C.A. No. 5377-VCL, 2010 Del. Ch. LEXIS 119 (Del. Ch., May 25, 2010); *In re CNX Gas Corp. S'holders Litig.*, C.A. No. 5377-VCL, 2010 Del. Ch. LEXIS 139, (Del. Ch. July 5, 2010), appeal refused, 2010 Del. LEXIS 324, 2010 WL 2690402 (Del. 2010).

Mr. Krasner has lectured at the Practicing Law Institute; Rutgers Graduate School of Business; Federal Bar Council; Association of the Bar of the City of New York; Rockland County, New York State, and American Bar Associations; Federal Bar Council, and before numerous other bar, industry, and investor groups.

**PETER C. HARRAR**:   *admitted*; **New York;** United States Court of Appeals for the Fourth Circuit and the United States District Courts for the Southern and Eastern Districts of New York.   *Education*: Columbia Law School (J.D. 1984); Princeton University, Phi Beta Kappa, *magna cum laude*.  Mr. Harrar is of counsel at the firm and has extensive experience in complex securities and commercial litigation on behalf of individual and institutional clients.

He has represented investment funds, hedge funds, insurance companies and other institutional investors in a variety of individual actions, class actions and disputes involving mortgage-backed securities and derivative instruments. Examples include *In re EMAC Securities Litigation*, a fraud case concerning private placements of securitized loan pools, and *Steed Finance LDC v. LASER Advisors, Inc.*, a hybrid individual and class action concerning the mispricing of swaptions.

Over the years, Mr. Harrar has also served as lead or co-lead counsel in numerous securities class and derivative actions throughout the country, recovering hundreds of millions of dollars on behalf of aggrieved investors and corporations. Recent examples are some of the largest recoveries achieved in resolution of derivative actions, including *American International Group Consolidated Derivative Litigation*) ($90 million), and *Bank of America/Merrill Derivative Litigation* ($62.5 million).

**JEFFREY G. SMITH**:   *admitted:*   New York; California; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits; U.S. Tax Court; U.S. District Courts for the Southern and Eastern Districts of New York, Southern, Central and Northern Districts of California and the Districts of Colorado and Nebraska.  *Education*: Woodrow Wilson School of



Public and International Affairs, Princeton University (M.P.A., 1977); Yale Law School (J.D., 1978); Vassar College (A.B., *cum laude generali*, 1974). At Yale Law School, Mr. Smith was a teaching assistant for the Trial Practice course and a student supervisor in the Legal Services Organization, a clinical program. Member: The Association of the Bar of the City of New York; New York State and American (Section on Litigation) Bar Associations; State Bar of California (Member: Litigation Section); American Association for Justice. Mr. Smith has frequently lectured on corporate governance issues to professional groups of Fund trustees and investment advisors as well as to graduate and undergraduate business student groups, and has regularly served as a moot court judge for the A.B.A. and at New York University Law School. Mr. Smith has substantial experience in complex civil litigation, including class and derivative actions, tender offer, merger, and takeover litigation. Mr. Smith is rated "AV" by Martindale Hubble and, since its inception in 2006, has been selected as among the top 5% of attorneys in the New York City metropolitan area chosen to be included in the Super Lawyers Magazine.

ROBERT ALTCHILER: *Education*: State University of New York at Albany (B.S., Finance/Marketing,1985); The George Washington University (JD, 1988).

Robert's practice focuses primarily in the areas of White Collar criminal investigations, corporate investigations, entertainment, litigation, and general corporate counseling. Robert's diverse practice had developed as a result of his extensive international business contacts and relationships in the entertainment world, in the United States and the United Kingdom. Robert had successfully defended cases and resolved matters spanning the most complex entertainment controversies, to virtually any imaginable complex criminal or corporate matter.

Robert has successfully defended individuals and corporations in a wide array of multifaceted investigations in areas such as mortgage fraud, securities fraud, tax fraud, prevailing wage, money laundering, Bank Secrecy Act, embezzlement, bank and wire fraud, theft of trade secrets, criminal copyright infringement, criminal anti-counterfeiting, Foreign Corrupt Practices Act (FCPA), International Traffic In Arms Regulations (ITAR), racketeering, continuing criminal enterprises, and circumvention of trade restrictions, among many others. Robert also specializes in non-criminal investigations relating to various topics, including finding money allegedly being hidden by individuals, ascertaining the identities of individuals actually involved in corporate matters (when a client believes those identities are being concealed), and



running undercover "sting" operations as part of civil and commercial litigation support.

Because of Robert's significant business contacts in the United Kingdom, and the United States, he is frequently called upon to assist clients in various forms of complex business matters, both domestic and international.  Robert's clients look to him as a trusted, experienced, creative, fearless hand who has demonstrated an ability to navigate even the most difficult and desperate situations.  Robert prides himself on his ability to develop aggressive creative winning strategies for his clients even when the clients believe their circumstances are hopeless.

In 1988, Robert started his legal career as a prosecutor in New York City, where he prosecuted a wide array of cases and headed up a variety of different investigations. As a prosecutor, he presented hundreds of cases to grand juries, and ran numerous investigations. In addition to trying several dozen serious cases, ranging from murder to fraud to narcotics violations, he also ran wiretap and grand jury investigations involving money laundering and other financial crimes, as well as a wiretap and investigation concerning a plot to assassinate a prominent NYC judge. Upon leaving the government, Robert began focusing on defending individuals and entities under government investigation and/or indictment. Early in private practice he defended numerous law enforcement officers under administrative and criminal scrutiny, in courts and administrative proceedings. His particular area of practice permitted Robert to further develop and strengthen his already close ties to law enforcement.

In addition to his practice, Robert has been an adjunct law professor at Pace University Law School since 1998, where he teaches trial advocacy, a course designed to teach law students how to be trial lawyers via a curriculum including the mock trial of a murder case. Robert is also a faculty member of the EATS Program run by Stetson Law School, an acclaimed program designed to teach law school trial advocacy professors creative and innovative pedagogical methods. Robert has also been a featured participant and lecturer at Cardozo Law School's acclaimed Intensive Trial Advocacy Program in New York City, and has also taught at Yale Law School. Robert's trial advocacy teaching requires him to constantly integrate new developments in communication theory and trial techniques into his teaching methods. Given the changing way students (and prospective jurors) communicate and digest information (via Twitter, Instagram and Snapchat, for example) Robert is a recognized leader at integrating neuroscientific principles into his teaching.  By actively participating in the weekly trails his students



conduct in class, and by frequently demonstrating methods, he is able to continually adapt his own communication skills and integrate cutting-edge developments into his own practice.

Robert is Special Advisor to the Dean of the Mt. Sinai School of Nursing, an adjunct professor at the school, a member of the Board of Trustees and the Chair of the Board of Trustees Nominations Committee. In his role as Special Advisor, Robert is tasked with counselling the Dean on innovative pedagogical methods designed to facilitate teaching Narrative Care and other topics. Robert instructs faculty on various topics, and will be teaching courses at the school in the immediate future.

Robert graduated from the George Washington University Law School (formerly, The National Law Center), where he began his career as an advocate by conducting administrative hearings and trials during his second and third year. Prior to GW, Robert graduated with honors from the Business School at the State University of New York at Albany in 1985. He is also a 1996 graduate of the National Criminal Defense College and a 1997 graduate of the National Institute for Trial Advocacy's Harvard Teacher Training Program.  Robert has also made dozens of television appearances on Fox, Court TV, and Tru TV, providing legal commentary on televised trials, and participating in discussions related to pertinent issues.

JENNY YOUNG DU PONT: *admitted*: New York; Massachusetts; District of Columbia; U.S. Supreme Court. *Education*: Princeton University (A.B. *cum laude*); Georgetown University Law Center/School of Foreign Service (J.D./M.S.F.S. *magna cum laude*); Order of the Coif; *Georgetown Law Journal*, Notes and Comments Editor.

Ms. du Pont has extensive experience representing domestic and international companies ranging in size from small privately-held firms to large public companies in a variety of corporate, investment, banking, insurance, finance, and employment matters.  Ms. du Pont began her legal career at two AmLaw 100 firms in Washington, D.C. and London, U.K. and a decade later moved into in-house counsel roles, first with Plymouth Rock Assurance Corporation in Boston, MA, and later with Millennium Management, LLC in New York.  Ms. du Pont also advises and presents on issues related to family businesses, family offices, and managing wealth transfer across generations.

In addition to her legal experience, Ms. du Pont has significant experience in the non-profit sector.  Ms. du Pont was President and CEO of The Garden Conservancy in Cold



Spring, New York and Executive Director of Miracle House of New York, Inc., and has acted a legal and strategic advisor to a variety of for profit and non-profit entities in New York. For more than 20 years, Ms. du Pont also has been a director, trustee, and officer for a broad range of educational, cultural, scientific, and service non-profit entities. Ms. du Pont served for a number of years as a Trustee of Phillips Exeter Academy, in Exeter, NH, and as a member and Vice Chair of the Warrant Committee for the Town of Dover in Massachusetts. She is currently a Director of the American Friends of the British Museum and of the American Patrons of the National Galleries and Library of Scotland, serves as an Advisory Council member for the Untermyer Gardens Conservancy in Yonkers, NY and the Sing Sing Prison Museum Master Narrative Project, in Ossining, NY, and is chair of the Advisory Council for the Conservation Law Foundation in Boston, MA.

**KATE MCGUIRE**: *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: University of California at Santa Cruz (B.A. 1995), Georgetown University Law Center (J.D., 1998); Member: *Georgetown Immigration Law Journal*.

Ms. McGuire has extensive experience prosecuting complex litigation. Her work encompasses consumer and data protection class actions, securities class and derivative shareholder cases and nationwide antitrust suits.

She is a member of the Firm's Consumer Protection practice group and, in that context, has worked intensively to protect classes of consumers under a range of state and federal laws. Recently, she served as a member of the co-lead counsel team in *Simerlein et al. v. Toyota Motor Corporation et al.*, 3:17-CV-01021-VAB (D. Conn.), representing more than a million owners of Sienna minivans in litigation that settled for class-wide benefits valued at between $30 and $40 million. Presently, she serves on a team representing plaintiffs in multi-district litigation against Fisher-Price and Mattel, relating to Rock 'n Play infant sleepers which are alleged to be dangerous and misleadingly marketed. She has also served as a member of the firm's lead or co-counsel teams in other consumer protection cases, including litigation based upon allegations of misrepresentations and omissions concerning the purported safety of electronic cigarettes.

Ms. McGuire has also represented plaintiffs with respect to the protection of their civil rights. For example, she represented a blind plaintiff in a suit under the Americans with Disability Act against a major trading online trading company, and represented a



group of minority business owners in federal civil rights litigation concerning disparate treatment which settled for significant governance therapeutics.

CARL MALMSTROM: *admitted:* Illinois; Minnesota; United States Court of Appeals for the Seventh Circuit; Northern and Southern Districts of Illinois; Northern District of Indiana; District of Minnesota; Eastern District of Missouri; Western District of New York. *Education:* University of Chicago (A.B., Biological Sciences, 1999; A.M., Social Sciences, 2001); The University of Hawai'i at Manoa (M.A., Anthropology, 2004); Loyola University Chicago School of Law (J.D., 2007). Prior to joining the firm, Mr. Malmstrom worked for the City of Chicago Department of Law in the Municipal Prosecutions Division; he is a member of the Chicago Bar Association. Mr. Malmstrom has substantial experience litigating complex class actions in several practice areas, including antitrust, consumer fraud, and data security. Representative cases in which he has represented plaintiffs include *Bokelman et al. v. FCH Enterprises, Inc.*, Case No. 1:18-cv-209 (D. Haw.), involving customers of Zippy's Restaurants in Hawaii whose personal data was stolen by hackers, *In re: Experian Data Breach Litigation*, Case No. 8:15-cv-1592 (C.D. Cal.); *Freeman-Hargis v. Taxi Affiliation Services, LLC*, Case No. 2016-CH-02519 (Cir. Ct. Cook Cty.), involving customers of several taxi services in Chicago who were unlawfully charged fees for using credit cards in taxis.

## ASSOCIATES

PATRICK DONOVAN: *admitted:* New York; U.S. District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Second and Fourth Circuits. *Education:* Iona College (B.A., Business Management, 2007); St. John's University School of Law (J.D. 2011). Mr. Donovan's primary areas of focus are securities, derivative and M&A litigation.

LILLIAN GRINNELL: *admitted*: New York; United States District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Federal Circuit. *Education*: Bryn Mawr College (A.B., Philosophy and Political Science, 2016); New York University Law School (J.D. 2019). Prior to joining Wolf Haldenstein, Ms. Grinnell served as an Excelsior Service Fellow with the Consumer Protection and Financial Enforcement Division of the NYS Department of Financial Services.

ROURKE DONAHUE: *admitted*: New York. *Education:* University of North Carolina at Chapel Hill (B.A., Philosophy, 2017), Honors Program; Georgetown University Law Center (J.D. 2020). Prior to joining the firm, Mr. Donahue clerked for the Hon. Timothy P. Lydon, Presiding Judge of Equity, at the New Jersey Superior Court in Trenton, New



Jersey. In law school, Mr. Donahue interned at the Department of Justice's Civil Division, Christie's Auction House, and Manhattan Legal Services and served as the Administrative Editor of the *Georgetown Environmental Law Review*.

**ALEX J. TRAMONTANO:** *admitted*: California; U.S. District Courts for the Southern, Central and Eastern Districts of California; United States Court of Appeals for the Ninth Circuit. *Education:* University of Massachusetts, Amherst (B.A., Political Science and Legal Studies, *cum laude*, 2008); California Western School of Law (J.D., 2011). Mr. Tramontano's primary areas of focus are securities, anti-trust, unfair and deceptive practices, civil rights and data breach related class actions. Prior to joining Wolf Haldenstein, Mr. Tramontano worked as an associate at an AmLaw 100 firm, as well as other regional law firms in southern California. Mr. Tramontano has over a decade of litigation experience defending and prosecuting complex actions on behalf of individuals and businesses in both Federal and State courts. Mr. Tramontano began his legal career as a Police Cadet at the University of Massachusetts Amherst. He went on to law school and joined the San Diego District Attorney's Office as a Certified Legal Intern before transitioning to private practice.

**FERDEZA ZEKIRI:** *admitted:* California; U.S. District Court for the Central District of California. *Education:* Gonzaga University (B.A., Criminal Justice and Psychology, 2017); University of California, Los Angeles School of Law (J.D. 2020). In law school, Ms. Zekiri served as a Managing Editor of the UCLA School of *Law's Journal of Environmental Law & Policy,* and worked as a research assistant for the UCLA Law Library. Prior to joining Wolf Haldenstein, Ms. Zekiri was an associate attorney at Talkov Law where she primarily focused on real estate litigation.

## PARAPROFESSIONALS

**GREGORY STONE:** *Education:* University of Pennsylvania (B.S., Economics, 1979); University of California, Los Angeles (MBA, 1983). Mr. Stone is the Firm's Director of Case and Financial Analysis. He assists partners and associates in identifying and researching potential federal class action securities, derivative litigation and merger & acquisition (M&A) litigation. Mr. Stone has worked with leading securities class action firms in an analytical and investigative role for over 18 year throughout the United States, and has an extensive professional background in the accounting and investment professions. He plays a key role in new case development, including performing investigations into potential securities fraud class actions, derivative and other



corporate governance related actions. By using a broad spectrum of financial news and legal industry research tools, Mr. Stone analyzes information that helps identify and support the theories behind the firm's litigation efforts.

## Non-Discrimination Policies

Wolf Haldenstein does not discriminate or tolerate harassment against any employee or applicant because of race, creed, color, national origin, sex, age, disability, marital status, sexual orientation, or alienage or citizenship status and designs its hiring practices to ensure that minority group members and women are afforded equal employment opportunities without discrimination.  The Firm is in compliance with all applicable Federal, State, County, and City equal employment opportunity laws.

Wolf Haldenstein is proud of its long history of support for the rights of, and employment opportunities for, women, the disadvantaged, and minority group persons, including the participation in civil rights and voter registration activities in the South in the early 1960s by partners of the Firm; the part-time employment of disadvantaged youth through various public school programs; the varied *pro bono* activities performed by many of the Firm's lawyers; the employment of many women and minority group persons in various capacities at the Firm, including at the partner level; the hiring of ex-offenders in supported job training programs; and the use of minority and women-owned businesses to provide services and supplies to the Firm.

270 MADISON AVENUE
NEW YORK, NY 10016
Telephone: 212-545-4600
Telecopier: 212-545-4653
www.whafh.com

SYMPHONY TOWERS
750 B STREET, SUITE 1820
SAN DIEGO, CA 92101
Telephone:  619-239-4599
Telecopier: 619-234-4599

111 West Jackson
SUITE 1700
CHICAGO, IL 60604
Telephone: 312-984-0000
Telecopier: 312-214-3110





# EXHIBIT 3

*Bowdle v. King's Seafood Company, LLC*

**Wolf Haldenstein Alder Freeman & Herz LLP**
**Period: Inception through January 16, 2023**

Categories
(1) Administrative claim/Complaint/Pre-complaint legal investigation
(2) Post-Complaint fact/legal research, investigation and discovery
(3) Motion Practice
(4) Pleadings
(5) Trial Court Hearings
(6) Intermediate Appeals
(7) Supreme Court Appeal
(8) Settlement discussions, strategy, mediation sessions, etc.
(9) Settlement Agreement and ancillary documents
(10) Notice and Claims Oversight, contact with class members
(11) Fee Petition/Final Approval

| PARTNERS (P) and ASSOCIATES (A) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | ALL HOURS | HOURLY RATE | TOTAL LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |
| Rachele R. Byrd (P) | 3.70 | 0.60 | 16.30 | 4.50 | | | | 29.50 | 2.00 | 2.10 | 22.50 | 81.20 | $750.00 | $60,900.00 |
| Alex J. Tramontano (A) | | | 31.30 | 1.50 | | | | | | | | 32.80 | $450.00 | $14,760.00 |
| Oana Constantin (A) | | | 39.40 | 3.70 | | | | | 26.60 | | | 69.70 | $445.00 | $31,016.50 |
| | | | | | | | | | | | | | | |
| **ATTORNEY TOTAL** | | | | | | | | | | | | **183.70** | | **$106,676.50** |
| | | | | | | | | | | | | | | |
| **PARALEGALS** | | | | | | | | | | | | | | |
| Alexandra Loutsenhizer | 2.70 | | | 1.00 | | | | | | | | 3.70 | $250.00 | $925.00 |
| Michele Mitchell | | | | 6.10 | | | | | | | | 6.10 | $250.00 | $1,525.00 |
| Amanda Salas | | | 8.40 | | | | | | | 0.10 | | 8.50 | $205.00 | $1,742.50 |
| | | | | | | | | | | | | | | |
| **PARALEGAL TOTAL** | | | | | | | | | | | | **18.30** | | **$4,192.50** |
| | | | | | | | | | | | | | | |
| **TOTAL** | 6.40 | 0.60 | 95.40 | 16.80 | 0.00 | 0.00 | 0.00 | 29.50 | 28.60 | 2.20 | 22.50 | **202.00** | | **$110,869.00** |

29094

25043